

```
 1   THE STATE OF OHIO,    )
                           ) SS:   STUART A. FRIEDMAN, J.
 2   COUNTY OF CUYAHOGA.   )

 3

 4          IN THE COURT OF COMMON PLEAS
                 CRIMINAL DIVISION
 5
     THE STATE OF OHIO,           )
 6              Plaintiff,        )
                                  )
 7        -v-                     ) Case No.  580862-A, 564978
                                  ) C/A:   102327
 8   NOEL CEDENO,                 )   Volume I of V
                Defendant.        )
 9

10                 - - - -

11          TRANSCRIPT OF PROCEEDINGS

12                 - - - -

13   APPEARANCES:

14          TIMOTHY J. McGINTY, ESQ., Prosecuting Attorney,

15          by: RONNI DUCOFF, Esq.,
                 OWEN PATTON, Esq.,
16               FRANCINE GOLDBERG, Esq.,
                     Assistant County Prosecutors,
17                   On behalf of the Plaintiff;

18          CHARLES RUIZ-BUENO, Esq.,
            JUAN HERNANDEZ, Esq.,
19          OSCAR RODRIGUEZ, Esq.,

20          On behalf of the Defendant.

21

22

23

24   SHELF 12

25
```

FILED
COURT OF APPEALS
FEB 23 2016
Clerk of Courts
Cuyahoga County, Ohio

2015 FEB 23 P 1:27
CLERK OF COURTS
CUYAHOGA COUNTY
FILED

162327

**INTERPRETERS:**   Catherine Pina, Bernardita Rojas, and Hernan Galvez

**Court Reporters:**

Carla Kuhn, Robert Intorcio, Nancy Nunes, Sheila Walters, Timothy Meinke, Timothy Schaefer, Jeniffer Tokar, Timothy Tolar, Deborah Kracht, Kathleen Kilbane, Kathleen DiNovo, Diane Cieply, Suzanne Vadnal, Victoria Fricano, Mary Jean Cooley, Juliann Adams, Susan Ottogalli, Ellen Rassie and Angela Cudo
Official Court Reporters
Cuyahoga County, Ohio

```
 1    THE STATE OF OHIO,      )
                              ) SS:   STUART A. FRIEDMAN, J.
 2    COUNTY OF CUYAHOGA.     )

 3              IN THE COURT OF COMMON PLEAS
                    CRIMINAL DIVISION
 4
      THE STATE OF OHIO,           )
 5                    Plaintiff,   )
                                   )
 6         -v-                     ) Case No.  580862-A, 564978
                                   ) C/A:  102327
 7    NOEL CEDENO,                 )
                      Defendant.   )
 8

 9

10

11            BE IT REMEMBERED, that at the September, 2014,

12    A.D, term of said Court, to-wit, commencing on the 6th day

13    of October, 2014, this cause came on to be heard before the

14    Honorable Stuart A. Friedman, in Courtroom No. 19-B, Justice

15    Center, Cleveland, Ohio, upon the indictment filed

16    heretofore.

17

18                        -   -   -   -

19

20

21

22

23

24

25
```

# I N D E X

Opening Statement State .................... 342

Opening Statement,
        Defendant................ 350

                                           757

Motion for Rule 29.....................

Motion for Rule 29,                        826
        Renewed....................

                                           830

Closing Argument, State ....................

Closing Argument Defendant                 858
        ....................
Final Closing Argument, State              876
        ....................
                                           890

Verdict ....................

Sentence ............................      911

1

2  **STATE'S WITNESSES:**

3

| | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| BRENDA DELCERRO | 353 | | | |
| BRENDA DELCERRO | 353 | | | |
| BRENDA DELCERRO | | 388 | 415 | |
| OLGA ARRIAGA | 418 | 428 | 429 | |
| JAZMIN SANTIAGO | 431 | 450 | 456 | |
| KAYLA MENDEZ | 458 | 492 | 521 | 529 |
| OLGA ARRIAGA | 418 | 428 | 429 | |
| JAZMIN SANTIAGO | 431 | 450 | 456 | |
| KAYLA MENDEZ | 458 | 492 | 521 | 529 |
| MARK FEINGOLD, M.D. | 539 | 548 | 549 | 550 |
| MARK FEINGOLD, M.D. | | | 552 | 555 |
| SHAWANA PRUDE | 559 | 574 | 579 | |
| JESSICA STEWART | 584 | | | |
| JESSENIA CEDENO | 597 | 631 | | |
| ALLISON THEURE | 655 | 681 | 684 | |
| DET. ELAINE EVANS | 688 | 713 | 725 | |
| KIRSTI MOUNCEY | 728 | 737 | 740 | |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2 **DEFENDANT WITNESSES:**

3

| | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| TABITHA ALVAREZ | 772 | | | |
| MIGDALIA DIAZ | 795 | | | |
| DANIEL GONZALEZ | 804 | | | |
| SHARON SANCHEZ | 808 | | | |

<pre>
 1    THURSDAY AFTERNOON SESSION, SEPTEMBER 27, 2012
 2                THE COURT:  We have before the Court
 3        at this time case numbers 563913 and 564978
 4        both of those the State versus Noel Cedeno.
 5        It's my understanding that we have -- are you
 6        --
 7                THE INTERPRETER:  Catherine Pina.
 8                THE COURT:  I'm sorry, I don't know
 9        your --
10                THE INTERPRETER:  I'm the
11        coordinator for the interpreters unit for the
12        city.
13                THE COURT:  Right.  You are
14        certified?
15                THE INTERPRETER:  I am certified.
16                THE COURT:  Okay.
17                Would you raise your right hand,
18        please?
19                    - - - - -
20                (Thereupon, CATHERINE PINA, was duly
21        sworn to faithfully and truly interpret the
22        testimony of NOEL CEDENO, the defendant
23        herein, as follows:)
24                    - - - - -
25                THE INTERPRETER:  Catherine Pina for
</pre>

1    the record.

2           THE COURT:  Would you spell your

3    name for me, please.

4           THE INTERPRETER:  Yes, sir.

5    C-a-t-h-e-r-i-n-e and my last name is P as in

6    Paul i-n-a.

7           THE COURT:  Thank you, Ms. Pina.

8           Did you need something, Ms. Ducoff?

9              - - - - -

10          (Thereupon, a discussion was had

11          off the record.)

12             - - - - -

13           MS. DUCOFF:  Thank you, your Honor.

14           THE COURT:  Okay.

15          Now, it's my understanding that we

16    were set for trial today, that is September

17    27th at 1:30 in the afternoon for a trial.

18    It was further my understanding that the

19    defendant intended to waive his right to a

20    jury trial and proceed as a trial to the

21    Court without a jury.

22          I was informed today that yesterday

23    Mr. Cedeno, the defendant, had advised his

24    attorney, Mr. Rodriguez, that he does not

25    wish to have -- to be represented by him; is

1     that correct, Mr. Rodriguez?

2          MR. RODRIGUEZ:  That is correct.  I

3     went to visit Mr. Cedeno in county jail.  We

4     had a brief discussion.  He told me that he

5     was unsatisfied with my representation and

6     that he no longer wanted me to represent him

7     in this matter.

8          THE COURT:  Mr. Cedeno, is that true

9     that you no longer wish to have Mr. Rodriguez

10    represent you?

11         THE DEFENDANT:  Exactly.  I have my

12    rights.  I don't want him to represent me no

13    more.

14         THE COURT:  Okay.  You have your

15    rights, that is true, but we are going to

16    have a trial in these cases with

17    Mr. Rodriguez with or without him and I need

18    to know, do you wish to represent yourself or

19    do you wish to have somebody else assigned to

20    represent you?

21         THE DEFENDANT:  For another attorney

22    to be assigned.

23         THE COURT:  For another attorney to

24    be assigned.

25         THE DEFENDANT:  I told him, read

1    that to him.  I told him I deny -- read that

2    to him, your Honor.

3              THE INTERPRETER:   May the

4    interpreter read the paper that the defendant

5    is pointing to?

6              THE COURT:  Yes, you may.  Thank

7    you.

8              THE INTERPRETER:  I deny consent to

9    go to a bench trial or a jury trial.

10             THE COURT:  I've already seen your

11   communication to the Court, Mr. Cedeno.  You

12   are going to have a trial, either with a jury

13   or without a jury.  These are the options.

14   You can have a trial with a jury, you can

15   have a trial without a jury, you can enter a

16   plea of guilty, you can enter a plea of no

17   contest to the indictment, or you can enter a

18   plea of not guilty by reason of insanity.

19   Those are the only options you have.  You

20   cannot have a trial without a judge and

21   without a jury.

22             Now, if you no longer wish to have

23   Mr. Rodriguez represent you, and even though

24   this is at the last moment -- I'm going to

25   back up.  I have known Mr. Rodriguez now for

1    at least eight years.  I know that he is a

2    very good attorney.  I know that he takes his

3    job seriously and I know that in this case he

4    has done whatever was possible to represent

5    you; however, I do not want him to be forced

6    to represent you because if you are found

7    guilty, then you would probably blame him and

8    file action against him and I don't want him

9    to be forced into that unfortunate

10   situation.

11            Ms. Ducoff?

12            MS. DUCOFF:  Based on my knowledge

13   of what transpired during all these

14   pretrials, I think -- I would ask the Court

15   to inquire of what the problem is because

16   this problem just surfaced.  Even in the

17   motions that were filed pro se there's never

18   been any question about his relationship with

19   his attorney and his attorney not doing

20   anything.  I know the number of hours I've

21   spoken with Mr. Rodriguez in plea

22   negotiations, in sharing of discovery, and it

23   just seems that we should look into this a

24   little bit before we just move on.

25            THE COURT:  Thank you.

```
1              Mr. Cedeno, what is it about what
2    Mr. Rodriguez has done or has not done?
3              THE DEFENDANT:  Your Honor,
4    beforehand, I have told my attorney that I
5    did not want a bench trial -- I'm sorry, I
6    didn't want a jury trial.  So on the 25th of
7    this month, supposedly I was going to go see
8    the judge.  I told him I don't want a bench
9    trial -- I mean a jury trial, but then he
10   said, well, let's go see the judge and see
11   what he says.  He came back, he said, well,
12   the judge is not here.
13             Then I go and look up in the docket
14   and they had already done this on the
15   record.  It says right here they're going to
16   do a final pretrial.  So how is it final?  I
17   mean, it's already done and the judge isn't
18   here --
19             THE COURT:  Mr. Cedeno, the journal
20   entry that you noted, final pretrial held
21   September 25th, I was present earlier that
22   day.  We had a pretrial scheduled.  What that
23   meant was that Mr. Rodriguez and Ms. Ducoff
24   met.  I normally do not take part in the
25   pretrial, so there was nothing that happened
```

1    that day that I made a decision or involved

2    myself with.

3                That final pretrial -- it just says

4    final pretrial held 9/25.  Trial remains set

5    for 9/27.  There's an error here that says 9

6    o'clock, which really was supposed to be

7    1:30.

8                THE DEFENDANT:  So why did the

9    attorney, then, say that we were going to see

10   the judge at that moment and that we would

11   come -- and that we would have to come to an

12   agreement before going to see the judge?  I

13   got locked back up in a jail cell, then he

14   comes back saying that the judge isn't

15   there.  So where are we here?

16               THE COURT:  Mr. Cedeno, I think it's

17   appropriate here that Mr. Rodriguez can

18   respond since he's better able than I am.

19               MR. RODRIGUEZ:  Okay.

20               Last week I go see Mr. Cedeno in

21   county jail in preparation for trial that has

22   been scheduled for the 27th a long time ago.

23   At that point in time, he presented me with

24   about four or five motions that he had filed

25   pro se.

```
 1              THE DEFENDANT:  Objection.  Not

 2      motion; demands.

 3              MR. RODRIGUEZ:  He filed paperwork.

 4              THE COURT:  Okay.  Demands if you

 5      want to call them demands.

 6              MR. RODRIGUEZ:  Okay.

 7              I reviewed them at the time and I

 8      didn't really understand what he was trying

 9      to do.  We had left that day with the idea

10      that I would review them in my office and

11      then come back and talk to him this week.

12              I believe I texted Ms. Ducoff, I

13      believe on Sunday, and told her that maybe we

14      need to set a pretrial for Monday or Tuesday

15      of this week to discuss the paperwork that

16      Mr. Cedeno had filed prior to trial.  I

17      believe Ms. Ducoff was on the same page that

18      we needed to talk to you before trial was to

19      commence today.

20              I think we set up a final pretrial.

21      I don't think it was scheduled for -- I think

22      we probably scheduled it Monday to come back

23      Tuesday knowing that this Court could

24      possibly have to leave due to it being a

25      Jewish holiday later that day.  We did have
```

1    an interpreter here present with the purpose

2    of trying to address the motions on the

3    record; however, due to logistics, we weren't

4    able to do so and now we're here today and

5    that's basically where we're at.

6              THE COURT:  Now, do you understand

7    what has happened?

8              THE DEFENDANT:  That's what he says.

9              THE COURT:  Do you still want

10   Mr. Rodriguez not to represent you?

11             THE DEFENDANT:  No.  I don't want

12   him.  I want you to --

13                   - - - - -

14             (Thereupon, a discussion was had

15              off the record.)

16                   - - - - -

17             THE COURT:  Mr. Cedeno.

18             THE DEFENDANT:  Your Honor, could

19   you please read this to the judge, this

20   paragraph that I wrote here, and also ask how

21   is it that you are preparing yourself for

22   trial when there is no interpreter here and

23   we can't communicate well without the

24   interpreter, and when you come to see me in

25   jail?

1          THE INTERPRETER:  May the
2     interpreter read the paragraph that is
3     written?
4          THE COURT:  Yes, please.
5          THE DEFENDANT:  I am servicing the
6     court with two recent filings which the clerk
7     of courts failed to place on the docket today
8     and they are right here, and may the record
9     reflect the interpreter's holding -- it seems
10    like these are demands for discharge and it's
11    stamped by the clerk of courts, dated
12    September 24th, 2012.
13         THE COURT:  The clerk of courts
14    cannot process every document the same day.
15    There is a normal delay of two or three,
16    sometimes four or five days.
17         THE DEFENDANT:  I gave them to him
18    directly but I can give them to you
19    directly.
20         MR. RODRIGUEZ:  I'd like to address
21    the communication between me and my client.
22    I was looking at my records.  I was assigned
23    November of 2011.  I have visited Mr. Cedeno
24    14 times from December of 2011 until July
25    2012, all contact visits, and 80 percent of

1    the time was just one on one.  It was up

2    until recently that I brought in an

3    interpreter to help communication, but there

4    is -- we have been on the same page.  We

5    understand each other just fine without the

6    interpreter.

7          THE COURT:  Mr. Rodriguez, you speak

8    Spanish?

9          MR. RODRIGUEZ:  I speak Spanish.

10    The only reason why I brought Ms. Rojas in

11    was to talk possible resolution to make sure

12    we were on the same page to talk about the

13    possible penalty if he did get convicted in

14    the future.

15          THE COURT:  Now, one moment.

16          Mr. Cedeno, where were you born?

17          THE DEFENDANT:  Puerto Rico.

18          THE COURT:  So both you and

19    Mr. Rodriguez are from Puerto Rico?

20          THE DEFENDANT:  Uh-huh.

21          THE COURT:  I know there are

22    differences between Cuban and Spanish and

23    Peruvian and Mexican dialects, but you both

24    are from the same area.  There should not be

25    a serious reason for an interpreter to be

1    needed when you are speaking with your

2    attorney.

3            It's sounding to me more and more

4    like you are trying simply to delay these

5    proceedings by waiting until the day before

6    trial to tell us that you want a different

7    attorney.  We do not have many attorneys in

8    this county who speak Spanish as well as

9    Mr. Rodriguez and who are good attorneys.

10           THE DEFENDANT:  He doesn't seem to

11   understand my Spanish.  That's why he brings

12   an interpreter.  It seems that he understands

13   sometimes but not all the time.  He doesn't

14   understand when I speak, not my Spanish.  A

15   lot of times he says he doesn't understand

16   what I'm saying and he'll ask me to repeat

17   the same thing 20,000 different times.

18   That's why he brings a person in.

19           His Spanish is like -- I'm going to

20   apologize; the interpreter's looking for the

21   appropriate phraseology -- bad or messed up,

22   and then he says, hold on, hold on, hold on,

23   repeat where you're saying, so I think he

24   just doesn't understand my Spanish.  He knows

25   more English than Spanish.  He doesn't really

19

1     speak Spanish-Spanish, fluent Spanish.

2            THE COURT:  I'm no judge of a

3     person's fluency in Spanish language.

4            THE DEFENDANT:  Because if he could

5     understand me perfectly, then there wouldn't

6     be any need to bring an interpreter in.

7            THE COURT:  That is not exactly

8     correct but I don't want to get involved in

9     an argument over why Ms. Rojas was brought

10    in.  I am in the process of trying to find

11    another attorney and we'll have to deal with

12    that when we find somebody who can take this

13    case on, but I will rule upon the papers that

14    you have filed.

15           Your amended notice of appearance

16    and notice of rescission of pleas, you

17    cannot, you cannot be second chair to an

18    assigned attorney.  Either you will represent

19    yourself or somebody else will represent

20    you.  As for your rescission of pleas, as I

21    said -- one moment.  I'm going to have to go

22    off the bench.

23           - - - - -

24         (Thereupon, a recess was taken.)

25          - - - - -

1      THE COURT:  Well, the attorney I had

2  hoped to be able to take on this case is not

3  able to do it and he simply recommends that

4  we have any attorney with an interpreter and

5  Ms. Rojas has already has been acting as

6  interpreter.  Do we know when she will be

7  back?

8      MR. RODRIGUEZ:  I think Monday.  I

9  think she was out this week.

10      THE COURT:  Perhaps what we should

11  do is continue this, have a pretrial one day

12  next week and have her available and we can

13  see where we're going.

14      If Mr. Cedeno would like you to

15  represent him, with Ms. Rojas as interpreter

16  or somebody else, but it will not be somebody

17  who is -- speaks Spanish.

18      MR. RODRIGUEZ:  My concern, your

19  Honor, is I think Mr. Cedeno's made himself

20  clear that he doesn't want me to represent

21  him.  I'm not sure where we go from here.  I

22  think he's pretty firm in his decision.  He

23  didn't want to talk to me yesterday; I was

24  told he didn't want to talk to me today.  I

25  just don't know whether the relationship

1    could be salvaged at this point in time.

2           THE COURT:  Okay.

3           MR. RODRIGUEZ:  That's my only

4    concern.

5           THE COURT:  I will allow you to

6    withdraw.  I will set this for -- I'll have

7    to assign new counsel and set it for a

8    pretrial maybe not next week but early the

9    week after so we can have somebody else be

10    able to get on board, look at the file and

11    see where -- what needs to be done to -- for

12    him or her to prepare for trial.

13           I'm not happy with this.  I see

14    we've got the people in the back of the

15    courtroom who were preparing for trial,

16    planning on having this case tried and

17    resolved one way other another and I

18    certainly would like to do that as well.

19           I know, Ms. Ducoff, you were ready

20    for trial and prepared to go forward today

21    and I know your schedule --

22           MS. DUCOFF:  Yes, I was.

23           THE COURT:  -- is going to be hectic

24    with going forward from now.

25           MS. DUCOFF:  Yes.  And although I

1   understand this Court's reluctance to have an

2   attorney work with someone who has indicated

3   he doesn't want assistance from, I do object

4   to Mr. Cedeno, and I agree as I see this as a

5   stalling tactic because as I indicated

6   earlier there was nothing ever stated about

7   their relationship that concerned Mr. Cedeno,

8   never a mention in all the visits that

9   Mr. Rodriguez has documented was there ever a

10  problem with communication.

11          Mr. Rodriguez, as an honorable

12  officer of this court, has always relayed

13  that his client wanted his day in court,

14  wanted a bench trial, always relayed his

15  client's interest to this court and so now at

16  the 11th hour to say our Spanish isn't the

17  same to me is just a stall tactic and I

18  object to it.  Thank you.

19          THE COURT:  There's much truth in

20  what you say, Ms. Ducoff.  Where I have a

21  problem, though, is when the client won't

22  even speak to his attorney, will not allow

23  his attorney to approach him.  There clearly

24  is a breakdown and whether it's a mutual or

25  one sided is irrelevant.  I cannot, in good

1    conscience, force Mr. Rodriguez to represent

2    somebody, especially on a case of this

3    serious in nature, so we're going to have to

4    reset this.

5         Linda, when do we reset it for a

6    pretrial?

7         THE BAILIFF:  Judge, I can't call

8    that until we get an attorney on it.  It's

9    not something that's going to be put on the

10   record.  I don't know.

11        THE COURT:  We'll talk about that

12   when we get on the bench.  Okay.

13        So Ms. Ducoff, maybe you can come

14   back and we'll see when we can -- who we can

15   get and when we can get this moving.

16        MS. DUCOFF:  Okay.

17        THE COURT:  Mr. Rodriguez, first of

18   all, you will file your fee bill?

19        MR. RODRIGUEZ:  Sure.

20        THE COURT:  And secondly, I expect

21   that -- I know that you will turn over your

22   file to whoever gets this case.

23        MR. RODRIGUEZ:  Thank you, your

24   Honor.

25        THE COURT:  Okay.

```
 1              MS. DUCOFF:  Thank you, your Honor.
 2              THE COURT:  Thank you all.
 3              THE DEFENDANT:  Ask him, can I hand
 4      you these papers?
 5              THE COURT:  No.  You can show them
 6      to your new attorney.
 7                     -  -  -  -
 8              (Thereupon, Court was adjourned.)
 9                     -  -  -  -
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**THURSDAY MORNING SESSION**

**OCTOBER 18, 2012**

THE COURT:            We are back on the record on case numbers 563913 and 564979 -- pardon me, 978, 564978, both of those are the State versus Noel Cedeno.

Ms. Rojas previously has been sworn in as interpreter in these cases and that remains in effect.

It's been brought to my attention that there is an issue regarding representation, and perhaps, Mr. Hernandez, you would put that on the record.

MR. HERNANDEZ:            Thank you, your Honor.

Your Honor, at this time I'd like -- I won't say on behalf of Mr. Cedeno because he's indicated that he doesn't want a lawyer, he's not asking the Court to appoint another lawyer, he's indicating to the Court that he wants to represent himself.

THE COURT:            Okay. Mr. Cedeno, I always try to advise defendants who wish to represent themselves that it is dangerous to do so. You do not have

1    experience in the law, you don't know the

2    procedures or the law itself.

3         In this particular case, if you are

4    convicted, you are facing spending the rest of

5    your life in prison without parole.

6         There may be defenses that would be

7    available to you and a good lawyer can examine

8    those, knows how to examine the witnesses

9    against you, and you might not be in a

10   position to do that as effectively.  You have

11   a right to represent yourself but I would

12   strongly advise you not to do that.

13        One other thing that you should be

14   advised, and Mr. Hernandez has mentioned this

15   to me, is that if you represent yourself, by

16   law you may not testify in this case, you

17   cannot call yourself to testify as a witness.

18        Now, if under those conditions you

19   still want to represent yourself without a

20   lawyer, you have a right to do that, but you

21   will be trying this case with your arms tied

22   behind your back.

23        Now, do you have anything you wish to

24   say?

25             THE DEFENDANT:      I put a motion

1    on the docket to Rule 46(C) -- 44(C), and I

2    want to represent myself.

3              THE COURT:          You say you have

4    filed a motion?

5              THE DEFENDANT:        Yeah.  It's

6    already on the docket.

7              MR. HERNANDEZ:        It was filed

8    before I took over, your Honor.  I may have a

9    copy of it for the Court.

10             Do you have a copy for the Court

11   that's time stamped?

12             THE DEFENDANT:        I got my copy.

13             MR. HERNANDEZ:        That's what we

14   need to show the judge.

15             THE BAILIFF:          We've got them.

16             THE COURT:          Ms. Ducoff, does

17   the State have anything to say in regard to

18   this?

19             MS. DUCOFF:           No.  I believe

20   you've covered twice already the risk of life

21   without parole and you have covered the fact

22   that he would not be able to testify, so I

23   believe you've covered the main impediments or

24   obstacles that would cause the most difficulty

25   for him.

1          You've already indicated that his

2     lack of legal experience will certainly not be

3     something that should be tested when he's

4     facing life imprisonment.

5          THE COURT:            Okay.  Well, if

6     that is in fact your desire, Mr. Cedeno, and

7     you have been duly warned about the

8     consequences, I will allow you to go to trial

9     representing yourself.

10         THE DEFENDANT:        I'm not going to

11    consent to go to trial.

12         THE COURT:            You're not going

13    to consent to go to trial?  There are -- you

14    have filed your motions objecting to the

15    indictments.

16         Ms. Ducoff, has the State responded

17    to those?

18         MS. DUCOFF:           I believe you

19    overruled those motions the last time we were

20    in court.  I believe you denied them.

21         THE COURT:            Okay.

22         MS. DUCOFF:           So I think at

23    this point he has asked to go pro se, and with

24    your denying those motions the case is

25    proceeding, so we should be arranging for a

1    pretrial in one or two weeks, three weeks,

2    whatever, to give him some time to digest the

3    materials, although the materials are in

4    English.

5        He's going to need to meet with an

6    interpreter to substantively explain what's in

7    English, so three weeks might be the minimum

8    time to give time for an interpreter to be

9    hired and to speak with him about the

10   discovery so that he is in a position to have

11   a productive pretrial.

12       THE COURT:      Mr. Hernandez,

13   thank you very much.

14       MR. HERNANDEZ:      You're more than

15   welcome, your Honor.

16       THE COURT:      Mr. Cedeno, your

17   notice of no consent to go to trial is a

18   meaningless exercise in futility.  The

19   citations in there are totally irrelevant.

20   It's best described as gobbledygook.

21       You have two choices, you can have a

22   trial with a jury or you can have a trial

23   without a jury, to the Court without a jury,

24   and there is no other option under the law.

25       If you think that I'm wrong in my

1      decision on the indictment, that's a question

2      for the Court of Appeals if you are convicted,

3      but it's not something that can be addressed

4      here.

12:29:55  5               Ms. Ducoff.

6              MS. DUCOFF:       At the risk of a

7      delay that I certainly don't want to engender

8      because this has been too long on the docket

9      and I have a victim who needs to tell what

12:30:05  10     happened, but I need to protect the record at

11      this point because I don't have an adversary.

12              If this Court believes that his

13      failure to understand that a motion -- he --

14              THE COURT:         Notice of no

12:30:24  15    consent.

16              MS. DUCOFF:       To go to trial,

17      he's not understanding the options here, it's

18      go to trial or plead, and if you take the

19      trial option it's jury or bench.

12:30:37  20           If he's -- for some reason if you

21      think he's not understanding that, to protect

22      the record I would ask this Court to consider

23      a referral to the psych department if you

24      think that that might shed some light on his

12:30:56  25    thought processes.

```
 1            His own -- I think there might be

 2     more than obstinance here.  He claims he

 3     doesn't want to delay the trial but his

 4     behavior is not conducting.

 5            THE COURT:            Mr. Hernandez,

 6     even though I have allowed you to withdraw as

 7     representing Mr. Cedeno, you did have an

 8     opportunity to meet with him, and based upon

 9     your discussions do you feel that a referral

10     might be in order?

11            MR. HERNANDEZ:       Your Honor --

12            THE COURT:           I'm not asking

13     you to go into any specifics obviously.

14            MR. HERNANDEZ:       Given the

15     criteria that I'm very familiar with after

16     having done this for a long time, I don't

17     believe there's any psychiatric issue with

18     Mr. Cedeno.  I think he's competent and I

19     think he's sane, but that's just my opinion.

20     If he were my client, I probably wouldn't have

21     referred him.

22            THE COURT:           Okay.

23            MR. HERNANDEZ:       I would not have

24     referred him.

25            THE COURT:           Being obstinate
```

```
 1    is not, in itself, a sign of mental disease or

 2    illness such as to make him incompetent to

 3    stand trial.

 4              I think we should just proceed and,

 5    Ms. Ducoff, you can provide the discovery to

 6    Mr. Cedeno?

 7              MS. DUCOFF:         I will arrange

 8    to have it delivered to the jail.

 9              THE COURT:          Okay.

10              MS. DUCOFF:         And he doesn't

11    have portal access so I will arrange to have a

12    hard copy printed out and delivered to the

13    jail.

14              I am concerned that Mr. Cedeno could

15    potentially receive it but deny he received

16    it.  I don't know if return receipt requested

17    through the Post Office would be operative in

18    a jail setting so it might be necessary for us

19    to set a pretrial date --

20              THE COURT:          Have it handed

21    over at that time?

22              MS. DUCOFF:         -- and I will

23    get a signature.

24              I think this is the kind of case that

25    I'm going to have to show with signatures what
```

```
 1        has been provided to protect the interests.

 2                    THE COURT:          And have it done

 3        in open court?

 4                    MS. DUCOFF:         Correct.  So

 5        there's a witness.  Absolutely.

 6                    THE COURT:          How long would

 7        it take you to have that prepared to have it

 8        delivered?

 9                    MS. DUCOFF:         I don't think

10        that should be too time consuming, your Honor,

11        but I do have to go downstairs and make sure

12        there's no -- see if there's any discs that

13        need to be copied, so I need some time to go

14        through the file and make that decision.  Two

15        weeks.  In two weeks I should be able to

16        accomplish this.

17                    THE COURT:          Two weeks from

18        today, November 1st?

19                    MS. DUCOFF:         At what time,

20        your Honor?

21                    THE INTERPRETER:    I won't be able.

22        I'm going to be in Texas.

23                    MS. DUCOFF:         For how long?

24                    THE INTERPRETER:    Just for that

25        Thursday and Friday.
```

| | |
|---|---|
| 1 | THE COURT: How about |
| 2 | Wednesday, October 31st? |
| 3 | THE INTERPRETER: That's fine, |
| 4 | your Honor. |
| 12:34:43 5 | MS. DUCOFF: Okay. |
| 6 | THE COURT: Wednesday, |
| 7 | October 31st we'll have a pretrial. It will |
| 8 | be noted that this continuance is at the |
| 9 | defendant's request in order to permit the |
| 12:35:02 10 | State to provide discovery, to prepare |
| 11 | discovery and have it provided to him at that |
| 12 | time. |
| 13 | MS. DUCOFF: Can we make that |
| 14 | for 10:00 or 11:00 on that date, your Honor? |
| 12:35:15 15 | THE COURT: We can do 10:00. |
| 16 | Is that all right with you? |
| 17 | THE INTERPRETER: Yes. |
| 18 | THE COURT: Good. Okay. |
| 19 | MS. DUCOFF: Thank you, your |
| 12:35:27 20 | Honor. |
| 21 | THE COURT: Is there |
| 22 | anything else? |
| 23 | Mr. Hernandez, I'd like to see you |
| 24 | for a moment. |
| 12:35:31 25 | MR. HERNANDEZ: Yes, your Honor. |

```
 1                  THE DEFENDANT:          Yes.  I want to
 2     say something on the record, your Honor.
 3                  THE COURT:              Yes, sir.
 4                  THE DEFENDANT:          I want for her
 5     to read this, judge, that the prosecutor had
 6     committed numerous errors and deprived me with
 7     evidence to put me off of my defense.  I will
 8     not consent to go to trial on any of the cases
 9     before this Court.
10                  THE COURT:              You do not have
11     a right not to consent to go to trial.  There
12     is an indictment.
13                  I want you to listen very carefully,
14     Mr. Cedeno.  The grand jury of Cuyahoga County
15     has returned an indictment.  That action --
16     two indictments.  Those indictments charge you
17     with certain offenses.  The State of Ohio, the
18     prosecutor, is not going to dismiss these
19     indictments, so we have two options, there is
20     a trial with a jury or there is a trial
21     without a jury.
22                  You do not consent or refuse to
23     consent to a trial.  You have no choice.  This
24     case -- these cases will be tried.
25                  THE DEFENDANT:          What you're
```

1    saying to me is --

2                THE INTERPRETER:    Excuse me, your

3    Honor.  I did not understand what he said.

4                THE DEFENDANT:    Well, what

5    you're saying to me is that they went in front

6    of the grand jury without any complaint?

7                THE COURT:        I am not looking

8    -- I have no -- I have no jurisdiction to look

9    beyond the indictment.  We have an indictment

10   which was signed by the foreman of the grand

11   jury --

12                THE DEFENDANT:    Nothing else.

13                THE COURT:        All right.  We

14   are done.  October 31st, 10:00.

15      (Thereupon, Court was adjourned.)

16                - - - -

17

18

19

20

21

22

23

24

25

1   THURSDAY AFTERNOON SESSION, NOVEMBER 8, 2012

2               HEARING

3       THE COURT:         Just so the

4   record will be clear, we have in court at this

5   time Case Nos. 563913 and 564978.

6        Those are the State versus Noel

7   Cedeno.  Mr. Cedeno has elected to proceed as

8   his own attorney without benefit of counsel.

9        The Court previously has advised him

10   of the potential pitfalls there, and

11   nonetheless, he continues to want to represent

12   himself, which is his right.

13        The Court also is aware that Mr.

14   Cedeno asserts that he has -- is not fluent in

15   the English language, and we previously have

16   asked Miss Bernadita Rojas -- I had a brain

17   freeze there -- to act as interpreter;

18   inasmuch as she is not his counsel, she is

19   acting solely as interpreter.

20        Nonetheless, it's been brought to my

21   attention there are some things you wanted to

22   discuss with Mr. Cedeno.

23        THE INTERPRETER:    Me?  No, your

24   Honor.  No.  No.

25        THE COURT:        You're okay

1    then?

2                    THE INTERPRETER:    Yes.  I'm fine.

3                    THE COURT:          Very good.  The

4    purpose of this session is to provide for the

5    exchange of discovery to the defendant by the

6    state, and Miss Ducoff, I believe you have

7    stated that you have almost all of the

8    materials you intend to provide?

9                    MS. DUCOFF:          Correct, your

10   Honor.  I have everything I want to provide

11   except one report from ICAC, Internet Crimes

12   Against Children Task Force --

13                   THE COURT:          Internet Crimes

14   Against Children Task Force.

15                   MS. DUCOFF:          They provided me

16   with a disk, and the disk was prepared by a

17   detective who's currently in the national --

18   he's in the reserves.  I'm not sure which

19   branch of the military it is.  So he's out of

20   state at the moment.

21                   As I recall, he had indicated that

22   the disk really doesn't contain anything of

23   evidentiary value, but I do want him to put

24   that in writing.  And I couldn't get that done

25   these last two weeks because he's been away.

1                So next week it's my understanding

2      that he will provide a report that will

3      summarize the research that he did that was in

4      the disk.

5             THE COURT:          Okay.

6             MS. DUCOFF:        And that, we

7      will send off in a supplemental discovery to

8      Mr. Cedeno, care of the jail.

9             THE COURT:          Okay.  I believe

10     that you also have submitted a notice of

11     nondisclosure of certain -- one exhibit, I

12     believe?  Or some exhibits?

13           MS. DUCOFF:       There are three.

14     I have filed a motion, and in fact, I have a

15     copy of that motion to hand deliver to Mr.

16     Cedeno along with a receipt that he has

17     received that.

18            And that motion indicates to this

19     Court that under various rules, there are some

20     materials I'm not permitted to pass on to Mr.

21     Cedeno in his capacity as a pro se defendant.

22     That includes medical records from Metro

23     Health Hospital, that includes the written

24     statement of the victim.

25            And that comes in two forms.  In one

1    form it was cut off when it was scanned, and

2    so it's a bad copy, but I still included it

3    because it was originally provided to me in

4    that fashion, and I wanted him to see that I

5    had it in an improperly scanned fashion.  And

6    then I asked for that to be corrected, and I'm

7    providing it in a corrected version.

8         And finally, the investigative

9    materials from the Cuyahoga County Department

10   of Children and Family Services have also been

11   provided to this Court.  The cover page of

12   those documents say, in a peach color, counsel

13   only, and that they were delivered to the pro

14   se on November 8, 2012.  Even though they're

15   not delivered to the pro se.  They're

16   delivered to the Court.

17        Those materials I have given this

18   Court additionally, with a copy of the motion

19   telling you that I'm not disclosing those

20   directly to the defendant or providing them to

21   the Court.

22        THE COURT:          Let me ask you,

23   Miss Ducoff, any of the items that you are not

24   permitted to provide directly to Mr. Cedeno,

25   could those be provided to his attorney if he

```
 1          were represented by counsel?

 2                    MS. DUCOFF:         Yes.

 3                    THE COURT:          Okay.

 4                    MS. DUCOFF:         Yes.  So that is

 5          a disadvantage of going to pro se.

 6                    THE DEFENDANT:      Wow.

 7                    THE COURT:          So there is --

 8          as you heard, there are certain items that by

 9          law cannot be provided to anybody except an

10          attorney representing the defendant.

11                    Now -- are you done then, Miss

12          Ducoff?

13                    MS. DUCOFF:         Well, you asked

14          me to tell you what I was not disclosing.

15                    THE COURT:          Correct.

16                    MS. DUCOFF:         We have not had

17          a discussion of what I am disclosing.

18                    THE COURT:          Oh, I'm sorry.

19                    MS. DUCOFF:         Are we on the

20          same page?

21                    THE COURT:          Why don't you

22          put those on the record as well.

23                    MS. DUCOFF:         Thank you, your

24          Honor.

25                    I am providing Mr. Cedeno with
```

```
1    various documents that have all been

2    Bates-stamped so they all have papers marked

3    on them in chronological order, and I'm giving

4    him a receipt so that he can look and see that

5    he has every page that I've indicated, he can

6    sign for them, and he will note there are some

7    missing pages.

8              He's not being asked to sign for

9    missing pages.  Those missing pages are the

10   ones that are -- have been provided to the

11   Court.

12             THE COURT:          Okay.

13             MS. DUCOFF:          And so you'll

14   note that the pages you're receiving also have

15   Bates stamps on them.

16             THE COURT:          Okay.

17             MS. DUCOFF:          So at this time

18   I will give the interpreter the receipt, it's

19   a two-page receipt, and the documents.

20             Does this Court want me at this time

21   to go through the receipt and tell you what

22   I'm providing?

23             THE COURT:          As long as that

24   exists in writing and will be filed, I don't

25   see a reason for you to spread that on the
```

```
 1       record orally at this time.

 2                    MS. DUCOFF:           I don't believe

 3       that I can file this evidentiary receipt, but

 4       I am having my secretary put that into motion

 5       form so there will be one.

 6                    Thank you, your Honor.

 7                    THE COURT:           Good.  Okay.

 8       And you have the receipt.

 9                    MS. DUCOFF:           The receipts

10       have been given to the interpreter, one for

11       the motion of noncertification -- of

12       nondisclosure and one for what has been

13       provided.

14                    THE COURT:           Okay.

15                    MS. DUCOFF:           The one for --

16       regarding what's been provided is a two-page

17       evidentiary receipt.

18                    THE COURT:           Okay.

19                    THE DEFENDANT:        Done?

20                    THE COURT:           I was about to

21       ask Mr. Cedeno if you will sign the receipts.

22       You may want to look at those first, but then

23       sign that you have received them.

24                    THE DEFENDANT:        Okay.

25                    THE INTERPRETER:      Okay.
```

```
 1                    THE INTERPRETER:    I have to say

 2        something.  I want to just put it on the

 3        record.  He's asking me to read this, because

 4        I don't speak English.  And I cannot read it.

 5                    Your Honor, did you want to see

 6        before --

 7                    THE COURT:          If you want to

 8        read it, Miss Rojas.

 9                    MS. DUCOFF:         Is it in

10        English?

11                    THE INTERPRETER:    It's in English,

12        yes.  Just going to show it to the judge.

13                    THE COURT:          I will read this

14        verbatim.  State, dash, I did not give

15        informed consent to any attorney to demand

16        discovery.  I will not except -- I believe he

17        means accept, but except discovery in either

18        of the cases before this Court.

19                    Your discovery is untimely and your

20        discovery is denied acceptance.

21                    Next paragraph.

22                    State, hyphen, the Court and the

23        plaintiff has violated your right to due

24        process of the law guaranteeing by the Ohio

25        constitution, article one, bill of rights,
```

1    subsection ten.

2              MS. DUCOFF:          May I say

3    something, your Honor?

4              THE COURT:           Please.

5              MS. DUCOFF:          Mr. Cedeno does

6    bring up a good point.  I gave discovery in

7    good faith without a demand from him.

8              THE COURT:           Had discovery

9    been provided -- been demanded by counsel

10   previously?

11             MS. DUCOFF:          Yes, it had

12   been.  And when I was preparing this

13   discovery, I did have the same thought, that

14   he had not asked for it, but I also thought --

15   that subject -- that it would be ludicrous to

16   be facing charges of life imprisonment without

17   the possibility of parole and not want to have

18   discovery.

19             So as a courtesy to this Court I

20   decided not to stand on ceremony and come back

21   up to you and say, hey, he never filed, I'm

22   not gonna do what this Court asked.

23             And so I proceeded to provide

24   discovery despite the fact that he had not

25   asked for it.  And now through his writing

1       he's indicating he does not plan on accepting

2       the discovery.

3               So my assumption that he would want

4       discovery has proven to be not accurate.

5               THE COURT:          On this, I will

6       note as well, that on the same sheet of paper,

7       which I will enter into the record, there is a

8       further statement at the bottom of the page

9       that reads, note, colon, do not sign any

10      documents the Court or plaintiff may offer.

11              So apparently, this was prepared for

12      Mr. Cedeno by someone else, whether an

13      attorney, another inmate in the jail, or

14      someone unknown to us, which of course, Mr.

15      Cedeno has the right to receive and to act

16      upon.

17              MS. DUCOFF:          Mr. Cedeno

18      certainly has a right to solicit advice from

19      anyone he choses, but he should be very wary

20      that the person he is seeking advice from

21      isn't facing life imprisonment without parole.

22              THE DEFENDANT:          I want to -- I

23      want to spend little bit English.  Maybe you

24      understand.

25              THE COURT:          We'll try.

```
 1                    THE DEFENDANT:        Please.  I mean,
 2       let me try.
 3                    THE COURT:            Yes.
 4                    THE DEFENDANT:        If you don't
 5       understand, please, I want -- it's something
 6       is -- this case is almost two years for May
 7       last year.  Okay?
 8                    THE COURT:            Yes.
 9                    THE DEFENDANT:        I receive no one
10       indictment; one, two, three, four indictments.
11                    THE COURT:            Yes.
12                    THE DEFENDANT:        Change the
13       story, change the month, change the year,
14       okay?
15                    Now, in each indictment I never
16       receive one complaint.  That's in Rule 3.
17       Each indictment, I don't receive one complaint
18       in the four indictment.  If no -- if no in
19       complaint, no grand jury, no grand jury, no
20       indictment.
21                    Okay?  I got Charlie Feliciano first,
22       and Charlie Feliciano can work because his
23       chest.
24                    Got Oscar Rodriguez, right?  And you
25       look in the dock, because I save it in the
```

1      dock, and you look in the dock, Oscar

2      Rodriguez never have do no paperwork.  I never

3      receive nothing.

4              Now, after year and a half, after

5      year and a half, you provide me this much in

6      discovery, right?

7              And before September 27, you was

8      ready to go to bench trial with Oscar

9      Rodriguez, huh, ready to -- and I no tell him

10     I want to go.  They force me to go.

11             And now, ready on September 27, with

12     no paperwork, where no much discovery, where

13     no complaint, ready to go to trial, hit me

14     with a hammer, get some time.

15             That was -- they violate my speedy

16     trial.  Now, everything you want to cover up

17     with your hand, you want to cover everything.

18     Is not right.  You do it.  You do it with

19     indictment.  You did fraud.  That's what you

20     do with indictment.

21             I got an example right now.  You

22     charge me in the first indictment, I was in

23     jail.  You charge me for rape for 2006, March

24     1st to April 30, huh?  They know I was in

25     jail, okay?

1          Now, in the four indictment, you

2     bring it out, is May -- May, 2006, May 1st,

3     2006.

4          Now, in 2006 you say, they no more

5     rape, they was touching the legs, F-3.  Hey.

6          Now, I was in jail in May 1st, 2006.

7     It's an indictment.  It's black and white.

8     This is a four indictment.  We can go and

9     check it out, put it back, different

10    statement, bring it back.

11         You know the first statement that

12    Kayla Mendez, she did, the first statement, I

13    didn't think, I not remember, you know, when

14    the first statement, you cannot take me to the

15    trial.

16         After year later, she make another

17    statement, because I remember, and you know it

18    no DNA for facts.  Is no evidence.  At all.

19         2006, 2007, 2008, it's nothing.  No

20    physical evidence.  Now, you want to -- it's a

21    lot of mistake.  A lot of something they doing

22    with me and plus the lawyer.

23         Hey, that's why I did by myself.

24    Because I cannot trust no lawyer.  And that's

25    over indictment, indict you, indict you for no

1    reason.

2           Hey.  Why you no charge me before?

3    We were ready to go to a trial before.  Why

4    you don't do that?  If you had evidence?  Why

5    you indictment, indictment?  Change the years.

6    Change the statement.  Another story.  This is

7    serious case.  You did it or no did it.

8           And the statement, the first

9    statement, they say, I think it was in my

10   butt.  What?  I think?  Do you remember?  I

11   don't remember.

12          Now, the second statement, year

13   later, you say you remember.  This is serious

14   case.  You play with the law.  Is it true or

15   not true?  You can be back and forth changing

16   one statement to another statement.

17          There is -- it's impossible.  And you

18   know for fact.  And now you give me four

19   indictment with the same story, change story.

20   And no complaint?  And no complaints, no grand

21   jury, no grand jury, and no indictment.  And I

22   don't receive one complaint.

23          Now, after year and a half, you think

24   I gonna agree with this?  No way.  It's

25   untimely.  This is fraud.

1        THE COURT:          Miss Ducoff?  I

2  -- let me start off by saying that I've known

3  Miss Ducoff for many years as a lawyer in the

4  prosecutor's office.

5          And I would find it difficult to

6  believe that you would intentionally do

7  anything improper.  I know that there have

8  been some issues that have caused this case to

9  be -- the indictments to be changed, the --

10  reindictments to come down.

11          And are you in a position to respond

12  to the statements that Mr. Cedeno has been

13  making?

14        MS. DUCOFF:          I am.  I just

15  need one moment.

16        THE COURT:          Take your time.

17          Mr. Cedeno, you have stated that you

18  were in jail during some of the dates that are

19  in the indictment.  Am I correct?  I know

20  there are records.

21        THE DEFENDANT:          2006 and May

22  1st, okay?  I was in Marion Correctional

23  facility for one year.  That's what happened.

24        THE COURT:          Out of -- from

25  our court?  From this court?

1        THE DEFENDANT:        Yeah.   That's

2   why I never been in Cuyahoga County.   That's

3   why the first indictment, they say March 1st

4   to March 30, that's a dismiss indictment

5   because I was in jail.  It's in two place.

6   You cannot be in one time in two place.

7        THE COURT:        Okay.

8        THE DEFENDANT:        I go home May

9   11.  And I got --

10        THE COURT:        Just one moment.

11        THE DEFENDANT:        I was correct?

12        THE COURT:        I don't have

13   that.

14        THE DEFENDANT:        I got evidence.

15   I got out.   That's what happened.

16   Mr. Feliciano explained to you when that

17   happened, when the first indictment.  The

18   first indictment they got me March 1st to

19   April 30.

20        THE COURT:        No.  I

21   understand that.  I just don't have the

22   records.  Let me speak.

23        THE DEFENDANT:        Okay.

24        THE COURT:        I don't have the

25   records here --

1          THE DEFENDANT:         Okay.

2          THE COURT:             -- for when you

3     were in prison.

4          THE DEFENDANT:         Yeah.  I was in

5     Marion Correctional in Columbus.

6          THE COURT:             I understand

7     you're saying that.  I just don't have any

8     records --

9          THE DEFENDANT:         That's when.

10         THE COURT:             -- as to when

11    you went there and when you were released.

12         THE DEFENDANT:         Yeah.

13         THE COURT:             I could get

14    those from the state.

15         THE DEFENDANT:         As to.

16         THE COURT:             I don't know,

17    Miss Ducoff, do you have any such records?

18         MS. DUCOFF:            Yeah.  I believe

19    they're part of that discovery package.  Mr.

20    Cedeno is absolutely right.

21         THE DEFENDANT:         Okay.

22         MS. DUCOFF:            The first

23    indictment included a time period when he was

24    in prison, and therefore could not have

25    assaulted this child.  But this child --

1    remember, we're talking about a child --

2           THE DEFENDANT:      Remember --

3           MS. DUCOFF:        -- under

4    thirteen years old doing the best she can to

5    give dates.  So we brought her back to do a

6    better job of that, and learned that her dates

7    had been off, her estimates had been off.  And

8    that's what prompted the second indictment.

9           That was corrected in the second

10    indictment.

11           THE DEFENDANT:    No.  And fourth

12    indictment -- in the four indictment that you

13    see -- she said it's correct, we no have to go

14    to computer.  She said that.

15           THE COURT:        Okay.

16           THE DEFENDANT:     It's correct.

17    So if it was correct, why, the four

18    indictment, you put 2006, May 1st?  Is right

19    there.  Is in black and white.

20           THE COURT:       Well, you're

21    saying the fourth indictment, you mean --

22           THE DEFENDANT:    2006.  May 1st.

23           THE COURT:       The current

24    indictment, 564978?  Correct?

25           THE DEFENDANT:     Yes, sir.

| | |
|---|---|
| 1 | THE COURT: Okay. |
| 2 | THE DEFENDANT: 2006. May 1st. |
| 3 | THE COURT: Okay. That |
| 4 | says, in count one, that the offense took |
| 5 | place during a period of actually thirteen |
| 6 | months, from May 1st, 2006 to May 31st, 2007. |
| 7 | THE DEFENDANT: May 1st. |
| 8 | Uh-huh. |
| 9 | THE COURT: Now -- |
| 10 | THE DEFENDANT: May -- |
| 11 | THE COURT: As a matter of |
| 12 | fact, that is also count two, the same dates. |
| 13 | Both of those gross sexual imposition. |
| 14 | THE DEFENDANT: Yeah, I know. |
| 15 | THE COURT: Count three -- |
| 16 | THE DEFENDANT: But -- |
| 17 | THE COURT: -- is -- states |
| 18 | that the date of the offenses is April 30th, |
| 19 | 2008 -- |
| 20 | THE DEFENDANT: I understand. |
| 21 | THE COURT: -- to April |
| 22 | 29th, 2009. |
| 23 | THE DEFENDANT: You see? I got, |
| 24 | first of all, they May 1st, May 2nd, May 3rd, |
| 25 | the whole week the first of May, but they say |

1    that it happened and indictment say from May

2    1st.

3                   THE COURT:          Okay.

4                   THE DEFENDANT:          Now, she say

5    maybe it can happen May 1st, maybe it happened

6    May 2nd, maybe it happened May 3rd, maybe it

7    happen May 4th, I go home the second week in

8    May.  Now, they say something from the first

9    indictment.  It's impossible.

10                  How you gonna say -- because

11   indictment, this say that.  And 2941.03

12   section D, you have to say when is the

13   incident happen.  In all four indictment, you

14   never say when the incident happen.  In 2006,

15   is not an address.

16                  MS. DUCOFF:          The problem here

17   is --

18                  THE DEFENDANT:          And now --

19                  THE COURT:          Hold on.

20                  THE DEFENDANT:          And now my

21   problem is you never give me complain, with no

22   complain, no grand jury, no grand jury, no

23   indictment.

24                  THE COURT:          I think --

25                  MS. DUCOFF:          I don't

1    understand the terminology.  I'm not

2    understanding.

3              THE COURT:          Mr. Cedeno, when

4    you say no complaint?

5              THE DEFENDANT:      It's a Rule 3.

6              THE COURT:          Okay.  Let's get

7    the rules out and we'll look at them together.

8    Why do you say?

9              THE DEFENDANT:      Right here.

10             THE COURT:          Okay.  Rule 3

11   merely states that a complaint is a written

12   statement of the essential facts constituting

13   the offense charged.  A complaint is not

14   necessary to take a matter to the grand jury.

15   A matter can go to the grand jury upon a

16   written complaint, or not.

17             We have an indictment that is signed

18   by the foreman of the grand jury and also by

19   the prosecutor.

20             So I don't understand your concern

21   about the -- there not being a complaint in

22   the file.

23             THE DEFENDANT:      Let me try --

24   okay.  Let me -- I want to explain to you, my

25   Honor.

1    THE COURT:          We do have in

2    the file a complaint summary and bond report

3    from the county prosecutor's office, dated

4    July 28, 2011.

5    THE DEFENDANT:          I was -- okay.

6    I was September 27 go to the trial.  Bench

7    trial, that day, with Oscar Rodriguez, right?

8    I never get one piece of paper with no

9    information.  That day it was ready to get

10   time in jail with no paper received at all.

11   THE COURT:          Okay.

12   THE DEFENDANT:          And this right

13   now, after year and a half, they trying to

14   give me something because they know -- Juan

15   Hernandez see the folder and right away he put

16   a motion, a list, because he say, we no have

17   nothing, the lawyer did it, after year and a

18   half they trying to bring me this stuff.

19   THE COURT:          Okay.

20   THE DEFENDANT:          I don't receive

21   one thing.

22   MS. DUCOFF:          Everything that

23   was provided to Mr. Cedeno today was provided

24   to the prior attorneys.  Mr. Cedeno seems to

25   be disputing that, but I think this is not the

```
 1        proper forum to be disputing what he received

 2        from a prior attorney, because we don't have

 3        everyone here -- version -- even if Oscar and

 4        Juan were here and Mr. Santiago was here, it

 5        would turn -- it would get us nowhere.

 6              We should be focusing on this trial.

 7        That's why you were -- this Court cordially

 8        dismissed Mr. Rodriguez, because Mr. Cedeno

 9        asked you to.

10              We now -- then you offered him

11        Mr. Hernandez's services.  And he rejected Mr.

12        Hernandez's services.  But we're crying over

13        spilled milk.

14              Why don't we just focus on the

15        current charges and the discovery, because he

16        received everything and he's complaining about

17        the different indictments, and I want Mr.

18        Cedeno to know that the last grand jury that

19        heard this case was told about the entire

20        history of how we got to four indictments.

21              There have been no secrets about the

22        mistakes the detectives may have made or the

23        mistakes the victim may have made.  There is

24        nothing being done here that we're -- have a

25        fear of transparency.  It's all been above
```

1    board.

2              THE COURT:            Mr. Cedeno, let

3    me explain one thing to you.  Over many years

4    -- I've been a judge now for 25 years.  For

5    many years I have a problem with the fact that

6    the prosecutor's office did not provide full

7    discovery in many cases.

8              I was one of the two people who were

9    responsible for a change in the law.  And for

10   the last several years now, the prosecutor has

11   been required to provide discovery.

12             And in fact, the previous prosecutor,

13   Mr. Mason, started what we call The Portal.

14   All discovery is provided immediately to the

15   attorney upon request electronically.

16             With -- I don't know for a fact that

17   in this case that was done, without having

18   Mr. Feliciano, or Mr. Rodriguez, or

19   Mr. Hernandez present, we don't have that

20   information.

21             THE DEFENDANT:        Hmm-hmm.

22             THE COURT:            But I do know

23   that the prosecutor's office and Miss Ducoff,

24   in particular, are very careful to follow the

25   rule.

1    MS. DUCOFF:          And your Honor,

2    I can provide proof that Mr. Santiago and

3    Mr. Rodriguez were given information through

4    The Portal.  We have -- I can provide that.

5          THE DEFENDANT:        I can --

6          MS. DUCOFF:          There's no

7    doubt.

8          THE COURT:           I'm just saying

9    we don't have that here now.

10          THE DEFENDANT:        No.  No.  No.  I

11    understand that.  Look.  And you say they not

12    here.  You don't have no proof and the dock is

13    nothing.  A proof for in the dock is nothing

14    to prove to a lawyer they did something.

15          Now, I gonna tell you right now

16    something, you wouldn't believe me or not.

17    But you want to believe somebody, they tell

18    you the true.

19          Right now, that day, the lawyer say,

20    the only problem we -- only problem we got, we

21    no have no evidence, we no have no paper, the

22    only thing we got is her testimony.

23          Right?  And we no have no

24    evidence.  The prosecutor, they don't give me

25    nothing.

1               Who's there that day with me? Miss

2 Rojas. She's my witness. She was there that

3 day. So I think for paper she can tell you

4 who say the true or not. She was there. She

5 my witness. She's right here.

6               MS. DUCOFF:       I would be

7 absolutely shocked if Miss Rojas under oath

8 tells this Court that he was told there was no

9 evidence.

10               THE DEFENDANT:     Why she no say

11 that? Why she no say that? So she was here.

12 So don't say, I give you this, I give you

13 that, because the lawyers, both lawyers say,

14 we no have nothing, we got only one person

15 making the statement. They don't have

16 nothing.

17               Only put that person right there in

18 the front, may cry, they cry, they believe her

19 because the prosecutor, they no have nothing.

20 And we don't have no paper. The lawyers told

21 me that and she was there that day.

22               THE COURT:       Okay.

23               THE DEFENDANT:    So I can say

24 don't believe me. You know Miss Rojas for

25 while. She can tell you the true right now.

```
1    We can ask Miss Rojas, say I lie or not I lie.
2    She's right here.
3              THE COURT:          I am not going
4    to --
5              THE DEFENDANT:      Because you know
6    I say the true.
7              THE COURT:          No.  I am not
8    going to -- I don't think it makes a
9    difference.  At this point we are here right
10   now.  Miss Ducoff has presented to you the
11   discovery that would apply to this case.
12             If you decide you don't want it, you
13   don't have it.
14             THE DEFENDANT:      Yeah.  I deny
15   it.
16             THE COURT:          You do not have
17   to have it.
18             THE DEFENDANT:      I will deny it.
19             THE COURT:          The state, the
20   prosecutor, has a duty to provide it.  If you
21   don't want it, you don't have to accept it.
22             THE DEFENDANT:      Yeah.  I deny.
23   I do not consent this paperwork after year and
24   a half.  No.
25             THE COURT:          Okay.
```

1    THE DEFENDANT:        Okay?  And now,

2    you see, when the true is true and when the

3    person is right here, why you no ask is the

4    person who is there is my witness.

5    THE COURT:        Because it does

6    not make a difference right now.

7    THE DEFENDANT:        That mean that

8    what she say, that was not true.  Because she

9    not give you no paper with no information.

10   That's why I was so mad.  After year and a

11   half you provide -- and I put it in the dock

12   is no paper to put a motion.  There was

13   nothing.  Everything why I do by myself.

14        Now, no try put nothing in the dock

15   because it's save.  The docket is saved.

16        MS. DUCOFF:        I didn't

17   understand that.

18        THE DEFENDANT:        You know what?

19   She's -- she know I say the true.  And what I

20   say to you, you never prove nothing.  You

21   never give DNA, no complaint, no paper

22   whatever, no motion discovery, nothing for

23   after year and a half, I get this paperwork.

24        Lawyer, they don't have nothing.

25   Only the lawyer say this, we have the victim,

1    maybe crying or not, but they don't have no

2    evidence. They got two statement report.

3    They first statement, lie. So we got the

4    second one.

5           MS. DUCOFF:        Your Honor, I

6    would --

7           THE COURT:        Yes. Go ahead.

8           MS. DUCOFF:        -- ask Mr.

9    Cedeno to be logical about this. If

10    Mr. Rodriguez was going to go to Court on a

11    case for his client where his client was

12    facing life imprisonment with no parole, if he

13    had felt that the state had not complied with

14    discovery, he would have gone to this Court

15    for an order compelling the prosecutor to

16    provide it.

17         But he never did that because I

18    provided discovery. I can provide the hard

19    copy to show it. I can show it on a computer.

20    I can show that Mr. Rodriguez and Mr. Santiago

21    accessed the discovery.

22         We have such sophisticated technology

23    now that I can even show they opened it up and

24    when they opened it up. So the only dispute

25    seems to be not whether I sent it to the

1    counsel, is whether counsel shared it with

2    him.

3            And I'm saying whether or not counsel

4    shared it with him, that's something, there's

5    no sense quibbling about that anymore because

6    we're going to -- we're starting afresh, and

7    we don't have to get into that argument.

8            THE COURT:        The -- I don't

9    know for a fact, because I have not -- I don't

10   have any of the exhibits, any of the evidence

11   myself obviously.

12           But I know in these types of cases,

13   there very often is no DNA evidence.  I don't

14   know if you have any.  If you do, I expect

15   that it would have been provided.

16           MS. DUCOFF:        Correct.  And

17   that's another thing I'm -- I'm very confident

18   that when the attorneys said to him, we don't

19   have anything, or they don't have anything,

20   that is their streetwise way of saying that

21   this is like every other rape case, it's a he

22   said/she said.  And there's no smoking gun,

23   there's no DNA, there's no eyewitness.

24   There's nothing.

25           And I think that's what the attorneys

1     were trying to say to him.

2                    THE COURT:          Are you saying

3     then that there is no physical evidence?

4                    MS. DUCOFF:          There is no

5     physical evidence.  There is no scientific

6     evidence.  This is a case of a young -- a

7     victim telling us what happened.

8                    THE DEFENDANT:          Tell a stories.

9     A story.  Because now we gonna -- the true is

10    one thing.  When you hit me with a hammer in

11    the head, and I'm bleeding, I not gonna say,

12    no, only hit me in my back, or hit me in my

13    legs.  It's something, where you did something

14    that's true, it's one statement.

15                    THE COURT:          Okay.  Mr.

16    Cedeno.

17                    THE DEFENDANT:          Okay?

18                    THE COURT:          If we go to

19    trial, and there is a discrepancy, there are

20    conflicting statements, if the victim said at

21    one time that you touched her on her thigh, at

22    another time she said that you touched her on

23    her breast, that is something that can be used

24    to question her testimony.  Am I right?

25                    THE DEFENDANT:          I understand.

```
1      But we got it ready in black and white.
2                THE COURT:          Yes.
3                THE DEFENDANT:        That's what I
4      said.  When we look at this case, what's going
5      on here?  What's the true?  Why too many
6      stories?  Why too many stories?  This serious
7      case.
8                So we no go for that -- for that type
9      of story.  Why you no say, if something's
10     gonna happen is a true is a true.  It's not I
11     remember and I think.  Because it's there in
12     black and white.  Huh?  And one thing.
13               THE COURT:          This is why --
14               THE DEFENDANT:        The 27,
15     September, you ready to do whatever you have
16     to do to give me some time.  This, before
17     September 27, we no have no paper.  You was
18     ready to do with this.  To give me some time.
19     This, too late.  It's late.
20               THE COURT:          Well, prosecutor
21     -- Miss Ducoff was ready to go to trial.
22               THE DEFENDANT:        I know.
23     Definitely, I believe that --
24               THE COURT:          And --
25               THE DEFENDANT:        -- with no
```

paper.

THE COURT:                -- I found that
you were concerned that you weren't going to
be able to be -- have the trial yet, that's
when I allowed you to have Mr. Hernandez
withdraw, and when I allowed you to represent
yourself, and give you time to prepare for
trial.

Now, you understand that one of two
things is going to happen.  Either -- well,
the state is not going to -- prosecutor is not
going to dismiss the case.  Either we go to
trial, or you work out some deal and plead
guilty.

You say you don't want to plead
guilty, then that's your right.  That means
we're going to have a trial.  Either with a
jury or without a jury.  And I don't care
which we do.  It's your decision.  It's your
decision, your right entirely.

If the victim -- if the girl's
testimony is not credible, you will be found
not guilty, and you will walk away.

THE DEFENDANT:       Your Honor, I
send you objections to indictment, demands for

1     the discharges.  I appreciate you looking and

2     take a decision before we go to the trial.

3     And look all this paper.

4                THE COURT:            Yes.

5                THE DEFENDANT:       All the mistake,

6     all what they did.

7                THE COURT:            Oh, I've looked

8     at them and as a matter of fact, I raised some

9     of the questions with Miss Ducoff when there

10     was a mistake on the one indictment as to the

11     prior conviction.

12         I was the one who called it to the

13     prosecutor's attention, and that's, I think,

14     when we got the latest indictment.

15                MS. DUCOFF:          I had asked you

16     to correct what I called a typographical error

17     because the prior conviction had said Queens

18     County in the State of Ohio.

19                THE COURT:            Yes.

20                MS. DUCOFF:         And I'd asked

21     you, would you take judicial notice that

22     Queens County is not in Ohio, it's in New

23     York.  And you had thought that the better way

24     to ever make -- to fix those mistakes was not

25     to do it by amendment, would be to officially

```
 1          go back to the grand jury and apprise them of
 2          that and tell them, and so that was one of the
 3          -- something that was covered.
 4                    THE COURT:          I have
 5          reviewed --
 6                    THE DEFENDANT:          It's not
 7          mistake.  They not mistake.  When they find
 8          out I was in jail, that's why they call it
 9          mistake, because I no was in jail, believe me,
10          they would said that that happened.
11                    THE COURT:          Okay.  Look.  Do
12          we have a trial date now?
13                    MS. DUCOFF:          No.  Because
14          given that I just gave him multiple pages in
15          the hundreds to look at, I thought he's going
16          to need time to have someone translate those
17          records into Spanish for him so he's fully
18          prepared to go to trial.  But now he's saying
19          he doesn't want them, so I need to get back
20          the motion, my receipts --
21                    THE DEFENDANT:          I have for
22          record all this paper back to them.
23                    THE COURT:          That's fine.
24          That's your right.
25                    THE DEFENDANT:          Yes, sir.
```

1                THE COURT:          And I will

2    accept that.

3                THE DEFENDANT:     I do not sign

4    and agree with that.

5                THE COURT:          And that's done

6    in open court so we're okay.

7                THE DEFENDANT:     And now --

8                THE COURT:          And we have to

9    get a trial date.

10              THE DEFENDANT:     My question, my

11    Honor, what happened when this charge by --

12    about objection with indictment, demand for

13    the discharges.  We got them.

14              MS. DUCOFF:         What are the

15    captions of those, Miss Rojas?

16              THE COURT:         Demand for

17    discharge for defects in the institution of

18    the prosecution.

19              THE DEFENDANT:     Yeah.  And

20    objection.

21              MS. DUCOFF:         I know you ruled

22    on some.  I thought you overruled these.

23              THE DEFENDANT:     No.

24              THE COURT:         I did rule on

25    something.

```
 1                    THE DEFENDANT:      The other two
 2        don't consent, counsel to consent.
 3                    THE INTERPRETER:    It's in the
 4        docket?
 5                    THE DEFENDANT:      Yes.
 6                    THE INTERPRETER:    Everything is in
 7        the docket.
 8                    MS. DUCOFF:         Miss Rojas, what
 9        were the dates those were filed?
10                    THE DEFENDANT:      Oh, they filed
11        long time ago.
12                    THE INTERPRETER:    That was October
13        15, 2012 and 4-15-2012 and October 15, 2012.
14                    THE DEFENDANT:      It's in the
15        dock.  It's in the computer.  All you have to
16        look at the computer.  It's open.
17                    THE COURT:          Let's see.
18                    THE DEFENDANT:      I'm sorry for my
19        English.
20                    THE COURT:          It's not a
21        problem.
22                    THE DEFENDANT:      Give you hard
23        time.
24                    THE COURT:          It appears that
25        these have not been ruled on.  There's no
```

```
 1    journal entry.

 2              Did you want to respond to these in

 3    writing, Miss Ducoff?

 4              If you will need a copy, I can give

 5    you copies of these.

 6              THE DEFENDANT:     It's in the

 7    dock.  It's in the computer.

 8              THE COURT:     Yeah.

 9              THE DEFENDANT:     Yeah.  It's no

10    problem with that.

11              MS. DUCOFF:     I believe that

12    you don't require a response.  They don't

13    require a response.

14              THE COURT:     Okay.  Then I

15    will -- I will simply review them again, and

16    will put on an entry either granting or

17    overruling or otherwise responding to them.

18              Well, actually, in part, I can rule

19    on some of this now.

20              The amended notice of appearance,

21    notice of recision of pleas filed on September

22    7.  You did these before you were representing

23    yourself.  You claimed to be in a hybrid

24    capacity as second chair with attorney Oscar

25    Rodriguez.
```

1          Nonetheless, I will note that in that

2     recision of pleas, you were entering a denial

3     of the charges.  I will construe that as a

4     plea of not guilty, which I believe was what

5     was done at arraignment anyway.

6          I know we dealt on the record, but I

7     don't believe I ruled officially, on September

8     13, we have a denial of consent to bench

9     trial, denial of consent to jury trial, and I

10    know I discussed this the last time we met.

11         Unless the state dismisses the case,

12    or you plead guilty to something, either there

13    is a trial to the Court or a trial to the

14    jury.

15         It's your right to have one or the

16    other.  But you must have -- if you do not --

17    if you do not want a jury trial, you have to

18    waive it, and we can -- you can decide that at

19    any time prior to the beginning of trial.  If

20    you want a jury trial, I would be glad to call

21    up a jury and we'll do that.

22         If you prefer a -- to waive a jury

23    and have this tried to the Court without a

24    jury, that's your right.

25         Amended objection to ratification of

1 commencement of action.  This refers to a

2 question of whether this is being commenced in

3 the name of the real party in interest.

4    Please remember, Mr. Cedeno, that in

5 any criminal case, the only real party in

6 interest is the State of Ohio.

7    The real party in interest is not any

8 victim of a crime, but the state whose

9 criminal laws are claimed to have been

10 violated.

11    In the remaining item here, which was

12 filed September 24th, it states, declaration

13 of facts in support of demand for discharge

14 for defects in the institution of the

15 prosecution and defects in the indictment,

16 information and complaint pursuant to Rule --

17 Criminal Rule 12(C)(1) and 12(C)(2) and

18 rebuttal of presumption of charges alleged.

19    In reading that, it appears to be a

20 denial of the facts as alleged by the state.

21    That is another way of pleading not

22 guilty.  If you deny that these facts exist,

23 that requires the prosecutor to prove -- I'll

24 note the first one.

25    You state, I, Noel Cedeno, state, I

1    did not have sexual contact, to-wit, rubbing

2    of inner thigh, vaginal with Kayla, not your

3    spouse, blah, blah, blah; and number two,

4    similarly; number three; number four; in other

5    words, what you are saying is, you deny the

6    charges.

7              That is, in fact, a not guilty plea.

8    You had already entered a not guilty plea at

9    the time of your arraignment, so the state has

10   the obligation of proving each and every one

11   of these charges by evidence beyond a

12   reasonable doubt.

13             And I expect that Miss Ducoff is

14   going to do her best to do that, to try to do

15   that.  And either she will or she will not

16   present enough evidence.

17             THE DEFENDANT:       She gonna try

18   her best in four indictment.

19             THE COURT:          Look.  Mr.

20   Cedeno, I don't care.

21             THE DEFENDANT:       I understand,

22   but she gonna try -- I bet you she gonna try

23   the worst -- the best because, hey, it's --

24   it's too much.  It's too much story.  It's too

25   much lie.  And you can see in black and white.

```
1    You don't need no college to see what they

2    doing.

3              THE COURT:          Well --

4              THE DEFENDANT:       You know, waste

5    -- this is -- man.

6              THE COURT:          Mr. Cedeno, I do

7    not have any evidence here.  I have never seen

8    Kayla.  I do not know what she looks like.  I

9    do not know what she is going to say if she

10   testifies in this case.  I do not know whether

11   she is going to be a believable witness or

12   not.

13             Miss Ducoff is preparing to try this

14   case.  And if Kayla is a believable witness,

15   or if she's not a believable witness, that's

16   something to be decided during the trial.

17   Okay.

18             I think we've --

19             THE DEFENDANT:       My Honor, before

20   we determine to the --

21             THE INTERPRETER:     I want to know

22   what you gonna decide about the indictment in

23   both my motions.

24             THE COURT:          Which motions

25   are we talking about?
```

1           THE DEFENDANT:        Demand for the

2    charges.

3           THE INTERPRETER:     For the motion,

4    caption said, demand for discharge for the

5    defect of the institution of prosecution and

6    defect in indictment, information and

7    complaint pursuant to Criminal Rule 12(C)(1)

8    and 12(C)(2).

9           THE DEFENDANT:        And objection.

10          THE INTERPRETER:     And the other

11   motion, caption read, amended objection to the

12   indictment in Case No. 12-563913-A,

13   12-564978-A, 12-559917-A, and 12-552923-A,

14   which are defective up to the face in

15   violation of ORC 2939.20, 2931.06, 2921.08 and

16   2931.03.

17          THE COURT:           Okay.  Those

18   actually were placed into the file in the

19   earlier case, 563913.  I have not reviewed

20   them.  I will.  I will do so.

21          THE INTERPRETER:     You gonna do

22   that before the trial, Judge?

23          THE COURT:           Well, yes.  I

24   don't know when the trial will be, but this

25   will have to be done before that.

```
 1                THE DEFENDANT:       I'll wait for

 2       it.

 3                THE COURT:           Okay.  But it

 4       won't be done today.

 5                THE DEFENDANT:       We got plenty of

 6       time.

 7                THE COURT:           I know.  Okay.

 8                Is there anything else, Miss Ducoff?

 9                MS. DUCOFF:          Well, my only

10       concern now is since Mr. Cedeno has rejected

11       my discovery, if this Court wants to tell me

12       there's no need for me to --

13                THE COURT:           You have met

14       your obligation.

15                MS. DUCOFF:          -- be wasting

16       paper to send an additional discovery.  As I

17       indicated earlier in this hearing, there was

18       something else I wanted to send him.

19                THE COURT:           Mr. Cedeno has a

20       written statement here which I then read into

21       the record is that he will not accept any

22       discovery in either case.

23                THE DEFENDANT:       After year and a

24       half.

25                THE COURT:           Well, wait.
```

1      We're not --

2              THE DEFENDANT:        Yes.

3              THE COURT:        I don't care

4      about what happened a year and a half ago or

5      six months ago.

6              THE DEFENDANT:        It's a long

7      time.

8              THE COURT:        Right now, Mr.

9      Cedeno, are you saying you will not accept any

10     discovery from the state.

11             THE DEFENDANT:        I am.

12             THE COURT:        I am releasing

13     Miss Ducoff from her obligation to provide

14     discovery.  If at some point you say you want

15     discovery from the state, you will send a

16     notice?

17             THE DEFENDANT:        I never say

18     that.  Uh-huh.  Put on record I never say I

19     want to.  You know?  I said they never -- the

20     lawyers, they never bring it to me, all this

21     paper.  I asked the lawyer to bring it to me.

22             THE COURT:        That's not an

23     issue.  What the lawyer did or did not do.

24     Wait.

25             Mr. Cedeno, you will listen to me

1    now.

2              I don't care what your lawyer -- your

3    previous lawyers did or did not do.  Right

4    now, the prosecutor, Miss Ducoff, has provided

5    or has attempted to provide you with the

6    discovery in your case.

7              If you want to accept it, you may do

8    so right now.  If you do not want to accept

9    it, she will be -- not be required to provide

10   any more discovery unless and until you send a

11   notification to the Court that you want

12   discovery.

13             That's fine with me.  Either way.

14   But you can't have it both ways.  You can't

15   say you don't want it, and then complain that

16   you didn't get it.  You decide which you want.

17             THE DEFENDANT:        I do not want

18   it.

19             THE COURT:           Good.  Then Miss

20   Ducoff --

21             THE DEFENDANT:        I do not sign.

22   I do not want it.

23             THE COURT:           Miss Ducoff --

24             MS. DUCOFF:           Can Miss Rojas

25   please put that into the record?

 1              THE DEFENDANT:        No.  I said

 2     that, too, but I --

 3              MS. DUCOFF:        But I want the

 4     record to reflect it wasn't bad English that

 5     said it.  I want Miss Rojas to put it in

 6     Spanish that he agrees with, that he doesn't

 7     want Spanish, so he can never say this is an

 8     English --

 9              THE DEFENDANT:        Yeah.  I wanted

10     to say this since September 27, is a bench

11     trial, she was ready to hit me with a hammer

12     with no evidence.  Huh?  See?  I don't stand

13     to my right, I was guilty with no paper, with

14     no evidence.  This the type of prosecutor we

15     have.

16              MS. DUCOFF:        Let the record

17     reflect that all the discovery that was given

18     today -- I know I'm repeating myself -- was

19     provided to the prior attorneys.

20              THE COURT:        I would suggest,

21     Miss Ducoff, that you file a notice with the

22     Court, attached to it, the evidence that you

23     say you have, as to what discovery was

24     provided to which attorneys and when, because

25     if this issue comes up on appeal, I want the

1    record to be clear.

2             And if you did not provide discovery,

3    then we have an issue that we'll have to deal

4    with.  But if you did provide the discovery to

5    the prior attorneys, I want that to be clear

6    on the record in this case.

7             Because the last thing I want is for

8    the Court of Appeals to say that we violated

9    Mr. Cedeno's rights by not giving him full

10   discovery in a timely manner in this case.

11            MS. DUCOFF:          I may invite the

12   other attorneys to do affidavits also.

13            THE COURT:          If they want to

14   do affidavits, that's fine, too.

15            THE DEFENDANT:       Hey.  And we

16   look at -- we look in the computer, and we

17   look in the dock, after year and a half, they

18   -- no comp -- there's no notice to provide for

19   motion to discovery.

20            THE COURT:          Mr. Cedeno, you

21   do not have access to the -- what we call The

22   Portal.  Wait.

23            THE DEFENDANT:       I got

24   everything.  I got evidence.  I got black and

25   white.

1          THE COURT:              Listen to me,

2     please.  You do not have access to what we

3     call The Portal.  That is the computer system

4     by which the prosecutor provides discovery to

5     the attorney.  That is not publicly available.

6              Now, that's why I'm telling Miss

7     Ducoff that if that discovery was provided, I

8     want her to put on the record a copy of the

9     notices that were sent and received so that we

10    have proof.

11             And if that proof is not there, then

12    we have to deal with the question of why no

13    discovery was provided.  And I will deal with

14    that at the appropriate time if that's the

15    case.  Okay?

16             Good.  Okay.  We are now done.

17                  -  -  -  -

18             (Thereupon, court was adjourned.)

19                  -  -  -  -

20

21

22

23

24

25

1    **FRIDAY MORNING SESSION, NOVEMBER 16, 2012**

2

3                 P R O C E E D I N G S

4

5                 THE COURT:           Okay.  At this

6    time we have before us case numbers 563913

7    and 564978, both of those State versus

8    Noel Cedeno.

9                 Before we proceed any further, we

10   have an interpreter.  The one we have been

11   using is unavailable today, and I believe

12   Miss Hoyos, you are coming from the language

13   bank?

14                 THE INTERPRETER:       Correct.

15                    -      -     -

16                 (The interpreter Catherine Hoyos

17                 was first duly sworn by the Court.)

18                    -      -      -

19                 THE COURT:           You are a

20   certified interpreter?

21                 THE INTERPRETER:     I am not, but

22   I have been in your court and I have been in

23   others, so I will do the best of my ability.

24                 THE COURT:           I should also

25   note for the record that based on previous

1    experience in open court, Mr. Cedeno, while

2    not fluent in English, he can understand and

3    has spoken English.

4              Okay.  It's been brought to my

5    attention, Mr. Cedeno that first of all, you

6    are -- the Court is required to advise you

7    both on the record and I believe in writing,

8    of the possible penalties as part of your

9    right to represent yourself without an

10   attorney.

11             With that in mind, I have, with the

12   help of the prosecutor Miss Ducoff, we have

13   prepared a paper that gives the range of

14   penalties for each of the 11 counts in your

15   indictment in case number 564978.

16             Miss Ducoff, am I correct that upon

17   disposition of that case, the prior one of

18   563913 would be dismissed since they are

19   duplicative?

20             MS. DUCOFF:          Yes.

21             THE COURT:          Now Mr. Cedeno,

22   at a previous hearing, I believe Miss Ducoff

23   gave in open court -- told you the range of

24   penalties.

25             THE DEFENDANT:        Uh-huh.

```
1          THE COURT:          I now have a
2     copy of that, which I have gone over and I
3     can present that to you.  It is in English.
4     If you need it in Spanish, we can have a
5     translation made for you.  Do you want a copy
6     of this in Spanish?
7          THE DEFENDANT:          Yeah.
8          THE COURT:          Okay.  I cannot
9     do that today, but we will have it translated
10    as soon as I can and have that sent to you.
11         THE INTERPRETER:     Your Honor,
12    would you like me to read it to him in
13    Spanish?
14         THE COURT:          It's two pages.
15    It's lengthy.  If you can stay and do that
16    subsequently, yes.  But I don't know what
17    your time is.
18         THE INTERPRETER:     I do have an
19    appointment at 11:30.  I do apologize.  They
20    double booked me here.
21         THE COURT:          I will have
22    this prepared then and delivered to you.  I
23    will give it to you in the English now.
24         THE DEFENDANT:          All right.
25                   -     -     -
```

```
 1                    (Thereupon, the interpreter handed

 2                    the form to the defendant.)

 3                         -    -    -

 4          THE COURT:            I'm going to

 5   take one moment here.   (Pause.)

 6                    The next matter that we must

 7   address, goes to the question of whether your

 8   waiver of your right to an attorney was in

 9   fact knowingly, intelligently, and

10   voluntarily made.   Your actions in court have

11   raised the question of whether you are

12   competent to stand trial.   And along with

13   that, whether you were competent to give up

14   your right to an attorney.

15                    With this in mind, I ordered you to

16   be examined by the court psychiatric clinic

17   and have received a communication from

18   Dr. Schmedlen, and I can give you a copy of

19   this.

20                    Dr. Schmedlen says:  We had Mr. Noel

21   Cedeno up yesterday morning to the court

22   psychiatric clinic to sign medical releases.

23   Mr. Cedeno declined to sign any.  Moreover,

24   he stated, in fact, he does not want any

25   evaluation.  And intimated that if we called
```

1   him up again, he would likely not leave the

2   jail.

3              I wonder if the Court could advise

4   Mr. Cedeno that prior to his going forward

5   pro se, he will need to undergo an evaluation

6   to determine his competency to represent

7   himself.

8              I also wanted to clarify if the

9   Court would like a general competency

10  evaluation, as well.  Please advise.  Let me

11  know if you have any questions or concerns.

12             Miss Ducoff, is there anything that

13  you wish to put on the record?

14             MS. DUCOFF:          I just want to

15  clarify that there are two different types

16  of competency exams the psych department

17  does.  One is the general one Dr. Schmedlen

18  is referring to, and the second one is a

19  separate competency exam to determine if he

20  can represent himself pro se.

21             When you first referred him to the

22  psych department, I believe it was for the

23  latter.

24             THE COURT:          Correct.

25             MS. DUCOFF:          For them to

1    determine if he was competent to represent

2    himself, and I believe that was based on what

3    you indicated to me, the behavior in the

4    courtroom.  Apparently Dr. Schmedlen is

5    asking this Court if you would also like to

6    have a second general competence exam, and I

7    don't know if you have answered that yet.

8            THE COURT:       I have not.

9            MS. DUCOFF:      Thank you, your

10   Honor.

11           THE COURT:      At this time I

12   think the question we have to resolve,

13   Mr. Cedeno, is whether you are competent and

14   are capable of representing yourself.

15         As you know, a conviction in this

16   case as to any of the charges could result

17   in a prison term possibly of several years,

18   possibly for the rest of your life.  I want

19   to be certain that you have the best possible

20   representation, because I do not want to see

21   you go to prison for many years because you

22   were not able to give the best

23   representation.

24         It may be the case that you will be

25   convicted no matter whether you have a good

1  lawyer, a bad lawyer, or no lawyer, but a

2  good lawyer will give you a better chance at

3  trial.  And that's why I wanted to have the

4  psychiatric clinic evaluate you.

5          Now, I'm going to have Dr. Schmedlen

6  try one more time.  If you refuse to be

7  examined, I will have to make a decision

8  based on what I see and hear and know.

9          I'm not trying to do anything to

10  harm you in this case.  All I want to be

11  certain of is that we have a fair and proper

12  conduct of this trial.  Now do you have any

13  questions for me?

14          THE INTERPRETER:    First of all, I

15  don't want to see anymore psych doctor.  I

16  don't want to see the doctor.  In reality

17  what makes me strong is I want to represent

18  myself.  What the doctor says, he says on

19  paper, that's not true.  So I don't want to

20  do another evaluation with another story.

21          THE COURT:          With another

22  story.

23          THE DEFENDANT:      Yeah, because

24  the first thing they said wasn't true.

25          THE COURT:          That you refuse

1      to sign?

2                  THE DEFENDANT:        I no say I go

3      to jail what he say strong what he say in the

4      paperwork?

5                  THE COURT:            You can have

6      this to show Mr. Cedeno.

7                  THE INTERPRETER:       That part -- I

8      just read him the second line where it

9      states, Mr. Cedeno signed where he does not

10     want any evaluation and intimidated (sic) if

11     we call him up again, he will likely not

12     leave the jail.  That is what I want to

13     clarify.

14                 THE DEFENDANT:        I say I do not

15     sign in the evaluation.  I do not ask any

16     question.  That's it.  That's all I say.  I

17     wish we can have that day.  That is all I

18     said.  That is it.  All I said intimidate.

19                 THE COURT:            No, it's

20     intimate.  That means suggest.

21                 THE DEFENDANT:        I no say lie in

22     jail.  I say no word like that.  You see that

23     why -- first of all, it's the last court over

24     here, you see they try to give me much of the

25     discovery.  Much of the discovery after a

```
 1    year and a half, they try to give me.  The
 2    prosecutor cannot give you a lot of paperwork,
 3    the evidence, because you pro se.  How you
 4    going to represent yourself when you get
 5    incomplete to represent yourself in trial?
 6    But if it's regular lawyer, they have the
 7    paper.
 8              Another thing, she tell you in the
 9    court it's no DNA.  It's no evidence at all.
10    It's only my stories.
11              THE COURT:          Sometimes,
12    Mr. Cedeno, we have physical evidence.  We
13    have DNA.  We have fingerprints.  We have
14    pictures.  Sometimes we don't.  What
15    Miss Ducoff was saying basically was that in
16    this case the primary evidence that the State
17    intends to use will be statements.  There is
18    no DNA.  There are no fingerprints.  There
19    are no photographs.  Am I correct,
20    Miss Ducoff?
21              MS. DUCOFF:          There are
22    photographs of the scene, but not at the
23    scene, but there are photographs of the
24    child's body, that is correct.
25              THE COURT:          That means if
```

1    we go to trial in this case, there will be

2    testimony from the victim and possibly other

3    people that she has talked to, people who

4    examined her -- I don't know who the

5    witnesses will be, but there will be no DNA.

6    There will be no fingerprints.

7            And then if you choose to be a

8    witness, you can testify, or you can decide

9    you don't want to testify.  That's your

10   decision entirely.

11           And then if it's a jury trial, the

12   jury -- if you don't have a jury, I will make

13   the decision as to who is more credible.  If

14   the State proves its case beyond a reasonable

15   doubt, you will be convicted.  If they don't

16   prove their case beyond a reasonable doubt,

17   you will not be convicted.

18           You could be convicted of some of

19   the crimes and not of others.  You could be

20   found guilty of some, all, or none.  We'll

21   have to see what the evidence is.

22           Now, Miss Ducoff?

23           MS. DUCOFF:         That was a lot

24   for the interpreter.  I don't know how much

25   she got.

```
1              THE COURT:           Okay.
2              Now, are you saying, Mr. Cedeno,
3    that if I send this back to Dr. Schmedlen,
4    you will not speak with him?
5              THE INTERPRETER:     That's correct.
6         MS. DUCOFF:           Your Honor --
7         THE COURT:           Miss Ducoff.
8         MS. DUCOFF:           I want to make
9    sure Mr. Cedeno understands speaking to
10   Dr. Schmedlen is a prerequisite to going
11   pro se.  He has to understand the consequence
12   of not speaking to Dr. Schmedlen.  I'm not
13   sure that has been communicated.  I might be
14   off on that.  I think we should give that one
15   more try, he understands the connection to go
16   pro se by statute, or rule.  He must be given
17   this examination to determine his competency
18   to evaluate himself.
19             THE DEFENDANT:       5317.54.  No
20   informed consent to medical procedure.
21             MS. DUCOFF:          I'm not sure
22   that statute applies to criminal defendants
23   who want to go pro se, your Honor.
24             THE COURT:           I am sure this
25   does not apply.  This is not a medical
```

1      proceeding.

2             This is an examination to determine

3      whether a defendant is competent to represent

4      himself at trial.

5             I think we've gone around this

6      enough.  I will make a decision and you will

7      have to accept my decision on this question.

8             THE INTERPRETER:    Judge, if I may,

9      if I could repeat what she said, I didn't get

10     a chance to interpret what she said, just to

11     make sure it's clarified.

12            THE COURT:          Okay.  Thank

13     you.  Okay.  You may take him back.  We'll

14     proceed with other matters.

15            (Thereupon, the taking of the

16            proceedings was concluded.)

17                  -   -   -

18

19

20

21

22

23

24

25

```
 1    MONDAY AFTERNOON SESSION, JANUARY 14TH, 2013
 2                THE COURT:  We have before the court
 3         at this time case number 434516, the state
 4         versus Noel Cedeno.  You know you are here
 5         today without a lawyer and without an
 6         interpreter.  Do you understand me so far?
 7                THE DEFENDANT:  Yes.
 8                THE COURT:  Okay.  I want to explain
 9         to you, you have said you want to proceed
10         without an attorney.  And we tried to get an
11         interpreter today but the interpreter that we
12         have is not available today.  So we are going
13         to set this hearing for -- is that Wednesday?
14                MS. DUCOFF:  Yes, your Honor.
15                THE COURT:  A week from this
16         Wednesday, January 23rd at 10:00 in the
17         morning.  We will have an interpreter for you
18         then.  Do you understand that?
19                THE DEFENDANT:  Okay.
20                THE COURT:  Okay.  Now, I wanted to
21         have this with you on the record even though I
22         know you say you have troubles with the
23         English language.
24                THE DEFENDANT:  I understand
25         sometimes a little bit.  Sometimes I have
```

1    problem.  I try.  I try.

2            THE COURT:  Even though we don't have

3    an interpreter for you, I wanted you to know

4    from me why we aren't having this hearing

14:53:40  5    today.  Okay?

6            THE DEFENDANT:  Okay.

7            THE COURT:  Now, I have a report from

8    North Coast concerning the question whether

9    you are competent to try this case yourself.

14:54:01  10    And we will look at that at the hearing on

11    Wednesday, the 23rd of January and I will make

12    a decision at that point where we go.  But we

13    can't decide anything right now because we

14    don't have an interpreter.  Do you understand?

14:54:19  15            THE DEFENDANT:  Yes.

16            THE COURT:  Okay.  Now, even if you

17    said right now that you want to start a trial

18    or if you said you wanted to plead guilty to

19    something, you wanted to talk to the

14:54:33  20    prosecutor, I can't do that until we have an

21    interpreter for you.  You understand that, I

22    believe?

23            THE DEFENDANT:  Yes.

24            THE COURT:  So we'll see you on the

14:54:48  25    23rd, January 23rd, 10:00 in the morning.

1          If you have any questions you want to

2     ask of me you can ask me now.  You can send me

3     a letter.  If you send it in English, that's

4     good.  If you have to do it in Spanish, we'll

14:55:11    5     do our best to understand that and, or to get

6     somebody to translate it for me.  My Spanish

7     is very bad.

8          THE DEFENDANT:  My English real bad,

9     too.

14:55:19   10          THE COURT:  Your English is better

11    than my Spanish.

12          THE DEFENDANT:  No.  By writing.  I

13    try every day.

14          THE COURT:  Whatever, as I say, you

14:55:27   15    write to us if you want in English or Spanish

16    or both and we will do our best to understand

17    it and to work with it.

18          If you need to send something to

19    Miss Ducoff you know how to reach her as well

14:55:42   20    and we can -- I'm sure she would be anxious to

21    see anything you have to say.

22          Is there anything you want to say

23    right now?

24          THE DEFENDANT:  I'll see you 23rd.

14:55:53   25          THE COURT:  Very good.  I just didn't

1    want you to go downstairs and wonder why

2    nothing happened today.   Simply we don't have

3    Bernardita.

4

5

6

7                          - - - -

8              (Proceedings adjourned.)

9                          - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>**WEDNESDAY MORNING SESSION, JANUARY 23, 2013**</u>

2    THE COURT:              You may be

3    seated.

4    We have once again the State of Ohio

5    versus Noel Cedeno.

6    Present in the courtroom are the

7    prosecuting attorney, Ms. Ronni Ducoff, the

8    defendant, who has insisted upon representing

9    himself, and Bernadita Rojas, who has been

10   appointed as interpreter.

11   There are several issues that must be

12   resolved.  Let's start by reviewing the

13   defendant's insistence that he represent

14   himself.

15   I have considered case law on this

16   subject as well as Criminal Rule 44(C) and

17   that makes it clear that a defendant may not

18   waive representation by counsel unless that

19   waiver not only is knowing and intelligent but

20   is in writing.  To the best of my knowledge,

21   we do not have a written waiver of right to

22   counsel.

23   I have provided to the defendant a

24   report that was received several days ago,

25   although dated January 4th, from Northcoast

1    Behavioral Health Care in which Dr. Beaman,

2    that's B-E-A-M-A-N, D.O., psychiatrist with

3    Northcoast has concluded that Mr. Cedeno is

4    competent.

5         He starts off by stating and it is in

6    his conclusion; it's my opinion with

7    reasonable medical certainty that Mr. Cedeno

8    does not have a present mental condition.  I

9    believe that his lack of cooperation is

10   volitional and does not stem from a mental

11   condition.

12        He states three bases for that

13   conclusion.  He goes on further.  It is my

14   opinion within a reasonable degree of medical

15   certainty that since Mr. Cedeno has no present

16   mental condition that he is able to understand

17   the nature of the proceedings against him and

18   is able to assist in his defense.

19        Finally, he notes; it is my opinion

20   that because Mr. Cedeno has no mental

21   condition that he is able to represent

22   himself.

23        These conclusions, according to the

24   report submitted by Dr. Beaman, have no basis

25   in fact whatsoever.

1          As Dr. Beaman points out in his

2     initial interview with Dr. Beaman, quote,

3     Mr. Cedeno told me that he was competent to

4     both stand trial and represent himself and he

5     refused the evaluation.

6          He goes on.  Again, Mr. Cedeno

7     refused the evaluation saying, quote, well,

8     then write your report.  I do not consent.

9     Mr. Cedeno, the defendant herein, was seen by

10    Dr. Megan Testa at Northcoast and the report,

11    it notes that in her initial assessment Dr.

12    Testa did not make a diagnosis and did not

13    start medications.

14         She formulated a plan that included

15    observing Mr. Cedeno for signs of mental

16    illness and treating appropriately.

17         The progress note by Dr. Efrain on

18    December 26th, 2012 stated that Mr. Cedeno

19    had, quote, no evidence of mental illness,

20    close quote.  The report goes on.  Dr. Efrain

21    did not make a diagnosis and did not start

22    psychiatric medication.

23         This court is quite concerned in that

24    the defendant's actions in this court may as

25    noted in the report may be volitional, but we

1    are dealing with a higher standard here.   A

2    defendant may be competent to assist counsel

3    in his defense, but this court has an

4    obligation to ensure that the defendant also

5    receives effective assistance of counsel.

6         I believe the evidence before this

7    court is unclear as to whether Mr. Cedeno is

8    competent to represent himself at trial.

9         Particularly noteworthy in that

10   regard is the action by Mr. Cedeno in open

11   court several weeks ago in which the

12   prosecuting attorney attempted to deliver

13   discovery to him which he refused.

14        Dr. Beaman's report notes that

15   Mr. Cedeno, quote, also stated that he refused

16   to accept discovery, that he felt the

17   materials were not complete, and was told the

18   rest was not for me to see.  Where counsel

19   refuses to accept discovery when offered by

20   the prosecutor, there is, of course, a serious

21   question of effective assistance of counsel

22   where the defendant himself makes such a

23   statement.  I think the question must be

24   raised whether he is competent to act as his

25   own attorney.

1      Ms. Ducoff, a suggestion has been

2    made based upon another case before presently

3    before Judge Fuerst of this court in which

4    there were issues of the competency of the

5    defendant and the matter was not resolved

6    either by the court psychiatric clinic or by

7    Northcoast that the defendant was then

8    referred to Twin Valley for yet another

9    evaluation.

10      Do you have any suggestions as to

11    whether that is a possibility or whether some

12    other course of action would be appropriate?

13      MS. DUCOFF:      If that is an

14    option to go to Twin Valley, I would totally

15    concur in this court's opinion that that

16    should be undertaken at the earliest possible

17    opportunity.

18      The State totally concurs with this

19    court.  To say it another way, the State

20    believes that the reasoning given by Dr.

21    Beaman is circular.  He doesn't have a mental

22    condition, so therefore, he is competent.  And

23    it just seems circular because one doesn't

24    exist.  It necessarily follows that he is

25    competent and his behavior certainly does not

indicate that he is making decisions that

would make this court feel comfortable that he

can represent himself on a case that

ultimately has a penalty of life imprisonment

just on the indictment, and on the main charge

of the indictment, and then specifications

that would result, if proven beyond a

reasonable doubt, into life without parole.

Given his criminal history, he is

almost a poster child for what that

specification was designed for.  So it's a

very serious situation here and he did not

accurately tell Dr. Testa what really

happened.

The State tried to provide discovery.

When he refused to accept discovery from the

State, the materials were not complete.  He

did not say, I am not taking this because they

are incomplete.

This court is here to watch over his

rights and there are ways that this court

could determine if he received everything or

anything was held back.

Finally, since the rest was not for

me to see:  Again, that's a distortion of what

1   really happened because of the rules of pro se

2   representation, the State of Ohio was not

3   permitted by rule not to give him certain

4   materials.   There was no penalty for going pro

5   se.   That's what he implies when he says he

6   was told the rest he couldn't see.

7            He also implied that when he went to

8   Northcoast and he said I am only here because

9   I fired my attorney, that you were punishing

10  him for firing his attorney.

11           I think all those explanations need

12  to be provided to the evaluator.   I don't

13  know.   My only suggestion maybe we should be

14  giving transcripts to the providers, so they

15  can really see what's happening in court, when

16  there is an interpreter here, so that the

17  evaluator knows this is not just an English

18  problem and has the benefit of an interpreter.

19           THE COURT:            Thank you.

20           Mr. Cedeno.

21           THE DEFENDANT:        Yes.   I just want

22  to read something for the record.

23           THE COURT:            You may please

24  speak up so that Tim can hear you.

25           THE DEFENDANT:        My English is not

1    very good.  I never -- read it for me, please.

2              THE COURT:          Yes, she may.

3              MS. DUCOFF:          Can the record

4    reflect what language she is going to read it?

5              THE DEFENDANT:          Can I pass this

6    to her so she can see it?

7              THE COURT:          Sure.

8              MS. DUCOFF:          I want the record

9    to reflect that you are reading from English,

10   not just interpreting.

11             MS. ROJAS:          I am not --

12             THE COURT:          This is the paper

13   that the defendant wrote in English?

14             THE DEFENDANT:          My notes in

15   English, but the reading are not good, so I

16   want to make sure it's clear.

17             THE COURT:          That's fine.

18             Ms. Rojas.

19             MS. ROJAS:          This is from Mr.

20   Cedeno on the top part.  January 23rd, 2013.

21             I enter a constitutional objection to

22   any attempt by the State court to deny my

23   constitutional right to fully with complete

24   authority of the State representation to

25   represent my personal interest and to speak

1    exclusively on my own behalf without

2    intervention of a stand-by attorney who simply

3    undermines my ability to grant informed

4    consent in all matters.

5        All attorneys must obtain my informed

6    consent to represent me pursuant to Rule 1.4

7    and 1.2 of the Ohio Rules of Practice.

8        Second, I do not waive my right to

9    due process of the law.

10       Third, I want to read a fact to the

11   constitutional objection in this court for the

12   record, the facts.

13       Fact number one:  On November 27th,

14   2012, the Cuyahoga County prosecutor's office

15   filed a motion for referral of defendant to

16   Northcoast Behavioral Health Care System

17   Cleveland campus without giving notice to the

18   defendant by serving him with a copy of said

19   motion to which the court entered and granted

20   said motion ex-parte without an examiner

21   requesting such an evaluation in violation of

22   Ohio Revised Code Section No. 2945.371(D),

23   violation of the due process clauses of the

24   Constitution, Article I, Bill of Rights and of

25   the 14th Amendment of the Constitution of the

1    United States.

2              THE COURT:              Is there

3    something else?

4              MS. ROJAS:              Here in court,

5    they don't have enough evidence to support

6    this case --

7              THE DEFENDANT:          -- and in court

8    the speedy trial rights have been violated

9    pursuant to Ohio Revised Code Section

10   2945.7173 and personally to the Ohio

11   Constitution, Bill of Rights 10.

12             I do not consent to go to trial

13   because based on everything to support this

14   case --

15             THE COURT:              Okay.

16             Ms. Ducoff, does the State have any

17   response?

18             MS. DUCOFF:             I just want to

19   make sure that Ms. Rojas read everything he

20   wanted her to read.  I believe he cut her off

21   when she was reading.

22             THE DEFENDANT:          I am just trying

23   to get a little bit ahead.  She read it the

24   first time.  I can read it again.

25             This writing here, the speedy trial

1    rights have been violated pursuant to Ohio

2    Revised Code Section 2945.7173, and persons

3    including the Ohio Constitution, Bill of

4    Rights 10 -- 73 -- it's no reason to believe

5    in this court.  It never happened.  They don't

6    have no complaint, no affidavit, okay.

7    2937.02, section A, you had no full

8    indictment, no grand jury, too many stories,

9    no DNA.  It's nothing in this case to sustain

10   this case.

11              THE COURT:          Okay.

12         Mr. Cedeno, I was going to give Ms.

13   Ducoff an opportunity to respond.

14              The purpose of having a lawyer, or

15   one of the purposes for having a lawyer, is to

16   review these claims that you have just made

17   and advise the court, advise you as well

18   whether they are substantial or not.

19              For example, you are presently under

20   a sentence from this court and that will

21   effect your speedy trial rights.

22              As far as the issue of -- one

23   moment -- as to the evidence, that is

24   something that will be decided during trial or

25   at the end of the trial.  If there is not

1    enough evidence then you will be found not

2    guilty.  If the evidence is legally wrong, I

3    will throw it out.  I will not allow it to be

4    used against you.  I have done that in the

5    past in many cases, but we have to proceed one

6    way or the other in this case.

7             Ms. Ducoff, did you wish to respond

8    to what Mr. Cedeno has been saying?

9             MS. DUCOFF:         Well, you

10   provided him the answer about speedy trial.

11   The evidence; if it's not sufficient to

12   satisfy a jury of 12, he will have a not

13   guilty.  This court, this case was started

14   with an indictment, a proper indictment out of

15   the grand jury.

16            THE DEFENDANT:        I object.

17            MS. DUCOFF:         The defendant

18   wants his trial and to get a trial he seems

19   very adamant that he wants to be pro se.   The

20   only obstacle that we have is he wants to be

21   pro se, but he won't speak to the

22   professionals that can help this court be

23   satisfied with a threshold finding that he is

24   indeed competent.

25            So if he wants to proceed pro se he

114

```
1    needs to understand that no one is trying to
2    prevent him from doing that.  We just have to,
3    by law, have a threshold understanding that he
4    is competent to do so.  So if he would just
5    cooperate we could move on.
6              THE COURT:        By the way, I
7    should note in reviewing the docket in this
8    case, I do not see a motion from the State
9    from the prosecutor for a referral to
10   Northcoast.
11             THE DEFENDANT:      I got a copy
12   right here, your Honor.  I got the document
13   right here, 11-27.
14             THE COURT:        11-27?
15             THE DEFENDANT:      11-27.  I got it
16   in my hand.
17             THE COURT:        Okay.
18             THE DEFENDANT:      I object when the
19   prosecutor said about the first indictment.
20   He said that we went pro se --
21             THE COURT:        One moment.  I
22   have to take this call.  I apologize.
23             THE DEFENDANT:      And she said do
24   it this time the right way for about --
25   parenthesis -- a professional, right.  It's
```

1    clear they started for the first indictment

2    when the person, they did not say the truth

3    and they are trying to do something not legal,

4    not by the law, right.

5          How can the person making an

6    indictment, when the person was in jail making

7    wrong statements.  They say all this type of

8    charges, that was this time in jail.  I can't

9    be in two places at one time.

10          When this first indictment with me --

11    the second indictment and the third and the

12    fourth, they pick it up for the first and

13    second.  How many stories are there going to

14    be?  How many statements was supposed to have

15    one truth?

16          THE COURT:          Mr. Cedeno, I am

17    troubled as well, I believe, Ms. Ducoff is

18    also upset at how long it took to get the

19    indictment cleared up.  There were mistakes

20    made and that happens.

21          THE DEFENDANT:          Your Honor, I

22    believe that when I was in jail and they don't

23    find out by the time I was in jail they would

24    say I did it.  They are saying they didn't

25    understand me.  They said the year.  I know

1    the statement after the year -- I remember,

2    please.  You have to be blind not to see all

3    these defects, all this lying.

4              THE COURT:          If you had a

5    lawyer representing you, he or she would be

6    able to go through these and find out where

7    there are issues raised.  Those issues, maybe

8    you will get some or all of these charges

9    thrown out.  I don't know.

10             THE DEFENDANT:       It's no lawyer.

11   I refuse a lawyer.  I want to represent

12   myself.

13             THE COURT:          Then you have to

14   do that in writing.

15             THE DEFENDANT:       I did it.  It's

16   in the docket.  In addition to the indictment,

17   it was there in the docket.

18             THE COURT:          Where is that?

19             THE DEFENDANT:       It's in the

20   docket.  You received that.  It's in there.

21             THE COURT:          Where?  When?

22             THE DEFENDANT:       In the docket.

23             THE COURT:          When?

24             THE DEFENDANT:       In the docket.

25   It's in there.

```
1              THE COURT:          The docket goes
2    on for pages.  When?
3              THE DEFENDANT:          I believe 10-15.
4    Last year.  In addition to the indictment --
5              THE COURT:          Just give me a
6    moment.  Okay.
7              I will take this as a written waiver
8    under Rule 44(C), but we still have the issue
9    of whether you are competent to represent
10   yourself.  The fact that you refused discovery
11   from the State and that you are illogically
12   stating, you refuse to have a jury trial, you
13   refuse to have a non-jury trial.
14             As you know, there are three possible
15   ways this case can be resolved.  One is a
16   trial by jury.  No. 2, a trial without a jury.
17   Actually, four ways.  No. 3 would be dismissal
18   upon a motion, if I find that it's proper.  Of
19   course, number four would be a plea of guilty
20   to some reduced charge.  But you cannot choose
21   a fifth option that being no trial to a jury
22   and no trial to the court and no plea.
23             THE DEFENDANT:          I have done
24   everything to go to trial.
25             THE COURT:          You can't simply
```

1  say that.

2          THE DEFENDANT:      I need a decision

3  to go to the docket and see all the motions

4  amended and put it in there and answer.

5          THE COURT:          You need an

6  answer to what?

7          THE DEFENDANT:      Before I go to

8  trial.

9          THE COURT:          An answer to

10 what?

11         THE DEFENDANT:      The objection to

12 the indictment for the main charges.

13         THE COURT:          The amendment to

14 the charges?

15         THE DEFENDANT:      What we are

16 calling the amended charges.

17         THE COURT:          I think the

18 superseding indictments is what he is

19 referring to.

20         MS. DUCOFF:         Okay.

21         THE COURT:          Mr. Cedeno, I

22 think we would all be better off if you were

23 to consent to have an attorney to assist you,

24 represent you.  I can find another attorney

25 who could discuss this with you.  We have a

1     few more attorneys who speak Spanish and maybe

2     could communicate better with you.

3            THE DEFENDANT:     I do not consent

4     to no lawyer.

5            THE COURT:       Okay.

6            I think I have no other option but to

7     refer you to Twin Valley for a further

8     evaluation as to competency to assist in your

9     defense and also competency to represent

10     yourself.

11            THE DEFENDANT:     I object. I

12     don't have nothing wrong with me. I have no

13     mental health problems. I got nothing

14     physical. And they say that I make it clear

15     already so I understand perfect what the

16     charge is. I understand.

17            The thing is, I go by the Ohio

18     Revised Code. I go by the law. I am reading,

19     I am writing, bring it to the court, I am

20     telling to you all of these problems.

21            MS. DUCOFF:       If Mr. Cedeno is

22     so familiar with the law then he would know

23     that you are trying to help him. You are

24     trying to give him his right to go pro se.

25            In order to do that he must be

1    evaluated to show that he is competent, that

2    he is not helping himself in his quest to go

3    pro se by refusing these evaluations.

4             THE COURT:            I do concur.

5    Okay.

6             The order will be put on later today

7    or tomorrow then.  The defendant will be

8    referred to Twin Valley for a further

9    evaluation as to competency.  That will be

10   continued until we have that report.

11            We're done.

12                   -  -  -  -

13       (Thereupon, Court was adjourned.)

14                   -  -  -  -

15

16

17

18

19

20

21

22

23

24

25

1             FRIDAY, JUNE 7, 2013

2              MORNING SESSION

3                - - - -

4        THE COURT:      We're on the

5  record in case number 563913 -- I believe now

6  it's 564978, State versus Noel Cedeno.

7        This matter was set for a pretrial

8  today, June 7th, 2013.

9        We have present in the courtroom for

11:33:38AM  10  the State of Ohio, county prosecutor Ronni

11  Ducoff.  We have the Defendant, Noel Cedeno

12  who is, at least at this time, representing

13  himself.  And also present is the interpreter.

14  If you'd raise your right hand.

15        First of all, I should note, are you

16  licensed in the State of Ohio?

17        THE INTERPRETER:    We're not, no

18  one is certified.  Everybody's in the midst of

19  that process right now.

11:34:14AM  20        THE COURT:      Qualified or

21  uncertified?

22        THE INTERPRETER:    I would call it

23  uncertified because the final language test is

24  in October.  I've taken the test, first part

25  of it already.  I'm literally in the --

1    THE COURT:           Okay.   You are

2    fluent in both English and Spanish?

3         THE INTERPRETER:      Yes, I am.

4         (Thereupon interpreter sworn.)

5         THE COURT:           Now, I would

6    like to put on the record some background

7    matters.   The question had been raised about

8    the Defendant's competency to stand trial and

9    also competency to represent himself in these

10   proceedings.

11        The Defendant was referred to the

12   court psychiatric clinic.   Report of the

13   clinic noted that Mr. Cedeno refused to

14   cooperate and, consequently, they were unable

15   to perform an opinion.

16        Accordingly, I referred Mr. Cedeno to

17   Northcoast Behavioral Healthcare for a

18   twenty-day evaluation.

19        Upon review of their report dated

20   January 4th, 2013, it was the Court's

21   conclusion that Dr. Beamon appeared to

22   misunderstand the nature of the referral in

23   that he did not provide a comprehensive

24   evaluation.

25        THE INTERPRETER:      You're saying

11:36:34AM (line 10)

11:37:36AM (line 20)

1    the person you referred him to didn't?

2                THE COURT:              Correct.

3                In light of that, the Court prepared

4    a memorandum that stated specifically the

5    bases for its concerns and referred the

6    Defendant to Twin Valley Behavioral

7    Healthcare.

8                We have now received their report

9    which appears to be dated May 28th of this

11:40:02AM 10  year.  The purpose of this pretrial, then, is

11   to present that report to Mr. Cedeno.

12               Mr. Cedeno, I want to make sure that

13   you have an opportunity to review that report.

14   And so Mr. Algeo is here if you need any

15   assistance in reading it, in understanding it,

16   in translating it.  This is your opportunity

17   to do that.

18               THE INTERPRETER:        He doesn't

19   understand me.  He's saying he wants someone

11:41:54AM 20  else.

21               THE COURT:              He wants someone

22   else?

23               THE INTERPRETER:        That's certainly

24   possible.

25               THE COURT:              Yes.

1          THE INTERPRETER:     I could suggest
2    two people that might be more suitable.
3          THE COURT:          I would have to
4    wait till Monday.  I will arrange for somebody
5    to assist him.
6          THE INTERPRETER:     Okay, no
7    problem.
8          THE COURT:          Very good.  Mr.
9    Cedeno, I know you understand some English.
10         THE DEFENDANT:       Yes.
11         THE COURT:          Is there
12   anything that you want to mention today?
13         THE DEFENDANT:       I understand he
14   tried, okay?  But when we're talking basically
15   something like this, I need somebody fluent in
16   Spanish.
17         THE INTERPRETER:     More fluent than
18   me.
19         THE DEFENDANT:       Who understands
20   what I'm doing.  I don't want to get confused
21   and stuff.  Bernardita Rojas?
22         THE COURT:          You like working
23   with her?
24         THE DEFENDANT:       I also working
25   with her.

1          THE COURT:          I will see if we

2    are authorized to have her today or soon.

3    There are some legal issues now with

4    contracts, but I will see if I can do that.

5    I'll have to make sure that everything is done

6    right.

7          THE DEFENDANT:          I appreciate it.

8    Nothing with him, he try to do best he can do.

9          THE COURT:          Okay.

10   Bernardita is Puerto Rican.

11         THE DEFENDANT:          She's Mexican,

12   but she speak --

13         THE COURT:          Okay, that's

14   fine with me.

15          Okay, we will continue the pretrial.

16   I will talk to my bailiff and see if we can

17   set this maybe next Friday or late next week

18   or the week after.  I want to give you time to

19   go over this so you understand it.

20         THE DEFENDANT:          Okay.

21   THE COURT:          Very good.

22          (Thereupon Court adjourned.)

23               - - - -

24

25

1    WEDNESDAY MORNING SESSION, JUNE 19, 2013

2

3              THE COURT:          Okay.  We are

4    here once again on Criminal Case No. 564978,

5    that is, State versus Noel Cedeno.

6              And I asked for this hearing today

7    because yesterday we received a report, a

8    competency evaluation, prepared by Dr. Howard

9    Sokolov, that's S-o-k-o-l-o-v, of Twin Valley

10   Behavioral Healthcare, and I wanted to be

11   certain that we had a chance to present that

12   to the defendant.

13             Ms. Rojas, do you have a copy for the

14   defendant?

15             MS. ROJAS:          Yes, Your Honor.

16   Right here.

17             THE COURT:          Thank you for

18   reminding me.

19             Ms. Rojas, I know you've been sworn

20   in before on this case, but we should probably

21   do it again for this particular hearing.

22             If you'll raise your right hand.

23             Do you swear or affirm that you will

24   provide a true and accurate translation

25   between the English and Spanish languages to

1     the best of your considerable ability?

2              MS. ROJAS:         I do.

3              THE COURT:         Very good.  And

4     your credentials have already been before this

5     Court, so we don't need to go into that.

6              MS. ROJAS:         Okay.

7              THE COURT:         Thank you.  And

8     we have Ms. Ducoff here, also.

9              Mr. Cedeno, I will note that this

10    report is 12 pages, and there's a lot of

11    material in it.  I will state, however, that

12    the conclusion of Dr. Sokolov is that you are

13    competent to assist in your defense.

14             And at Page 12, it says, and I will

15    quote this, "It is also my opinion, within a

16    reasonable degree of medical certainty, that

17    Mr. Cedeno is able to voluntarily, knowingly

18    and intelligently waive his right to counsel

19    so that he can proceed pro se."

20             He further says that he would -- I

21    will quote now.  "I would advise that Mr.

22    Cedeno be notified by the Court in writing

23    that his indictment on the current charges is

24    active and he also receive in writing a list

25    of the risks involved in representing

1        himself."

2                 The record will show that at an

3        earlier hearing I did provide a written list

4        of the charges and the potential penalties for

5        those.  So we have complied with that request

6        or with that suggestion.

7                 I will note a few other points from

8        this report that I think we have to at least

9        put on the record -- one moment -- as for the

10       question about your competency in the English

11       language.

12                The report notes at Page 6, "On

13       admission to Twin --"

14                THE DEFENDANT:        Excuse me, Your

15       Honor.  That's the one that you give me before

16       or the one that's the new one?

17                THE COURT:        The new report

18       is the report that I'm reading from.

19                THE DEFENDANT:        What happened

20       with that one?

21                MS. ROJAS:        What is going to

22       happen with that one?

23                THE COURT:        That is not a

24       competency evaluation.  This one is from Dr.

25       Sokolov, is the one that we are relying upon.

1         And this is the report, Mr. Cedeno,

2    that agrees with your position that you are

3    competent to represent yourself.

4         We'll go into that in a few moments.

5         On Page 6 of this report, Dr. Sokolov

6    notes that, "The other doctor, Dr. Soehner,

7    S-o-e-h-n-e-r, had reported that the

8    defendant's speech was regular in volume, with

9    a Puerto Rican accent, but coherent English."

10        And I believe there is another

11   reference from Dr. Sokolov also to that

12   effect.

13        MS. DUCOFF:          Page 7, Your

14   Honor.

15        THE COURT:          Thank you.  Yes.

16   On Page 7, Dr. Sokolov states, "He," that is,

17   Mr. Cedeno, "was quite verbose and open in

18   talking about his background and family

19   situation.  He understood all my questions,

20   but sometimes it was difficult to understand

21   his responses due to his Puerto Rican accent.

22   This occasioned my asking him to repeat his

23   answers, which he did."

24        The final thing that I would like

25   to -- well, that I feel is necessary to note

1    is on Page 5, concerning your previous case in

2    this Court, in which you were sentenced to

3    five years of imprisonment.

4         And again, I will quote Dr. Sokolov.

5    "He," that is, Mr. Cedeno, "appealed this

6    verdict.  In March, 2013, his appeal was

7    denied by the Eighth District Court of Appeals

8    in Cuyahoga County.

9         "Most recently, he has filed an

10   appeal to the Ohio Supreme Court, as well as

11   complaints against Judge Friedman."

12        I am not going to get into an

13   argument or a discussion with you, Mr. Cedeno,

14   but if you have filed any written complaints

15   about my handling of your cases, we have to

16   know about that, because I cannot preside over

17   this case if there's a question that's been

18   raised about my independence, about my

19   fairness towards you.

20        Now, I know that we just gave this to

21   you a few minutes ago.  The normal procedure,

22   Mr. Cedeno, is to decide whether you and the

23   prosecutor are willing to agree with this

24   report.

25        If you want to make a moment now, you

1   may do so.  If you want to take some time and
2   review it, you may do that.  That's your
3   decision.
4                    THE DEFENDANT:     Okay.  I need
5   some time for this.
6                    THE COURT:     That's good.
7                    MS. ROJAS:     Before, when I
8   was here in court with you, I received some
9   paper from Twin Valley.
10                   THE COURT:     Yes.  Dr.
11  Sokolov.
12                   MS. ROJAS:     An evaluation.
13                   THE DEFENDANT:     Yes.
14                   MS. ROJAS:     The doctor say,
15  he wrote in a statement in this report, on the
16  13th, May 13th, he, I think he had problems to
17  hear me, because he was always putting his
18  hand in his ear to try to hear what I'm
19  saying.
20                   And he says that there was some
21  difficulty for him to breathe and talk at the
22  same time, and we were now like having
23  conversation, and we have very difficult
24  communication.
25                   The first day I go to Twin Valley, I

1      did have an interpreter, since you, Your

2      Honor, said that, and you said I have problem

3      with my English, so I did have an interpreter

4      the first day I was there.

5                I talked with the doctor about my

6      English and it's not much that I understand.

7                I told him, "I don't want you to do

8      any evaluation.  I will not consent to that

9      evaluation."  That's what I said to the

10     doctor.  This is the second doctor.

11               And the first one I did talk to the

12     doctor because I did have an interpreter with

13     me.

14               This evaluation that he's been doing

15     right now, there was no consent by me.

16               The Ohio Revised Code said, 2317.54,

17     well, since the doctor wrote this report and

18     he was trying to understand what I tried to

19     say, I think you just make a decision based on

20     the first doctor that I saw, because that

21     doctor never had an interpreter with me.

22               THE COURT:          Just one moment.

23               Ohio Revised Code 2317.54 refers

24     specifically to informed consent for a

25     surgical or medical procedure or course of

1  procedures.

2            An evaluation pursuant to court order

3  has nothing to do with Revised Code 2317.54.

4  You have no -- your consent to this is not a

5  requirement.

6            MS. DUCOFF:            Your Honor, may

7  I point out that on Page 8 of 12 --

8            THE COURT:            Yes, ma'am.

9            MS. DUCOFF:            -- the clinician

10  indicates in his report that Mr. Cedeno had

11  produced that section to him --

12            THE COURT:            Yes.

13            MS. DUCOFF:            -- when he

14  indicated, when Mr. Cedeno indicated he would

15  not talk -- excuse me.  When Mr. Cedeno was

16  informed that they were going to talk about

17  the charges, he said he would not and then

18  produced that section to the --

19            THE COURT:            Yes.

20            MS. DUCOFF:            -- clinician who

21  wrote this report, and the clinician in that

22  report also explained to him what you just

23  said.

24            Thank you.

25            THE COURT:            Correct.  Thank

1    you.

2         Now, Mr. Cedeno, the only purpose for

3    our hearing today is for me to give you this

4    report to make certain that you understand

5    that.  If you want to take the time and decide

6    whether to accept the findings of Dr. Sokolov,

7    you can have time to decide that.

8         Ms. Ducoff will not be here after

9    this morning until July 8th.  We can have

10   another hearing after then.  We could ask

11   somebody else from her office to substitute

12   for her, if you want to decide later this week

13   or next week, but that's your decision.

14        The other thing that I do have to be

15   certain about is that comment that I read to

16   you from Dr. Sokolov, in which he says that

17   you have made a complaint about me.

18        I do not take any of this personally.

19   I do not like or dislike you.  I intend to be

20   fair, whatever, but if you are concerned that

21   I am not being fair, we have to have that

22   addressed, and I may have to recuse myself and

23   ask another judge to take this case.

24        MS. ROJAS:         When I was there,

25   they took all my papers.  They locked me up.

1    I don't see that you received the complete

2    report, what they did or how they did it,

3    everything to me.

4            I think I went to the evaluation the

5    way you said.  You don't know what they put in

6    front of my person.  I was doped up.  I

7    couldn't even answer.  That was two days.  And

8    that was not my consent, because I was not

9    alert, for me to respond to any of those

10   questions.

11           And I have the name of the people

12   that were present when they were doing all

13   these things to me, and they can testify what

14   they did to me.

15           THE COURT:           Mr. Cedeno, what

16   happened to you there is not the issue that we

17   are dealing with.  The issue we are dealing

18   with right now is, do you accept the

19   conclusion by Dr. Sokolov that you are

20   competent to stand trial and that you are

21   competent to represent yourself?

22           MS. ROJAS:           I need an

23   interpreter to read this to me.  I need -- I

24   just request this interpreter to read this to

25   me.

```
 1              THE COURT:            Ms. Rojas, do
 2    you have some time to spend with Mr. Cedeno?
 3              MS. ROJAS:            I can, Your
 4    Honor.  It's probably going to take me 15
 5    minutes.  It's 12 pages.  All right?
 6              THE COURT:            That's okay.  If
 7    you have the time, you can do that.
 8              MS. ROJAS:            I can do it.  I
 9    can do it in the lockup cell.  I can do it.
10              THE COURT:            Okay.  We will
11    allow you to do that.
12              And then we will resume this hearing
13    Monday, July 8th, and at that time, Mr.
14    Cedeno, you advise us of your position.
15              I would like to have this, whatever
16    we do about this with this case, I would like
17    to decide where we're going as quickly as
18    possible.
19              This has been, this case has been
20    pending quite long already, and we do have to
21    keep it moving, so --
22              MS. ROJAS:            Your Honor, this
23    will take me -- can you give me, like give me
24    20 minutes?
25              THE COURT:            Okay.  See what
```

1     you can do now.

2              Okay.  Ms. Ducoff, what's your

3     schedule?

4              MS. DUCOFF:          I have a meeting

5     this afternoon and I have some work that has

6     to be done before I leave, but I'll

7     accommodate this Court.

8              THE COURT:          Let's say 15

9     minutes.  Take 15 minutes and we'll see what

10    happens.

11             MS. ROJAS:          Okay.

12             THE COURT:          We'll see how

13    far we can get.  All right.  Good.

14

15             (Thereupon, a recess was had.)

16

17             THE COURT:          Okay.  We are

18    back on the record on State versus Noel

19    Cedeno.

20             And it's my understanding, Ms. Rojas,

21    that Mr. Cedeno has indicated he's made a

22    decision on this issue.

23             MS. ROJAS:          ·  Yes, Your Honor.

24             THE COURT:          Mr. Cedeno, do

25    you agree with or stipulate to the report of

1     Dr. Sokolov and the conclusions in that

2     report?

3              MS. ROJAS:          I understand,

4     because that was explained to me.  I always

5     said that I can, I have enough knowledge in

6     order to go pro se.  But the doctor made that

7     decision or made that report without my

8     consent.

9              THE COURT:          I understand

10    your position.  As the report notes and as I

11    have stated, your consent is not an issue.

12             The Court ordered that you be

13    evaluated in order to determine whether you

14    are competent to stand trial and whether you

15    are competent to waive your right to counsel

16    and represent yourself.  You do not have to

17    consent to that.  That was my decision.

18             Now, with that in mind, do you agree

19    to accept the conclusion of Dr. Sokolov or do

20    you dispute that?  I just want an answer to

21    that question.

22             MS. ROJAS:          No.  I'm not

23    going to accept it.

24             THE COURT:          Fine.  Then the

25    Court has no option at this point but to order

1    you remanded.  We will decide where we go from

2    here.  And this matter will be reset for

3    Tuesday, July 9th, at a time to be determined

4    by -- I'll refer to my bailiff's calendar.

5              Is there anything else we need to

6    address, Ms. Ducoff?

7              MS. DUCOFF:        No, Your Honor.

8              THE COURT:         Okay.  We're

9    done.

10

11              (Thereupon, court was adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          THURSDAY MORNING SESSION, AUGUST 29, 2013

 2                         -  -  -

 3   APPEARANCES:
             Ronnie Ducoff, Esq., Assistant Prosecuting Attorney,
 4                  on behalf of the Plaintiff;

 5           Noel Cedeno, Defendant Pro Se;

 6           Bernardita Rojas, Intepreter.

 7                         -  -  -

 8                THE COURT:  Okay.  We have before the Court

 9   at this time case no. 564978, State vs. Noel Cedeno.

10                The first item that I must note for the

11   record is that the defendant is present.  As he has

12   stated in the past, he is representing himself.

13                We also have, assisting him as an

14   interpreter only, Bernardita Rojas.

15                I will note for the record that Ms. Rojas

16   has acted as interpreter for Mr. Cedeno on several

17   occasions and I believe has developed a working

18   relationship with the defendant.

19                However, under Ohio law, we are required to

20   have a state-certified interpreter, and Miss Rojas

21   does not have her certification at this time.

22                It is in that regard I have a motion from

23   the prosecutor to appoint a certified interpreter,

24   and I am going to grant that motion for any and all

25   future hearings or trial.
```

1           Now, Mr. Cedeno, I know from our previous

2      discussions that you have some understanding of

3      English.

4           Did you hear and understand everything that

5      I've been saying so far?

6           THE DEFENDANT:  I understand.

7           THE INTERPRETER:  Yes, I understand, yeah.

8           THE COURT:  Okay.  Good.  If at any time

9      there's something you don't understand, either from

10     me in English or from Miss Rojas in Spanish, please

11     let me know, and we'll try to help you.

12          Based upon the defendant's conduct in open

13     court, I have expressed my concerns, Mr. Cedeno,

14     that you might not be competent to represent

15     yourself in trial.

16          However, the latest finding by the Court

17     Psychiatric Clinic determines that you are

18     competent, and I will accept -- I will accept that

19     myself.

20          Ms. Ducoff, does the State stipulate to the

21     report of Dr. Noffsinger?

22          MS. DUCOFF:  Yes, Your Honor.

23          THE COURT:  Okay.  Mr. Cedeno, have you

24     received that report?

25          THE INTERPRETER:  No, I haven't received

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

```
 1          anything at all.
 2                  THE COURT:  Okay.  And I don't have it --
 3                  Do you have a copy of that with you?
 4                  MS. DUCOFF:  No.
 5                  THE COURT:  Okay.
 6                  MS. DUCOFF:  I apologize.
 7                  THE COURT:  I can get you a copy of that.
 8                  THE DEFENDANT:  Your Honor, I would object
 9          for the motion about the prosecutor.  I would like
10          Ms. Bernardita Rojas; I feel comfortable being
11          translator.  I have her from 2011.  Two year and a
12          half I deal with her.  She always translator.  And
13          you know about Mr. Santiago too, she was translator.
14          She know the situation, so I feel comfortable to her
15          to be the translator.  So we do two year and a half
16          together.  Sometimes she not come, but they put her,
17          and I feel comfortable with her to be translator.
18                  THE COURT:  Mr. Cedeno, this puts me in a
19          difficult position.
20                  The State of Ohio says that the only people
21          that we may have as interpreters are persons who
22          have received state certification.
23                  If you are specifically willing to waive or
24          give up your right to have a state-certified
25          interpreter, I will explore whether I can waive
```

1    that.  But that would mean that if we go to trial,

2    and if you are found guilty, that you would not be

3    allowed to raise that issue as -- to use the legal

4    language, you would be waiving any objections.

5          Is that your intention?

6          THE INTERPRETER:  I was sentenced -- in my

7    case I was sentenced before to five year in jail in

8    the previous case.  And Mrs. Rojas was my

9    interpreter in that case, and there was no problem.

10         THE COURT:  I understand that.

11         The law has changed.  That is a new rule by

12   the Ohio Supreme Court.

13         But if you are comfortable with Miss Rojas,

14   I will see if we can use her.

15         I can't -- I do not have the ability to

16   judge whether Miss Rojas is a good interpreter

17   between Spanish and English.  I like Miss Rojas.

18   She seems to be doing a good job.  But I don't know

19   enough Spanish to judge.

20         But I will explore that.

21         Now, we have some other matters we have to

22   deal with.

23         The first one is that we do have to set a

24   trial date.  This case has been around very long,

25   and I would like to have you know what's happening,

```
 1        whether you're going to go to prison [sic] on the
 2        other case or on this case as well, everything -- we
 3        need some determination, some decision.
 4              Miss Ducoff, do you have any scheduling
 5        issues?  I know that you have a number of trials.
 6              MS. DUCOFF:  I do, Your Honor.  I have a
 7        full schedule already set.  I'm looking -- I have
 8        cases set into November.
 9              And it looks like the latter part of
10        November and even December looks clear.
11              Knowing whether it's gonna' be a jury or
12        bench might help this Court also.
13              THE COURT:  Mr. Cedeno, earlier you stated
14        that you did not -- you were not going to agree to a
15        jury trial or to a non-jury trial.  And I have said
16        to you that you have a choice between one and the
17        other.
18              If you want -- if you don't -- if you don't
19        say that you will waive a jury then we -- the law
20        says you must have a jury trial.
21              Is that your intention?
22              THE INTERPRETER:  First of all, I've been
23        representing myself.  I've been doing my work.  It
24        will -- if you look in the computer, in the docket,
25        it says September 13, 2012.
```

1          THE DEFENDANT:  I did not consent to bench

2    trial.  I did not consent to jury trial.

3          THE INTERPRETER:  I did not consent either

4    one of that, jury trial or --

5          THE COURT:  I understand.

6          THE DEFENDANT:  The objection, denial of

7    consent, 2012, I serve it to the Clerk of Courts,

8    one for you and one for the prosecutor, okay?

9          Why the reason and why the Court, they got

10   it unclean hand, okay?  All the violation, they did

11   it with the prosecutor, okay?  I have plenty

12   violation for Ohio Revised Code.

13         THE COURT:  I'm sorry?

14         THE DEFENDANT:  They have no evidence, no

15   proof, no affidavit, no complaint, never been

16   indicted by Grand Jury, okay?

17         I got all specific and everything there for

18   the -- meant for the judge.  I was wait for long

19   time.  So, Your Honor, you can answer, but remember

20   the charges, but still 2013, I was -- I never got an

21   answer.

22         I had Ohio -- 2937.02, Section 8(C) and (D)

23   tell you you have to be service before you get your

24   indictment.  You have to get complaint and affidavit

25   with the facts.

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

```
1              It never happened and I never indicted by
2     Grand Jury, 2939.20.  It's never endorsed for the
3     True Bill, okay?
4              First of all, in this case, you cannot tell
5     this person committed this crime to this year to
6     another year.  You have to specify when Mr. Cedeno
7     was there in that time, okay?  The indictment is in
8     defect.  2941.06, they tell you, Ohio Revised Code,
9     how the indictment have to be:  date, time and where
10    is the place.
11             You giving her four times.  You dismiss the
12    first indictment; the second indictment for the
13    reason to change the month, change the year, change
14    the story.  Now we have the three and four for the
15    same thing.  Mr. Cedeno, you have to -- when you got
16    this stuff and you charge it like that, you have to
17    tell him where he was during that time.
18             I was in -- first time I was in jail.  Now
19    big mistake.
20             Now give a chance, second time.  Same thing,
21    change the date, change the month, change the story,
22    okay?
23             Third time, the same indictment for the
24    first and -- first and second.
25             The fourth indictment, same thing that
```

1    happened.

2         Ohio Revised Code, 2941.06, 2941.08, 2937.20

3    -- .21 tells no continue or request by defendant.

4    That mean I supposed to be answer everything that

5    was in the docket.  They never had answered.

6         That was serving.  I had the stamp in each

7    issue.

8         How you gonna' say Mr. Cedeno committed this

9    crime and you don't know where was Mr. Cedeno.

10   That's why they make huge mistake.

11        Now, the third and the fourth I got to prove

12   Mr. Cedeno he not was there in that time, okay?  So

13   they have to find out.

14        They have May, 2006 I committed the crime.

15   They put in the indictment.

16        On May 1st -- we have to be common sense in

17   this.  May 1st, Mr. Cedeno is still in jail.  How

18   Mr. Cedeno committed the crime?

19        And before Mr. Cedeno get out the jail, you

20   need two months to tell the address where Mr. Cedeno

21   report, okay?  So Mr. Cedeno have to be approved

22   when he got out of jail to be released, okay?

23        Now, Mr. Cedeno and, you know, I had to

24   report for the Sheriff's Department too.  They got

25   the address too.  Mr. Cedeno get out in May 9, 2006,

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

1       okay, because I don't have no complaint or

2       affidavit.  When I get out, where is the address?

3       They got that report, okay?

4              Now, Mr. Cedeno, when he get out, Mr.

5       Cedeno, they got the paper because this a fake

6       statement too.  I got it over here in my hand.  I

7       got it in the record.  They never signed, no

8       witness, no date.  Who made that statement?  I had

9       it right here in my own in black and white, and you

10      want to see that?  It's in here.

11             And, now, another thing.  Mr. Cedeno, they

12      got the indictment that Mr. Cedeno, he was living in

13      3226 West 86th and Denison.  By that time Mr. Cedeno

14      no live at West 31st -- 3140 61st Street.  How can

15      he committed that crime?  And you got the indictment

16      do it then.  They said that all this time.  You know

17      why?  Because it's a false statement.  It's a false

18      indictment.  Keep going, going, going.  Because the

19      truth only one.  That person, they can never say it

20      was a Saturday, this month, this year, no.  They

21      always continue, continue, keep going, going, doing

22      same thing.  Makes a false statement for the

23      indictment.  It's malicious prosecution.  That's

24      what it is.

25             I got it right here.

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

```
 1              All you have to do is so simple.  It's so

 2      simple.  You see, that's why I said it's so simple

 3      to go to the computer and find out in 2006 where

 4      Mr. Cedeno he was at.

 5              Mr. Cedeno, 2006, he had to go to the

 6      Sheriff Department and register.  And it wrong.  I

 7      had to do that.  So the address, they had to go my

 8      house and prove the address, okay, because they want

 9      to see school I not be around.

10              Mr. Cedeno, he had to -- before he could get

11      out of jail he had to give you the address where he

12      had to live.  I proved that.  The parole officer,

13      they let me go home.

14              THE COURT:  Wait.  Mr. Cedeno, I understand

15      you're raising these questions.  This is not the

16      time when we should be addressing that.

17              THE DEFENDANT:  Well, but I understand all

18      of that.  That's why I want to make sure what's the

19      common sense because you -- you see in your eyes

20      Mr. Cedeno, he not was there, and Mr. Cedeno have

21      prove.

22              So he get out May 9th.  His father passed

23      away.  The parole, in May.  In June, he was in

24      Puerto Rico, huh?  I had to prove, to sign, my

25      father would pass away.  And the parole, I had the
```

1    -- I got my signature from Puerto Rico.  I was in

2    Puerto Rico.  They gave me a break.

3         But no.  The prosecutor say I committed the

4    crime this time.  It's impossible.

5         THE COURT:  Now --

6         THE DEFENDANT:  All you have to go to the

7    computer and look in the computer and see.  That's

8    what made me mad.  I'm not mad at you.

9         THE COURT:  Mr. Cedeno.

10        THE DEFENDANT:  I'm not mad at you.  But I

11   had to hold it for long time.

12        THE COURT:  If you have these objections to

13   the indictment, there are two things that you can

14   do.  You could file a motion raising these issues,

15   or you can put on evidence, testimony at trial.  And

16   if you can convince me or a jury, then that's fine.

17        Now, Miss Ducoff, do you have any response

18   to the statements that Mr. Cedeno has been making?

19        MS. DUCOFF:  Well, I couldn't understand all

20   of them.  But the ones that I did understand, you

21   have ruled already on some of his issues.  You've

22   already ruled on motions such as the indictment is

23   defective or there was no Grand Jury,  Those kinds

24   of issues you've ruled on.  You're just repeating

25   the same thing.

1          THE DEFENDANT:  No.  I object.  That is not

2     true.  That's not true.  We never got an answer, so

3     you can't tell me that they -- that's not true,

4     because I was waiting for long time to get an

5     answer, because if we get an answer I got another

6     statement.  I got another statement.

7          THE COURT:  Are there motions that have not

8     been ruled upon?

9          THE DEFENDANT:  Well, it's everything -- oh,

10    Judge, yes.  One time you said, I gonna' --

11    Mr. Cedeno, I gonna' take this in consideration.  We

12    are gonna' look, take my time, look, because she

13    never give me all the papers.  You say I don't have

14    all the stuff with me.

15          I said, Your Honor, I got everything on

16    record in the docket every time it was filed, okay?

17          And then January 23rd we in the record and

18    you say, well, I have to look everything specific

19    that I cannot give you answer, Mr. Cedeno.

20          They never get answers back.

21          THE COURT:  Okay.  Let me take a look at

22    that.

23          But right now what I want to do -- and I'll

24    take a look at those.  But we are going to be

25    setting a trial date.

```
 1          THE DEFENDANT:  Well, I deny -- I deny the

 2   consent to bench trial and jury trial.  We have to

 3   followed this because that's unclean hand when that

 4   happened.

 5          THE COURT:  Then I am going to say for the

 6   record that we will have a jury trial since you do

 7   get a jury unless you specifically waive or give up

 8   your right to a jury.  So for now we are going to

 9   say a jury trial.  We will set a date -- I'll have

10   to consult with my bailiff, but I'm looking now at

11   possibly the second half of November.  Ms. Ducoff

12   has other trials.  I don't think you have any other

13   trials, Mr. Cedeno.

14          Okay.  Now, one thing I would like to

15   confirm right now.  Do you have any objections to me

16   being the judge?

17          THE DEFENDANT:  Well, I got my papers to go

18   to Supreme Court and a lot of other issues this is

19   based on.

20          THE COURT:  I don't follow.  You say you

21   have papers going to the Supreme Court?

22          THE INTERPRETER:  Oh.  I have my right in

23   the future to appeal if we have a bench trial, and I

24   did already have filed those papers.

25          THE COURT:  I don't have any information
```

1     that you have -- do you believe that -- do you

2     believe that I can be fair?

3             THE DEFENDANT:  Your Honor, I want to

4     explain to you here in court on the record, all

5     right?  I was there before when Mr. Oscar Rodriguez

6     over here, right?

7             THE COURT:  Yes.

8             THE DEFENDANT:  And Mr. Rodriguez, I was

9     told him from 9/13 and was -- I put -- I say bench

10    trial.  I put a motion and do the trial.  I put a

11    motion for that day.

12            And on 10/25 he know that.  10/25 he call

13    me.  I was here in that cell right there.  And he

14    said, what you gonna' do?

15            I said, I'm not gonna' consent to bench

16    trial or jury trial -- jury trial or a bench trial.

17            So soon I told him this, okay.  He come back

18    inside and told me the judge left, okay?  As soon as

19    he said the judge left, next day I looked in the

20    computer, I looked in the docket, he was agreeing

21    for bench trial.  But, Your Honor, I supposed to be

22    -- that day, 25, I supposed to see you in front of

23    you and decide and sign my waiver and say I want to

24    go to jury trial or bench trial.  You have to ask

25    me.  That day it never happened.  They believe I'm

1    the lawyer, okay?  Now --

2         THE COURT:  You can say you want a jury

3    trial or a bench trial.  Wait.  Let me finish.  If

4    you -- if you want to waive your right to a jury and

5    have a bench trial, we have to -- I have to ask you

6    certain questions on the record.  You have to sign a

7    paper, and I have to then sign it as well.  So

8    nobody can waive a jury without you agreeing in open

9    court and in writing.

10        THE DEFENDANT:  That's what I don't

11   understand.  That's when you did it before.

12        Now, with the 10/25, that never is coming in

13   and he got settle everything already for the trial

14   with Miss Ducoff.

15        Miss Ducoff told him this the right lawyer

16   to do this case.  This the right --

17        So now, on that day, he was ready to start

18   everything.  You never call me to read my right.

19   You never call me to waive my right to sign.

20        THE COURT:  Mr. Cedeno, right now I asked

21   you a very specific question.  I need an answer to

22   that question.

23        Do you object to me being the judge on this

24   case?

25        If you say that you think I can be fair, I

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

1    will try to be fair and -- throughout these

2    proceedings.

3         But if you think that I am prejudiced or

4    cannot be fair in handling this case, say the word

5    and I will let another judge handle it, take over.

6         THE DEFENDANT: All I want to know is I want

7    you to be fair, get the proof before anything --

8    everything what I tell you, everything follow in the

9    docket, read it and see all the evidence what I told

10    you that and all the mistake, all the indictment

11    they make, the prosecutor, see?

12         I never been indicted by Grand Jury and I'll

13    tell you, they didn't know about this today, the

14    address, I be in there. All they have to look in

15    the computer, find out what Mr. Cedeno who's there,

16    the address.

17         You look in the indictment, too, Mr. Cedeno

18    was in jail. And they say I still committing a

19    crime in indictment number four. How it's gonna',

20    you know --

21         THE COURT: The current indictment,

22    Mr. Cedeno, in 564978, that is this case. There is

23    an indictment. It is signed by the foreman of the

24    Grand Jury. It is a proper indictment.

25         Now, if there are problems or questions

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

```
 1    about the dates of these offenses, we can deal with

 2    that.

 3              But this is an indictment that was returned

 4    by the Grand Jury of Cuyahoga County.

 5              THE DEFENDANT:  It's four indictment, number

 6    four indictment.  By the stamp, that never been

 7    signed by hand.  They tell you -- 2941.06, they tell

 8    you you have to sign by hand, not by the stamp, in

 9    2941 --

10              THE COURT:  It's not signed by --

11              THE DEFENDANT:  Yeah, by the stamp.  That's

12    what it is.  They sign it by the stamp.

13              THE COURT:  It is not by a stamp.  They now

14    have permission -- and they have done this for

15    several years now -- to do this by electronic means.

16    That is legal.

17              Okay.  So I will -- okay.  I will check as

18    to your question about whether Miss Rojas may

19    continue to be your interpreter.  I will talk to the

20    Supreme Court which is responsible for this.  And if

21    they say that Miss Rojas can stay as your

22    interpreter, that would make me very happy.  I would

23    much prefer to have her than somebody new.

24              But if they say that it must be somebody who

25    is certified, then we have to follow the law.
```

1           Is there anything else, Miss Ducoff?

2           MS. DUCOFF:  Well, I still don't know where

3      -- where this is going, jury or bench.

4           THE COURT:  It's going to be a jury --

5           MS. DUCOFF:  Jury.

6           THE COURT:  -- unless and until Mr. Cedeno

7      signs a waiver of jury trial and agrees to that in

8      open court.

9           MS. DUCOFF:  Okay.

10          THE COURT:  Other than that, the law

11     presumes jury trial.

12          MS. DUCOFF:  Okay.  I also have heard

13     Mr. Cedeno right now speaking a lot about proof that

14     he has about where he's been, and it sounds like he

15     has documentation.  And he needs to hear that he has

16     a reciprocal duty to follow -- file discovery.

17          THE COURT:  He refused your offer of

18     discovery.

19          MS. DUCOFF:  He refused my receipt, but he

20     can't -- you can't refuse a demand.  I don't think

21     it -- this Court is going to allow him to produce

22     documentation in trial that the State has never

23     seen.

24          THE COURT:  Mr. Cedeno --

25          THE DEFENDANT:  I object this because this

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

1    all we making something real nice and real nice.

2    You trying to give you a motion of discovery and you

3    say the law protect you, and you give me half of the

4    motion of discovery.  How the person can defend

5    hisself?  What happens motion of discovery?

6              THE COURT:  Mr. Cedeno --

7              THE DEFENDANT:  Oh, my God.

8              THE COURT:  -- let me -- let me put it this

9    way.  Miss Ducoff offered you the discovery that she

10   had.

11             THE DEFENDANT:  I have the discovery.

12             THE COURT:  Okay.

13             THE DEFENDANT:  I have the discovery.

14             THE COURT:  You got it?

15             THE DEFENDANT:  She said that.

16             MS. DUCOFF:  He's not saying I have

17   possession.

18             THE DEFENDANT:  The law protect -- the law

19   protect her.  And they say I have discovery.  And

20   you ask her is he got a real lawyer that state,

21   lawyer, you give it to him?  And she said yes, I

22   give it to him.  But it was me.  She say she cannot

23   give it to me.

24             THE COURT:  Mr. Cedeno.

25             THE DEFENDANT:  So that is not whole thing.

OFFICIAL COURT REPORTERS
CUYAHOGA COUNTY, OHIO

1              THE COURT:  Let me speak right now.

2              There are some items in discovery in these

3       types of cases that the law does not allow the

4       defendant to see.

5              Ms. Ducoff did offer you the discovery that

6       the law allows.  If you want -- if you want that,

7       she will give it to you again or she will offer it

8       again.

9              At the same time, if you have evidence that

10      may -- may show that you are not guilty, if you show

11      that to her, she can then take that to her

12      supervisor and maybe get some of the charges or all

13      of the charges dismissed.

14             THE DEFENDANT:  Your Honor, that's simple.

15      It's in the computer.  It's in the computer.  It's

16      by the law.

17             THE COURT:  No.

18             THE DEFENDANT:  It's in the computer --

19             THE COURT:  No.

20             THE DEFENDANT:  -- what I'm telling you.

21             THE COURT:  You were saying -- you were

22      saying things about when you were in Puerto Rico.

23             THE DEFENDANT:  Yeah.  It's right here.  It

24      was -- I got the -- I got the -- the paper my father

25      pass away.

```
1              THE COURT:  Okay.

2              THE DEFENDANT:  And the parole give me, and

3    my witness.  I got it.

4              THE COURT:  You've got it.

5              THE DEFENDANT:  Exactly, right now, in the

6    court.

7              THE COURT:  Okay.

8              THE DEFENDANT:  I'll provide it to you right

9    now.

10             And, plus, I had the parole.  They want to

11   give me permission for going there.

12             THE COURT:  Can you -- Miss Rojas, would you

13   give that to me?

14             I will have our bailiff -- I will ask the

15   bailiff to make copies and we'll have it.

16             Please ask her to make copies, two copies.

17             Okay.  So we will take care of that and get

18   your original papers back to you.

19             THE DEFENDANT:  Your Honor, and the thing is

20   -- and it's easy.  The Sheriff's Department go

21   there.  What's the address what Mr. Cedeno report?

22   They got it.  And I was there that time.  It's in

23   the computer.  I sign it.  And they got all the

24   evidence.

25             Should I write to the Sheriff's Department?
```

```
 1          It's hard to get an answer back.  Plus everything is

 2     in the computer.  We can ask them.  You can ask

 3     them.  You can pull up Mr. Cedeno.  They say, he's

 4     right.

 5          THE COURT:  These are things, Mr. Cedeno,

 6     that may be in somebody's computer, but they're not

 7     in our computer or the prosecutor's computer.

 8          THE DEFENDANT:  Mr. Cedeno get out on May 9

 9     from in jail.  I got the paper from in jail.  It's

10     in here.

11          THE COURT:  Okay.

12          THE DEFENDANT:  Okay?  And now -- right

13     here, I print it out.  It said May 9, okay?  Not

14     May 1st, because it said May 1st I committed the

15     crime --

16          THE COURT:  No.  No.  The indictment says --

17          THE DEFENDANT:  -- 2006.  They said that.  I

18     got it black and white.

19          THE COURT:  No.  Mr. Cedeno, the indictment

20     says between May 1, 2006 and March 19, 2011.

21          THE DEFENDANT:  So what, it can be May 1st,

22     May 2nd, May 3rd or May 4th?

23          THE COURT:  Okay.  Count 1 charges that this

24     happened between May 1, 2006 and May 31, 2007.

25          The same with Count 2.
```

1        Count 3 says April 30th of 2008 to April 29,

2    2009.

3        When we're dealing with a child, the

4    indictment -- the indictment may not be specific as

5    to exactly when these took place.

6        THE DEFENDANT:  They have to specify when

7    that happened.  Why?  Because Mr. Cedeno got answer,

8    because that person didn't have no answer when that

9    happened, but Mr. Cedeno got answer when I was

10   there, okay?  And Mr. Cedeno, when he go home, and

11   the address, point blank, when he get out, from

12   May 9th, okay, when he get out, I get out 3226 West

13   86th Street, not --

14       THE COURT:  We're not here to --

15       THE DEFENDANT:  That's what I said.

16       THE COURT:  Mr. Cedeno, we are not deciding

17   these issues here and now.

18       THE DEFENDANT:  And you know what?  I do not

19   agree with that because you cannot say May 1st, by

20   legal, and May 2nd and May 3rd.  Why?  Because

21   Mr. Cedeno was in Marion Correctional Facility, so

22   why you say that, you have to get another date?

23       THE COURT:  Mr. Cedeno.

24       THE DEFENDANT:  What they doing?

25       THE COURT:  Mr. Cedeno, you have said that

```
 1          several times today.
 2                    THE DEFENDANT:  Okay.
 3                    THE COURT:  I understand your objection.
 4                    THE DEFENDANT:  It's the four indictment.
 5                    THE COURT:  I understand.
 6                    THE DEFENDANT:  Change the date, change the
 7          month, change the year.
 8                    THE COURT:  Okay.  We're done.  We're done.
 9                    THE DEFENDANT:  Wow.
10                    THE COURT:  Okay.  We will get a trial date
11          set, and I will put that on the record as soon as we
12          can.
13                    As for the question of the interpreter, I
14          will find out probably today what we can do on that.
15                    And on any outstanding motions, I will take
16          a look at them as soon as I can and see what -- what
17          is the appropriate response.
18                    THE DEFENDANT:  Oh, I'm sorry.  Every time
19          this -- all this court is in record, I want to put
20          on record, they say all these requests for
21          defendant, request by the defendant, and mostly --
22          multiple court, I never been there.  I never request
23          for nothing.  So that's Ohio 2937.21.  They not -- I
24          never been in court.  They never call me.  So I
25          never said request by the defendant.
```

1              MS. DUCOFF:  Your Honor, I have such a hard

2     time understanding him.  Could we be consistent?  If

3     we are gonna' hire an interpreter, I'd like to know

4     if we could have everything said through the

5     interpreter.  It's just too hard to understand him.

6              THE DEFENDANT:  Okay.

7              THE INTERPRETER:  Every continue this Court

8     has made, they put, like, the request by the

9     defendant.  I never request that.  And based on the

10    law and Ohio Revised Code 2937.21, I haven't grant

11    those continuance.  And the docket show that every

12    continuance was made by me, and that is not true.

13             THE COURT:  Mr. Cedeno, in some cases, these

14    continuances are reported as being at your request

15    because -- not because you asked for a continuance

16    but because you refused to stipulate to the report

17    of the Court Psychiatric Clinic, you refused to

18    stipulate to the report of the doctors at Twin

19    Valley, and so they -- the continuances were because

20    of your actions, not because I was not ready to go

21    forward or because Ms. Ducoff asked for a

22    continuance, but because of your conduct.

23             We are done now.  Okay?

24             You may take him downstairs.

25             (Proceedings concluded.)

1  **MONDAY MORNING SESSION, SEPTEMBER 30, 2013**

2                    - - -

3           THE COURT:          Okay.  I will

4  note that we have before the Court at this

5  time Criminal Case Number 563913.  A problem

6  has come up in that Mr. Cedeno is being

7  assisted at this time by Bernadita Rojas who

8  is acting as interpreter at the defendant's

9  request.

10          Miss Rojas, you are not certified

11  under the Supreme Court guidelines, is that

12  correct?

13          THE INTERPRETER:    This is correct,

14  Your Honor.

15          THE COURT:          The State has

16  objected to the defendant's desire to waive a

17  certified interpreter.  Mr. Cedeno, have you

18  had a chance to see that?

19          THE INTERPRETER:    I haven't

20  received anything.

21          THE COURT:          Miss Ducoff, do

22  you have an extra copy?  If not, I'll have one

23  made from this.

24          MS. DUCOFF:         My extra copy is

25  not signed.  Your copy is signed.

```
1              THE COURT:            Let's make a
2      copy of my signed copy.
3              MS. DUCOFF:           And for the
4      record it was mailed to him at the county jail
5      on -- it might say on your copy.  Mine just
6      reflects it was mailed.
7              THE COURT:            This blank day
8      of September?
9              MS. DUCOFF:           Is your copy a
10     time stamped copy?
11             THE COURT:            Yes, September
12     19th.
13             MS. DUCOFF:           So that would be
14     the date.  That would be the date on the time
15     stamp, Your Honor.
16             THE COURT:            Mr. Cedeno, the
17     prosecutor also filed a motion to appoint a
18     certified interpreter and that was filed
19     August 29th.
20             THE INTERPRETER:      I haven't
21     received that either.
22             THE COURT:            I'm surprised
23     but I will make a copy right now and have it
24     given to you.
25             THE INTERPRETER:      Thank you, Your
```

1    Honor.

2              MS. DUCOFF:          If I recall,

3    Your Honor, we met the day I filed the State's

4    motion to appoint a certified interpreter.

5    You granted that motion initially.

6              THE COURT:          Yes.

7              MS. DUCOFF:          And then when

8    the defendant indicated that despite the rule

9    he was willing to waive, you then said let's

10   revisit this issue, and I believe that's part

11   of what today's purpose was.

12             THE COURT:          Okay.

13             THE INTERPRETER:    Your Honor, I'm

14   going to just let you know that I'm looking at

15   Bernadita because I was paying attention.   I

16   don't want to be unrespectful to you if I'm

17   not looking to you but I want to hear what

18   Bernadita is saying.

19             THE DEFENDANT:      I'd like to show

20   respect by looking you in the face but I want

21   to make sure you understand.

22             THE COURT:          Miss Ducoff.

23             MS. DUCOFF:          Your Honor, may

24   I suggest that since we do have an interpreter

25   that we exclusively use the interpreter.   At

1      prior hearings I think Mr. Cedeno often

2      addresses the Court and we -- that's really

3      not making a good record.  We have a hired

4      interpreter right now.  It's Miss Rojas.

5           We're waiting on your ruling about

6      future hearings, but if Mr. Cedeno has

7      something to say to the Court, he should

8      address it to Miss Rojas then address it to

9      you.

10          THE COURT:          Since we have an

11     issue with the qualifications of Miss Rojas,

12     I'm going to allow Mr. Cedeno to speak

13     directly to me when he feels comfortable doing

14     that, and when he needs to use the services of

15     Miss Rojas, he will do so.  I think that's the

16     best way to proceed at this stage.

17          MS. DUCOFF:          Thank you, Your

18     Honor.

19          THE DEFENDANT:          Yes.  I specify

20     before I'm trying the best I can do to speak

21     to you, and something we don't understand,

22     we'll use the translator.  I'm not trying to

23     play game with English or Spanish.  I'm just

24     trying the best I can to explain to you my

25     situation.

1          THE COURT:          And that's what

2     I just said.

3          THE DEFENDANT:          I appreciate it.

4     Thank you.

5          THE COURT:          Now do you want

6     some time to review this and we can come back

7     later this week?

8          THE INTERPRETER:     I do need time

9     to read this, and I need somebody that speaks

10    Spanish in jail in order for them to translate

11    this for me.

12         THE COURT:          Okay.  So we

13    will get an interpreter to meet with you.

14    Maybe one week?  Does that work?

15         THE INTERPRETER:     Okay.  Next

16    week, that's fine.

17         THE COURT:          Miss Ducoff?

18         MS. DUCOFF:          Yes, Your Honor.

19    It just begs the question do we rule on the

20    interpreter issue and have an answer to that

21    so you know who to provide for the

22    interpreting of this?

23         THE COURT:          Mr. Cedeno is

24    asking for time to review that question.  I

25    will have an interpreter appointed to meet

1       with him to go over the State's objections and

2       your motion and allow him one week, and I will

3       attempt to have a certified interpreter

4       present.

5               Is next Monday, one week from today,

6       does that work for you?

7               MS. DUCOFF:          It does.  I only

8       have one sentencing a week from today.

9               THE COURT:          Okay.  Then next

10      Monday, October 7th, we will meet.  I will

11      have an interpreter, certified interpreter,

12      present and we'll see where we're going with

13      that.

14              MS. DUCOFF:          Did you mean a

15      certified interpreter helping him understand

16      my motion or did you mean a certified

17      interpreter next Monday?

18              THE COURT:          Both.

19              MS. DUCOFF:          Thank you, Your

20      Honor.

21              THE COURT:          Okay.

22              MS. DUCOFF:          What time, Your

23      Honor?

24              THE COURT:          Let's say ten

25      o'clock.

1      THE INTERPRETER:    Can I put

2   something on the record, Your Honor?

3      THE COURT:          One moment.

4   Yes.

5      THE INTERPRETER:    I just wanted to

6   put on the record what I have here in my hand,

7   and I didn't have the opportunity to do it

8   before.  It's in relation to the issue that

9   was done on June 7th, 2013 by between -- I did

10  receive a copy of the doctor.  The name of the

11  doctor is David Soehner, S-O-E-H-N-E-R.

12      That day when they did the

13  evaluation, they did have an interpreter for

14  me but that was an American person whose

15  Spanish was not good enough, and the day of --

16  I received this paper the day we came to

17  court.  We never received that before.

18      THE COURT:          What report?

19      THE INTERPRETER:    Remember you

20  handed this paper to me, this copy to me?

21      THE COURT:          I don't know

22  what report we are speaking of.

23      THE INTERPRETER:    Do you want to

24  see it?

25      THE COURT:          Yes.

1           THE INTERPRETER:      I have two

2      different reports from two different doctors.

3           THE COURT:               The report that

4      we are relying upon I believe is from Dr.

5      Sokalov at Twin Valley.

6           THE INTERPRETER:      I do have that

7      one too.  You gave me two the last time we

8      were here.  You gave me that one and this one

9      on the 7th.  On June 19th also.

10          THE COURT:               Mr. Cedeno, all

11     the reports that we have agree with you that

12     you are competent to stand trial and that you

13     are competent to represent yourself.  That

14     includes the reports from Twin Valley and from

15     Northcoast Behavioral and from our Court

16     Psychiatric Clinic.

17          THE INTERPRETER:      The reason I was

18     just talking to you about the two reports, the

19     first doctor who we are talking about here,

20     the first report he never signed.  There is no

21     signature in his report, and that make it not

22     valid report if it's not signature there.

23          THE COURT:               It makes no

24     difference.

25          THE INTERPRETER:      The second

```
 1          report that you have there, whatever the name

 2          of that doctor is, he never signed that

 3          report.  The person that signed it was just

 4          the person who was in the front paper that

 5          says D.J., and that's the person who put his

 6          signature and his initial in there and the

 7          date because I was there when the doctor was

 8          writing and I know his handwriting.  I need to

 9          see those papers too.

10                    THE COURT:          Mr. Cedeno, I

11          don't understand why -- listen to me.  I don't

12          understand why you object.  You want to --

13                    THE INTERPRETER:    Okay.  My thing

14          is I never gave consent to them to have this

15          done.  That's the thing.  I never talked to

16          them at all.

17                    THE COURT:          Mr. Cedeno, do

18          you complain that this evaluation is wrong?

19          Do you want to say --

20                    THE INTERPRETER:    For sure.

21                    THE COURT:          Do you want an

22          evaluation that says you are not competent to

23          go to trial?

24                    THE INTERPRETER:    I'm not talking

25          about competence here.  I'm only talking about
```

1    giving consent for them to do this report on

2    me.

3              THE COURT:          It was my order,

4    not your consent.

5              THE INTERPRETER:    Okay.  How this

6    person can do a report?  I didn't open my

7    mouth for them to do this report.

8              THE COURT:          Do you question

9    the result of the report?  Do you say that you

10   are not competent to go to trial?

11             THE INTERPRETER:    No.  What I'm

12   trying to say to you nobody can affirm

13   something about anything when you don't even

14   open your mouth.  That's the whole thing.

15             THE COURT:          We are going

16   nowhere.  Miss Ducoff.

17             THE DEFENDANT:      I got --

18             THE COURT:          Quiet.  Miss

19   Ducoff.

20             MS. DUCOFF:         In order to

21   proceed pro se there has to be a stipulation

22   that report is accurate which would be adopted

23   in the findings which include conversations

24   they had with Mr. Cedeno.  If he's not going

25   to offer a stipulation, the State of Ohio is

```
 1          in the only position the State of Ohio can ask
 2          this Court to do is hold a hearing and let the
 3          examiner speak.
 4                    The examiner will be questioned about
 5          what Mr. Cedeno told him, and this Court will
 6          have to make a finding that, yes or no, the
 7          psychologist is speaking the truth when he
 8          says he interviewed Mr. Cedeno or not, and
 9          this Court will have to make the ultimate
10          decision on whether he can proceed pro se.
11                    If there is never going to be a
12          stipulation, I don't see another way around
13          this.
14                    THE COURT:          Okay.  The last
15          report we have was from Dr. Noffsinger of the
16          Court Psychiatric Clinic.
17                    MS. DUCOFF:          What's the date
18          of that, Your Honor?
19                    THE COURT:          August 7th.  We
20          will have a hearing.  I will contact Dr.
21          Noffsinger and find out if he is available
22          next Monday, otherwise, we'll do it whatever
23          date he can come in.  We will have an
24          interpreter available for the defendant, and
25          we will proceed at that point.
```

1    THE DEFENDANT:          I want to make

2    clear in the report over here it was said they

3    give me full copy for the Dr. Noffsinger.    I

4    don't know the name, but the Court agree with

5    Dr. Noffsinger but I never received copy in

6    the court.   I never received nothing to see

7    what did he write, what did he say and --

8         THE COURT:          You'll have an

9    opportunity to raise that next week.

10        THE DEFENDANT:          The docket says

11   I received that copy.  Never.  I never

12   received the copy.

13        THE COURT:          As I said just a

14   moment ago, we'll review that at the hearing

15   with Dr. Noffsinger.  Okay.

16        MS. DUCOFF:          Your Honor, was

17   Dr. Noffsinger the last professional to meet

18   with him?  Wouldn't the State have an

19   obligation to also introduce testimony from

20   Twin Valley to have the most thorough hearing

21   for this Court to make its decision, to base

22   its decision upon?

23        THE COURT:          Dr. Noffsinger

24   examined the defendant.

25        MS. DUCOFF:          After Twin

1      Valley?

2                    THE COURT:              Yes.

3                    MS. DUCOFF:             And wrote his

4      own report.

5                    THE COURT:              Based in part on

6      his evaluation, on his examination of the

7      defendant and upon review of the documents

8      from Twin Valley.

9                    MS. DUCOFF:             I think the

10     State will look at both reports and will have

11     to make a determination of what would best

12     convince this Court.

13                   THE COURT:              Okay.

14                   MS. DUCOFF:             Thank you, Your

15     Honor.  We're done.

16

17                        - - -

18     (Thereupon, the proceedings were concluded.)

19                        - - -

20

21

22

23

24

25

<u>THURSDAY MORNING SESSION</u>

<u>NOVEMBER 21, 2013</u>

THE COURT:  We once again have before the

Court Case No. 564978, that being the State versus

Noel Cedeno.

Present in Court at this time are the

Defendant, who has indicated his desire to proceed

pro se in this matter, along with Assistant County

Prosecutor Francine Goldberg who is standing in

for Ronni Ducoff.

We also have present in the courtroom

Dr. Stephen Noffsinger, and we'll get to that in a

moment.

Before we proceed further, I should swear

in the interpreter, Ms. Gallardo.

INTERPRETER:  Yes, Your Honor.

THE COURT:  Ma'am, do you swear or affirm

that the translation and interpretation you will

be giving between the English and Spanish

languages will be true and accurate to the best of

your ability?

INTERPRETER:  Yes, Your Honor, I do.

Ana Gallardo, for the record.

THE COURT:  I should note as well, you are

State certified?

1    INTERPRETER:  Yes, I am, Your Honor.

2    THE COURT:  Just to make sure the record

3    is clear on that.

4    INTERPRETER:  Before we start, I want to

5    clear up something.

6    THE COURT:  Yes, sir.

7    THE DEFENDANT:  I had a problem when I

8    come here to the Court, and this lady over here --

9    THE COURT:  This lady is the deputy

10   sheriff.

11   THE DEFENDANT:  The deputy sheriff, I

12   don't know her name, but I try to come back here

13   and she put my hand in the back, right, to come

14   here.  I try to put all these books behind my

15   back.  I said, I can't carry this.  Can I put the

16   books in the front of me?

17   Now, she told me, I don't want to carry

18   stuff, whatever, whether it's an English or

19   Spanish book, she started to question me about it.

20   I said, That's my legal stuff.  I represent myself

21   and that's what I'm trying to do.  So you have to

22   tell the Judge, this and that.

23   I said -- she on camera, too, she can't

24   deny it.  She give me a hard time.  So how am I

25   going to come with this big book with my hands in

the back?

THE COURT:  Mr. Cedeno, we will have to make arrangements in the future if you are going to be representing yourself in these proceedings, we have to know in advance, because the deputies cannot be carrying things for you and they cannot have you in any position that might jeopardize their safety.

So we'll just have to make arrangements in advance if you are going to be attempting to bring anything with you.  Okay.  I'm sorry if we had a problem today, but nothing was indicated to us in advance.

At the last hearing, I had an evaluation requested from Dr. Stephen Noffsinger of the Court Psychiatric Clinic as to whether you are competent not only to stand trial, but to represent yourself.  The law is clear that there are two separate determinations that have to be made.

First is whether you have the ability to go to trial.  We have had several psychologists and psychiatrists attempt to evaluate you, and their reports have all established that you are competent to go to trial on this case.

What we have not seen addressed

181

1    specifically was whether you are competent to

2    represent yourself.  I have Dr. Noffsinger's

3    report dated August 7th.

4         When we had the hearing on that some time

5    ago, Ms. Ducoff, on behalf of the State of Ohio,

6    did state specifically that she would stipulate to

7    that report.  In open court you refused to

8    stipulate to the report of Dr. Noffsinger.

9         Based upon that, we have had to ask

10   Dr. Noffsinger to appear in Court today in order

11   that you may question him as to his findings.

12        Now, at this point, Mr. Cedeno, do you

13   wish to stipulate to his report or not?

14        INTERPRETER:  I haven't received any

15   report from that man here.

16        THE COURT:  We did attempt to send it to

17   you and you refused to accept it.  I have a copy

18   of that report.  I can give it to you now, both in

19   English and we have had a Spanish language

20   translation performed.

21        Just so the record is clear on this,

22   Mr. Cedeno, the translator is Catherine Pena, who

23   has a sworn statement here that the translation

24   was performed accurately, completely, and

25   impartially, and she is a State certified

1        translator/interpreter.

2                INTERPRETER:  Okay.  Now, I have a

3        question for you:  That person that you are

4        sending it to that sees me in the jail, the

5        recorder, is that the person you appointed to be

6        my interpreter?

7                THE COURT:  We did.  And when you refused

8        to allow her to read that to you, she resigned.

9        That is why I asked Ms. Pena to be appointed to

10       interpret for you in writing.

11               INTERPRETER:  I asked for, you know, if

12       you have an ID, because you are stating that you

13       are certified, so I would like to know if you have

14       an ID, because I have my rights to see who is

15       coming to visit me.

16               THE COURT:  That is now a dead issue.

17       Ms. Pena is the interpreter that we have hired to

18       provide a translation of the report.  So the

19       previous one is not up for any discussion at this

20       time.

21               Now, do you wish to proceed?  Do you want

22       to question Dr. Noffsinger or do you wish to

23       stipulate to his report?

24               INTERPRETER:  Of course, I have some

25       questions.  I do have some questions.

183

1          THE COURT:  Some questions for me or for
2      Dr. Noffsinger?
3              INTERPRETER:  For the doctor.
4          THE COURT:  Okay.  Dr. Noffsinger, would
5      you approach?
6                  - - -
7              Thereupon, the Defendant, to
8          maintain the issues on his part to be
9          maintained, called as a witness,
10         STEPHEN NOFFSINGER, M.D., who, being first
11         duly sworn, was examined and testified
12         as follows:
13                  - - -
14         THE COURT:  Very good.  Have a seat,
15     please.
16         Okay.  Mr. Cedeno, you said you have some
17     questions.
18             INTERPRETER:  Well, first of all, good
19     morning.
20         THE WITNESS:  Good morning.
21             INTERPRETER:  The date that you have the
22     interview was 8/29/13 at 9:00 in the morning, you
23     tried to communicate to me, you gave me some
24     regulations for an examination.  And I told him
25     that I didn't have anything personal against him.

1          I tried to explain to him in my own broken

2     English, and I said I didn't have any consent to

3     keep following with this examination.  So I did

4     say, if you don't have me signing here, put the

5     name here on the paper.  He signed here and he

6     wrote down declined, I didn't sign.

7          So he told me you have to press the button

8     so the sheriff can come and pick you up because we

9     don't have anything else to talk about; is that

10     correct?  So my question:  Is that correct, that

11     that normal that it happened?

12          THE WITNESS:  Is it normal that I pushed

13     the button for the sheriff or the whole statement?

14          INTERPRETER:  So the button you pressed,

15     because there was nothing else to talk, so you

16     were calling the sheriff to come and get me?

17          THE WITNESS:  I pressed the button to end

18     the interview because -- if I could finish my

19     answer, please.

20          THE COURT:  She's providing a simultaneous

21     translation.

22          THE WITNESS:  He appears to be speaking to

23     the interpreter, Your Honor.

24          Can I finish my answer, Your Honor?

25          THE COURT:  Would you wait until the

1  doctor finishes his answer?

2  THE WITNESS:  I pushed the button to end

3  the interview, because we had proceeded through

4  the informed consent portion of the interview, and

5  at that point you told me that you were not

6  willing to provide any answers to my questions

7  with respect to your background, psychiatric

8  history, and inquiry into your competence to stand

9  trial, or an inquiry into your competency to waive

10  your right to counsel.

11  So, based on your statements that you were

12  not going to answer any further questions, then I

13  pushed the button for the sheriff's deputy.

14  INTERPRETER:  So there was no

15  communication at all?

16  THE WITNESS:  I would not agree with that

17  statement.  We did have a discussion about your

18  informed consent.

19  If you look at my report, I outlined where

20  we discussed your rights.  I read your rights to

21  you.  I also verbally told you that there was not

22  -- that our discussion was not confidential and

23  that I would not be providing you treatment, so

24  there was no doctor/patient relationship.

25  I believe then you told me that you were

1    simply exerting your rights, that you had nothing

2    personal against me, and we had a polite brief

3    conversation.

4         Also, keep in mind that during our entire

5    15-minute exchange, I was observing you as well,

6    observing your behaviors and your actions.

7         INTERPRETER:  Okay.  There's a reason why

8    you have given me this in Spanish, right, because

9    I don't understand.

10         THE COURT:  I will interrupt.

11   Dr. Noffsinger wrote his report in English.  As an

12   accomodation, as a favor to you, Mr. Cedeno, I

13   ordered a translation made of Dr. Noffsinger's

14   report.

15         INTERPRETER:  That was very good that you

16   did that, and I appreciate that.

17         But at that time when I was interviewing

18   with the doctor, so I could understand what's

19   going on with the doctor, I should get an

20   interpreter for that date.  I didn't have an

21   interpreter at no point, so that's why I didn't

22   have anything to talk to him about.

23         THE COURT:  Dr. Noffsinger, at any time

24   during the process, did Mr. Cedeno indicate to you

25   that he was having difficulty understanding you

1   speaking English?

2           THE WITNESS:  No, Your Honor.

3           THE COURT:  Did he at any time ask for

4   someone to be an interpreter or to interview you

5   in Spanish?

6           THE WITNESS:  No, Your Honor.

7           THE COURT:  Was there anything in the

8   discussion you had with Mr. Cedeno that led you to

9   believe that he was having difficulty

10  understanding you or communicating to you in

11  English?

12          THE WITNESS:  No, Your Honor.

13          THE COURT:  If you had any questions about

14  that, what would your response have been?

15          THE WITNESS:  To seek an interpreter.  We

16  have interpreters readily available.  I used one

17  as recently as two or three weeks ago, Your Honor.

18  And if there would have been either a request from

19  him, or any concern on my part that there was a

20  language barrier, I would have simply asked for an

21  interpreter for that.  He didn't ask for one.  And

22  based on our interactions, there was nothing to

23  lead me to believe that he couldn't understand

24  what I was saying in English.

25          THE COURT:  Okay, thank you.

1          INTERPRETER:  But at that time I told you

2     that I was going to try to speak English, because

3     I don't speak very good English, and I can explain

4     it to you what I can say.  And you know when they

5     talk to you in that type of language, I don't

6     mind, you know, that they have problems with the

7     language.  You just say that you tried very much

8     to understand what I was saying, because I was

9     having problems to speak.

10          THE WITNESS:  I don't understand what the

11     question is.

12          THE COURT:  I don't think that's a

13     question.  I believe that was a statement by

14     Mr. Cedeno.

15          INTERPRETER:  When a person tells you that

16     they have problems to speak English, what's your

17     procedure?

18          THE WITNESS:  A person in general?

19          INTERPRETER:  Like me.

20          THE COURT:  You're talking about somebody

21     whose native language is Spanish, let's say?

22          INTERPRETER:  Exactly.  That doesn't speak

23     English, a little bit.

24          THE WITNESS:  With the reservation that

25     that is not what occurred during our interaction

1    back in August, but I can say in general if a

2    Defendant tells me that they're having problems

3    understanding English, then my next step would be

4    to arrange for an interpreter, which, as I

5    mentioned before, is done quite easily.

6              INTERPRETER:  So it appears that you were

7    having problems to understand me, what you told me

8    before; is that correct or not?

9              THE WITNESS:  No, that is not correct.

10             INTERPRETER:  It's just what I was saying

11   is what you told before, you said you were trying

12   to understand me.  So automatically there's some

13   problems with communication.

14             THE WITNESS:  I would dispute that.  As I

15   mentioned before, you did not request an

16   interpreter.  You did not mention that you were

17   having problems understanding.  I did not sense

18   that we were having problems communicating.  You

19   appeared to be able to talk to me very clearly in

20   English and understand my English.

21             INTERPRETER:  Every order that the Judge

22   has given, he always asks for an interpreter.  He

23   explains to the nurses and the doctors that I need

24   an interpreter, and the Judge is the one that

25   gives that order.

1          THE COURT:  Again, that's a statement, not

2     a question.  No specific order was given by this

3     Court for an interpreter or for a Spanish-speaking

4     evaluation.

5          I always defer to the professionals in the

6     Court Psychiatric Clinic, as well as Northcoast or

7     Twin Valley, to determine whether they can

8     communicate in English or if they need an

9     interpreter or anyone else to assist.

10          I will note as well that in all of the

11     referrals that have been done in this case, or

12     evaluations at the Court Psychiatric Clinic at

13     Northcoast Behavioral and at Twin Valley, no

14     request was made for an interpreter by the Court.

15          There was no indication by any of the

16     doctors or staff that there was any issue with

17     language, understanding communications, no

18     requests by Mr. Cedeno, and no indication by the

19     staff or the doctors that they observed or noticed

20     any situation that would have required an

21     interpreter.

22          INTERPRETER:  I have papers from Twin

23     Valley, from Dr. Howard Sokolov.  And in these

24     papers, he stated that he has problems with my

25     English, to understand me.  I have it here in my

1     hand.  That was June 11, 2013.

2            THE COURT:  What page?

3            INTERPRETER:  Let me check.  One moment,

4     please.

5            THE COURT:  I will note on Page 6 of

6     Dr. Sokolov's report he does state:  "Mr. Cedeno

7     demonstrated no signs or symptoms of mental

8     illness.  His mood was stable.  His speech was

9     regular, and great in volume, with a Puerto Rican

10    accent but coherent English."

11           INTERPRETER:  When a person has a problem

12    with the language, they need an interpreter.

13           THE COURT:  I repeat.  Dr. Sokolov

14    found --

15           INTERPRETER:  In general.

16           THE COURT:  -- "He speaks with a Puerto

17    Rican accent but coherent English.  "He was quite"

18    -- on Page 7, "He was quite verbose and open in

19    talking about his background and family situation.

20    He understood all of my questions, but sometimes

21    was difficult to understand in responses due to

22    his Puerto Rican accent.  This occasioned my

23    asking him to repeat his answers, which he did."

24           So it's the accent that made it difficult

25    on occasion for Dr. Sokolov to understand you,

1   Mr. Cedeno, not the lack of fluency in the English

2   language.

3           So if you have no further questions for

4   Dr. Noffsinger at this time.

5           Dr. Noffsinger, is there anything that you

6   would like to state with respect to your report or

7   your interview with the Defendant?

8           THE WITNESS:  Nothing in addition to my

9   report, Your Honor.  I would just repeat that, in

10  my opinion, he does not have a present mental

11  condition.  That's based on a lack of prior

12  history of mental illness, the evaluations done at

13  Northcoast, Twin Valley, and also based on my

14  observations of him in our limited interview on

15  August 1st.

16          THE COURT:  Okay.

17          INTERPRETER:  How you can give an

18  evaluation of a person that was only with you for

19  15 minutes and then have an evaluation?

20          THE WITNESS:  As I mentioned, I did not do

21  a thorough evaluation based on your decision to

22  not cooperate.  You told me several times that you

23  were going to exert your right to not cooperate.

24          So, again, my evaluation is limited to

25  what's in your records, and then my direct

1   observations of you, but I am able to say with

2   reasonable medical certainty that you do not have

3   a present mental condition that would impair you

4   from understanding the nature and objectives of

5   the court proceedings or in assisting in your

6   defense, or to impair you from intelligently,

7   knowingly, and voluntarily waiving your right to

8   counsel.

9          THE COURT:  Mr. Cedeno, do you understand

10  that the report of Dr. Noffsinger concludes that

11  you are competent to be tried, and that you are

12  competent to waive your right to counsel, which is

13  exactly what you have been insisting upon in this

14  case?

15         If you do not agree with that, what you

16  are saying is that you are not competent to go to

17  trial or that you are not competent to represent

18  yourself.  Is that your position?

19         THE DEFENDANT:  My position is I will

20  check this statement he make, because I never give

21  a consent.  I never said nothing to him to do any

22  type of exam, which especially when you don't have

23  a translator or ask any question or explain what

24  is this, I don't understand.

25         THE COURT:  Mr. Cedeno, those issues have

1    already been decided.  If you do not consent, then

2    it's for the Court to determine whether to accept

3    Dr. Noffsinger's report and evaluation.

4         Having had experience with

5    Dr. Noffsinger in a number of cases, and based

6    upon the stipulation of the State, I will concur

7    and accept his finding that you are competent to

8    assist in your defense.

9         As for your competence to waive your right

10   to counsel, there are two decisions of the United

11   States Supreme Court.  In one, the Court held that

12   a Defendant may waive his right to counsel in

13   order to enter a plea of guilty.

14        In another decision of the United States

15   Supreme Court, that Court held that the Trial

16   Court must determine whether a Defendant is

17   competent to waive counsel and act as his own

18   attorney in the trial of his case.

19        That is a decision that I will have to

20   make based upon the findings of Dr. Noffsinger,

21   Dr. Beaman, Dr. Sokolov, and any other reports

22   that we have, plus my own evaluation of both your

23   performance in Court and the procedural issues

24   that may be involved in this case.

25        That is a determination that I will make

1    and will put into a journal entry after the close

2    of these proceedings.

3           I believe, Dr. Noffsinger, if you would

4    like to step down, unless there's something else

5    you wish to state for the record.

6           THE WITNESS:  No.

7           THE COURT:  Thank you.  I apologize for

8    you having to wait around all morning.  As I noted

9    off the record, if this were a theatrical

10   production, we would never get to watch Hamlet.

11          THE WITNESS:  Thank you, Judge.

12          THE COURT:  Ms. Goldberg, is there

13   anything that you wish to say?

14          MS. GOLDBERG:  Nothing further, Your

15   Honor.

16          THE COURT:  Thank you for appearing here

17   on behalf of the State.

18          THE DEFENDANT:  Everything that's

19   happened, all this, the one doctor that never

20   signed the paper, it's void, and another is never

21   signed.

22          THE COURT:  Are you looking at the Spanish

23   translation?

24          INTERPRETER:  There's no paper that he

25   signed here.

196

1              THE COURT:  Is that the English or the

2    Spanish?

3              INTERPRETER:  The English.

4              THE COURT:  Which report are you referring

5    to?

6              INTERPRETER:  Page 7, on the last page.

7              THE COURT:  Okay.  That's David --

8              INTERPRETER:  On the last page.

9              THE COURT:  Just a moment.  I believe

10    since that is a faxed copy, I'm not sure if an

11    original would have a signature.  Every one of

12    these reports, however, Mr. Cedeno, confirms that

13    you are competent to stand trial.

14              I don't understand why this should be an

15    issue of whether there is a signature here or not.

16    But, again, based upon the findings that we have,

17    I will find that you are competent to stand trial.

18    I will make a determination as to whether you are

19    competent to waive counsel and try this case

20    yourself, or whether we need to have competent

21    counsel represent you, not simply assist you, but

22    represent you.  If you are permitted to waive

23    counsel and try this yourself, I will appoint

24    standby counsel to assist you.

25              By the way, I do have copies of some of

the other reports for you in Spanish, if you would like them.

INTERPRETER:  That's my language.  That's my point, that we're not talking that language.

THE COURT:  Okay.  Twin Valley -- for some reason this report, the last page says Page 5 of 6.  So it appears that there may be a missing last page, and I don't know what happened, it doesn't appear to be in English or Spanish.  It may just be an oversight and I just noticed it today.

INTERPRETER:  If it's incomplete, I don't want it.

THE COURT:  That's fine.  You don't have to have it.  Okay, we are done.  We are done.  You can take him downstairs.

- - -

(Thereupon, proceedings were adjourned.)

- - -

1    MONDAY MORNING SESSION, DECEMBER 2ND, 2013

2                   THE COURT:  We next have criminal

3    case number 564978 once again.  That is state

4    versus Noel Cedeno.  The matter was set for

5    trial this morning.  There has been some

6    activity.  And before we address any of that,

7    my bailiff contacted the agency for an

8    interpreter certified by the state to

9    translate between English and Spanish.  It's

10   my understanding that although you are

11   present, sir, you are not presently certified

12   by the state.

13                   INTERPRETER:  No, I'm not.

14                   THE COURT:  That puts us into a bind

15   because the Supreme Court does dictate that we

16   must have a state certified interpreter for

17   all proceedings.

18                   THE DEFENDANT:  I check this

19   interpreter week before 6-7-13, we had him

20   before, but translator, the English Spanish,

21   the doctor we saw -- by 6-7-2013, we had the

22   report for Twin Valley report.  From the

23   doctor.  He was working this day.  And I told

24   him in the court, we check to get another

25   translator because I don't understand him, the

Spanish.

THE COURT:  Mr. Cedeno, let me
interrupt you.  Because we do not have a
certified interpreter, we cannot proceed
further today.  My bailiff is not here.  She
is sick and will be in, I understand, later.
So we are going to have to postpone the trial
and any hearings until we can have a certified
interpreter present to assist you.  So I
regret the situation.  I don't apologize
because this was something we could not
control.  It's the agency's fault and I will
see to it that that is brought to attention of
proper authorities.

Now, before we adjourn, Miss Ducoff,
I believe you had something you wanted to
state.

MS. DUCOFF:  Yes, your Honor.

On November 26th, 2013 I filed two
motions.  One is captioned state's notice of
use of prior conviction.

THE DEFENDANT:  Excuse me.  I don't
understand this man.  How I know --

THE COURT:  Do you understand her
English?

             THE DEFENDANT:  A little bit what I
understand.  But I need somebody to speak
perfect in Spanish to understand.

             THE COURT:  Okay.  We will stop right
now.  When we can get a certified interpreter
we will resume.  That may be today.  It may be
later this week.  At the first time that we
can have somebody, we will have an
interpreter, okay?

             THE DEFENDANT:  Thank you.

             THE COURT:  Okay.

             Bueno.

                    -  -  -  -

             (Proceedings adjourned.)

                    -  -  -  -

TUESDAY MORNING SESSION, DECEMBER 3, 2013

THE COURT:  For the record, we once again have before us criminal case number 564978, the State versus Noel Cedeno, which was set for trial yesterday.  Proceedings had to be stopped because we did not have a certified court interpreter, and we do now.

Will you raise your right hand?  Do you swear or affirm that the translation you will be giving between the English and Spanish languages will be true and accurate to the best of your ability?

THE INTERPRETER:  Yes.  I am Ana Gallardo, for the record.

THE COURT:  Again, for the record you are state certified?

THE INTERPRETER:  Yes, Your Honor, I am.

THE COURT:  I knew that.  I just wanted to make sure that the record confirms that.

Now, we have some matters that have been brought to my attention that have developed recently.  The defendant filed on November 12th what he calls an affidavit of

1    fact and writ of discovery, in which Mr.

2    Cedeno, I will quote here, "Respectfully move

3    this court to demand plaintiff" -- that is the

4    State of Ohio -- "to comply to the above

5    demands for criminal rule 16 discovery."

6            Now, previously, Mr. Cedeno, you

7    refused to accept discovery when it was

8    offered by the State.  If I order Ms. Ducoff

9    to give you the discovery packet that she

10   offered before, are you prepared to accept

11   that?

12   (THROUGH THE INTERPRETER)

13           THE DEFENDANT:  I object to receive

14   those documents because I cannot receive

15   documents that are incomplete for my defense.

16           THE COURT:  Let me explain to you,

17   the way we handle disputes over discovery is

18   for the State to present everything that they

19   believe complies with the rule.

20           If there are items that the

21   prosecutor believes either may not or can

22   be -- may not be disclosed or may be withheld,

23   then I make a decision as to whether the

24   State's position is correct or not.  If I then

25   order the State to turn over those materials,

1    they will do so.

2         But as to the items that they have

3    offered, are you willing to accept those?

4         THE INTERPRETER:  No, I don't accept

5    any documents that are incomplete.

6         THE COURT:  How do you know that the

7    documents are not complete, if you have not

8    reviewed them?

9         THE INTERPRETER:  Because the

10   prosecutor mentioned very clear and in court

11   that the motion for discovery was going to be

12   incomplete.  And then you asked the

13   prosecutor, "Are you denying these documents

14   because he's representing himself?"  And she

15   said, "Yes."  "And if there was a private

16   attorney, would you give those documents to

17   that attorney?"  And she said, "Yes," when the

18   judge asked her.

19        THE COURT:  Ms. Ducoff, the documents

20   that you have stated could not be turned over

21   to the defendant if he's representing himself,

22   would you describe for us what those

23   documents, for the record, I should say, what

24   those documents are and why, what your basis

25   is for not disclosing those to the defendant

1    himself?

2           MS. DUCOFF:  I would be happy to,

3    Your Honor.  I don't have those records with

4    me today because I didn't think that was the

5    purpose of today's hearing.  Since the

6    defendant had requested discovery, I thought I

7    was going to give him the packet again once

8    it's prepared again.

9           But I recall that the rule, the rules

10   of discovery, do not permit a pro se defendant

11   from having certain social service records and

12   certain medical records.

13          THE COURT:  If I may fill in.  Based

14   on my recollection from our discussions

15   earlier this year, Criminal Rule 16(E)(1), "In

16   cases of sexual assault, defense counsel, or

17   the agents or employees of defense counsel,

18   shall have the right to inspect photographs,

19   results of physical or mental examinations, or

20   hospital reports, related to the indictment,

21   information, or complaint . . .  Upon motion

22   by defendant, copies of the photographs,

23   results of physical or mental examinations, or

24   hospital reports, shall be provided to

25   defendant's expert under seal and under

1    protection from unauthorized dissemination

2    pursuant to protective order."

3            In rule 16(E)(2), "In cases involving

4    a victim of a sexually oriented offense, less

5    than 13 years of age, the court, for good

6    cause shown, may order the child's statement

7    be provided, under seal and pursuant to

8    protective order from unauthorized

9    dissemination, to defense counsel and the

10   defendant's expert.  Notwithstanding any

11   provision to the contrary, counsel for the

12   defendant shall be permitted to discuss the

13   content of the statement with the expert."

14           MS. DUCOFF:  I think you also have to

15   read 16(C), that there are some materials that

16   are counsel only and cannot be shown to the

17   defendant.  I think the rules you have cited

18   also clearly talk about defense counsel.  And

19   that's been one of the reasons that I believe

20   this court has been encouraging, or maybe

21   encouraging is not the right word, but trying

22   to explain to the defendant that going pro se

23   has its perils, that he cannot get his hands

24   on everything that a lawyer would be able to

25   see.

1           THE COURT:  Now, Mr. Cedeno, if you

2    want to challenge the prosecutor's position,

3    what I think you should be doing is accept the

4    discovery that they are providing.  You still

5    can ask for more discovery.  But if you go

6    forward to trial without any discovery, I am

7    concerned, Mr. Cedeno, that you will be

8    hurting yourself.  I want this to be a fair

9    trial.  I want you to have the advantage of

10   having everything that we can provide legally

11   to you.

12          THE INTERPRETER:  Which of the law

13   are you talking about that prohibit you to

14   give me all the documents?

15          THE COURT:  The rule, Rule 16

16   provides -- refers entirely to providing

17   discovery to the defendant's counsel.

18          THE INTERPRETER:  Which one is?

19          THE COURT:  Rule 16(C) and 16(E).

20   They refer specifically to defense counsel.

21   Not to the defendant.

22          THE INTERPRETER:  Okay.  You ask the

23   prosecutor previously and I also ask the

24   prosecutor.  I asked the prosecutor which

25   records you have about me, what evidence.  You

1    don't have any medical record.  You don't have

2    any DNA.  You only have persons that are

3    talking about me.  Which medical record are

4    you talking about because you just testified

5    that you didn't have that evidence?

6          MS. DUCOFF:  There is no DNA evidence

7    in this case.  I think the defendant needs to

8    understand that there is no requirement under

9    the law that DNA evidence be presented at

10   trial in order to find him guilty of a sexual

11   assault.

12         THE COURT:  Was this --

13         MS. DUCOFF:  This child did go to

14   MetroHealth after she disclosed.  At which

15   time, her mother shared with the clinician

16   there that her child had been assaulted.  I do

17   not recall that there is any interview of the

18   child at that time at the hospital.  But the

19   mother did alert the clinician.

20         THE DEFENDANT:  I object to this

21   because I got a --

22         THE COURT:  Mr. Cedeno, wait, wait.

23   Listen to me.  If you have something to say, I

24   think we're all better off if you say it in

25   Spanish and let Ms. Gallardo translate it for

1    you because sometimes we have trouble

2    understanding your English, as you have

3    trouble understanding my Spanish.

4            THE INTERPRETER:  I'm sorry, you are

5    right.

6            THE COURT:  Okay.  Go ahead, talk to

7    her and --

8            THE INTERPRETER:  I can facilitate

9    you the testimony that this girl gave to the

10   detectives.  First of all, you know, the

11   person that testified, the paper has no

12   signature, no seal, no evidence of who did

13   this paper.  Well, you know, you talking about

14   some paper, but in a case like this, you can't

15   say I think that this happened.  It either

16   happened or it did not.  Do they have to do

17   another interview of her?  Because the

18   testimony that she has given previously is not

19   complete.  Remember, this is -- we're talking

20   about a girl that is in high school and she

21   knows what she's talking about.  The same goes

22   to the prosecutor.

23           THE COURT:  Mr. Cedeno, the discovery

24   materials that the State is offering in

25   discovery is not testimony.  The reason that

1      Ms. Ducoff is required to give you that

2      discovery is to allow you to read that and use

3      that in defending your case if a witness says

4      something in court that is different from what

5      that witness said in a previous statement, you

6      can cross-examine the witness based upon that.

7      But normally, Ms. Ducoff could not use that

8      statement when the witness, herself, is ready

9      to testify.

10            Now, with respect to the DNA,

11      Ms. Ducoff has said there is no DNA evidence.

12      Keep in mind that DNA evidence is very useful

13      if somebody goes to the doctor the next day.

14      But when the victim or alleged victim goes to

15      the hospital months or years later, there is

16      no DNA.

17            THE DEFENDANT:  But she say I go to

18      the hospital and they say ain't nobody listen

19      to me.  That's what she say.  Ain't nobody

20      take care of me.  Black and white that's the

21      testimony.  Any young girl that go to the

22      hospital, they're going to call their

23      mother --

24            THE COURT:  Mr. Cedeno, first of all,

25      you're speaking to me in English.  Second of

```
 1        all, this is not the issue.  The issue is
 2        whether we give you the discovery that the law
 3        says the prosecutor has to give you.  If you
 4        decide you don't want that, it's your
 5        decision.  Okay.  Now, let's move on.
 6              Because you've already said that you
 7        will not accept that discovery that Ms. Ducoff
 8        has offered you, if you decide later that you
 9        want to accept that, we'll deal with it then.
10              Now, if you -- you have not filed any
11        motion.
12              THE INTERPRETER:  I have a motion
13        here that I --
14              THE COURT:  Wait a second.  Let me
15        finish.
16              THE DEFENDANT:  Okay.
17              THE COURT:  You have not filed any
18        motion to tell us what discovery you think you
19        should have that has not been provided.  If
20        you do that, if you file that kind of motion,
21        Ms. Ducoff will respond and I will make a
22        ruling.  But right now, you have asked me to
23        order discovery.  I ordered Ms. Ducoff to
24        provide that discovery.  You have told us that
25        you will not accept it because you believe
```

1   it's incomplete.  That's where we are on that

2   right now.

3          The other issue that I want to --

4   there are two other issues I want to address.

5   Ms. Ducoff filed a motion recently asking me

6   to require that you have an attorney represent

7   you.  When did you file that, Ms. Ducoff.

8          MS. DUCOFF:  November 26th, Your

9   Honor.

10          THE COURT:  Have you received a copy

11   of that?

12          THE INTERPRETER:  I haven't received

13   anything.  I think the one she was supposed to

14   give me a copy yesterday, but they didn't have

15   an interpreter.

16          THE COURT:  If you would like to hand

17   that to Mr. Cedeno.

18          MS. DUCOFF:  May the record reflect

19   that the defendant is being provided with the

20   copy that I filed with the court.  May I also

21   add to the record that I am happy to have this

22   opportunity to personally give it to him

23   because when I filed on September 19th of this

24   year, the State's objection to permitting the

25   defendant to waive a certified interpreter,

1    that was mailed to him at the Cuyahoga County

2    jail and that came back returned to sender as

3    refused.

4              THE COURT:  Go ahead.

5              MS. DUCOFF:  I have the second

6    motion, Your Honor, that was also filed on

7    November 26th, 2013, captioned "State's Notice

8    of Use of Prior Conviction."  And I would like

9    the opportunity to provide this also to the

10   defendant.

11             THE COURT:  Okay.

12             MS. DUCOFF:  May the record please

13   reflect that I'm handing to the defendant that

14   second motion.  Thank you, Your Honor.

15             THE COURT:  Okay.

16             THE INTERPRETER:  I need some time to

17   read this.  I need to read it in Spanish.

18             THE COURT:  I'm sorry.

19             THE INTERPRETER:  I need some time so

20   I can read this in Spanish.

21             THE COURT:  Okay.  Now, when you say

22   you need to read that in Spanish --

23             THE INTERPRETER:  Sometimes you have

24   given me these papers in Spanish.

25             THE COURT:  I did order evaluation

1    reports to be translated into Spanish for you.

2                THE INTERPRETER:  I'm asking you can

3    you do this translation also to order in

4    Spanish.

5                THE COURT:  Mr. Gallardo, are you

6    prepared to do this?

7                THE INTERPRETER:  Yes, Your Honor.

8                THE COURT:  How long would it take

9    you to review those?

10               THE INTERPRETER:  Your Honor, I need

11   to know how many pages.

12               THE COURT:  The motion or you have

13   them there?

14               THE INTERPRETER:  Yes, I'm checking

15   it.  Your Honor, the interpreter would say

16   this is approximately 15 pages.  I don't know

17   how soon you want them, Your Honor.  I don't

18   know, maybe by next week.

19               THE COURT:  Would a week from today --

20               THE INTERPRETER:  That would be fine,

21   Your Honor.

22   (THROUGH THE INTERPRETER)

23               THE DEFENDANT:  Are they going to

24   send it by mail or give it to me, personally?

25               THE COURT:  Well, you will -- can you

1    provide that directly to Mr. -- tell you what.

2    Do your translation.  Can you file that with

3    the clerk's office?

4          THE INTERPRETER:  Yes, Your Honor.

5          THE COURT:  And then personally

6    sometimes we have trouble with the clerk's

7    office not sending things quickly to us.  If

8    you file it with the clerk's office, bring it

9    to my attention, and we will make sure that it

10    gets to Mr. Cedeno personally.  Not by mail.

11    We will have it delivered to you, personally.

12          THE INTERPRETER:  Your Honor, may I?

13    This is the interpreter saying I know a way to

14    do it faster.  I can send them via by mail,

15    e-mail them.  So I can send it personal, so

16    the court can print that and give it directly

17    to the defendant.

18          THE COURT:  I think we would need to

19    have that filed with the clerk's office.

20          THE INTERPRETER:  Okay, Your Honor,

21    no problem.

22          THE COURT:  Just for the purpose of

23    having a guarantee on the record that it was

24    done and it was submitted.

25          THE INTERPRETER:  Yes, Your Honor.

1   (THROUGH THE INTERPRETER)

2             THE DEFENDANT:  I have some motions

3       here that I would submit to you and the

4       prosecutor.

5             THE COURT:  Okay.  Have they been

6       filed?

7             THE INTERPRETER:  No.  I have to

8       deliver it by hand because I don't have access

9       for a computer.

10            THE COURT:  Can you present them?

11            THE INTERPRETER:  I also want to read

12      it for the record.

13            THE COURT:  Yes.  Okay.

14            THE INTERPRETER:  Your Honor, the

15      defendant is asking me to read the motion.

16      Should I read it or --

17            THE COURT:  There is no reason to

18      read the motion since --

19            THE DEFENDANT:  Charges the defendant

20      to Ohio Revised Code 29.73(B).  I want it read

21      for the record.

22            THE COURT:  We will file this with

23      the clerk's office.  We don't need to read it

24      into the record.  It will be -- I'll have this

25      filed with the court.  Okay.

1          THE INTERPRETER:  I also have a

2     violation of warning for the prosecutor for

3     denying rights and the action of the criminal

4     law.  I want to give it to her in person.  I

5     think she received one previously.

6          THE DEFENDANT:  Your Honor, I would

7     like to read the Ohio Revised Code 2945.73(B)

8     for the record.

9          THE COURT:  There is no reason to

10    read that in open court.

11         THE DEFENDANT:  Violates or violation

12    of my speedy trial.

13         THE COURT:  I have the paper.

14    Ms. Ducoff will respond to it.  And I will

15    make a ruling.  I will make a decision.

16         THE INTERPRETER:  Are you going to do

17    it in court or send a decision by mail?

18         THE COURT:  I don't know.  If I do it

19    in court, you will be brought up, of course.

20    If I do it by mail, I will have it sent or

21    delivered to you.

22         So, Mr. Cedeno, I would suggest that

23    when you receive some mail, whether it's from

24    me or from the prosecutor, that you open that

25    and not refuse to accept mail because it might

1  be something important that you will have to

2  respond to.  Okay?

3          THE INTERPRETER:  The reason I have

4  rejected some mail before is just that I'm

5  afraid, I'm cautious, I don't want to sign

6  something that is incomplete.  I am just being

7  cautious.

8          THE COURT:  Opening a letter is not

9  the same thing as signing or agreeing to

10  anything.  But if you don't receive -- if you

11  choose to refuse to accept an order of the

12  court or a motion, you may be hurting

13  yourself.  So I'm just suggesting that in the

14  future you should not refuse to accept mail.

15          THE INTERPRETER:  Well, in the

16  prison, they ask you to sign first before you

17  open the letter.

18          THE COURT:  Signing only means that

19  you received it.  This's all that it means.

20  Doesn't mean that you're agreeing to whatever

21  is inside.  Okay.

22          I think we are now done for today.

23  Mr. Cedeno, you will receive from Ms. Gallardo

24  the translation by next Tuesday.  I would

25  expect a response by you within one week.  So

1    that would be December 17th.  We will set a

2    hearing -- can we aim for the 18th or 19th?

3                MS. DUCOFF:  That's fine with me,

4    Your Honor.

5                THE COURT:  Ms. Ducoff, you will also

6    have an opportunity to respond to the

7    defendant's demand to discharge --

8                MS. DUCOFF:  Yes.

9                THE COURT:  -- that he just provided

10   you.  Okay.

11               MS. DUCOFF:  What is -- Your Honor,

12   what is the status of the affidavit of

13   facts/writ of discovery; is it being withdrawn

14   or is the court going to make a journal entry

15   that states it's moot because the defendant

16   has indicated he doesn't want discovery?

17               THE COURT:  Just a moment.  Just a

18   few moments here.

19               THE INTERPRETER:  Your Honor, the

20   defendant has asked me to read some part of

21   the motion.

22   (THROUGH THE INTERPRETER)

23               THE DEFENDANT:  I want to know what

24   it says here.

25               THE COURT:  Which motion are we

1          referring to?

2                    THE INTERPRETER:  State's motion in

3          opposition to defendant's request to proceed

4          pro se.

5                    THE COURT:  Yes.

6                    THE INTERPRETER:  I just want to know

7          what it says here.

8                    THE COURT:  Where is "here"?

9                    THE INTERPRETER:  In the section 2,

10         "The defendant lacks the mental capacity to

11         represent himself."

12                    THE COURT:  Okay.

13                    THE INTERPRETER:  The interpreter

14         just interpreted that section, Your Honor,

15         that word that he wanted.

16                    THE COURT:  Oh.

17                    THE INTERPRETER:  But I have a

18         question, I have seen three doctors and they

19         have said that I am competent to represent

20         myself.

21                    THE COURT:  Perhaps, Mr. Cedeno, when

22         you read the entire motion as will be

23         translated, you will understand what it is

24         that Ms. Ducoff is asserting here.  I'm not

25         going to make a ruling on any of this now.  I

1      want you to have an opportunity to look at it

2      and respond appropriately.

3              THE INTERPRETER:  Okay.

4              THE COURT:  Ms. Ducoff apparently is

5      claiming that there are reasons to overrule

6      the findings of the psychiatrist and

7      psychologist.  I want you to have an

8      opportunity to respond to that and I'll make

9      my order accordingly.  Okay.

10              Off the record.

11              (Thereupon, a discussion was had off

12              the record.)

13              THE COURT:  Let's make that hearing

14      on December 18th at 10 o'clock in the morning.

15              All right.  We will see you then in a

16      couple weeks.

17              THE INTERPRETER:  December 18th;

18      right?

19              THE COURT:  December 18th at

20      10 o'clock in the morning.

21              THE INTERPRETER:  Before that, I will

22      have already the copies in Spanish; right?

23              THE COURT:  You will have those.  She

24      said she would have them by the 10th, so you

25      will have just over one week to review that

1    and respond.

2              THE INTERPRETER:  So I'm going to

3    receive it by mail?

4              THE COURT:  We will have it sent to

5    you probably directly in the jail, rather than

6    just by mail.

7              THE INTERPRETER:  Okay.

8              THE COURT:  I hope to do that because

9    that will be quicker.  Okay.

10             THE INTERPRETER:  Okay.  Thank you,

11   Your Honor.

12   (Thereupon, proceedings were adjourned.)

13                    - - - -

WEDNESDAY MORNING SESSION, DECEMBER 18, 2013

                    (Thereupon, proceedings were had in

                    open court as follows:)

                    THE COURT:          Okay.  We have

before the Court once again -- I guess the

current iteration is 564978.  Is that right,

Miss Ducoff?

                    MS. DUCOFF:          564978, correct.

                    THE COURT:          The State versus

Noel Cedeno.  A few matters that have to be

addressed.  First, there is the defendant's

demand, which I will say is his motion to

discharge pursuant to Revised Code Section

2945.73(B), that being want of speedy trial.

I have received that motion, I have reviewed

it, and I'm not prepared to make a ruling at

this point.

                    Ms. Ducoff, I believe you filed a

motion for leave, for extension of time to

respond.

                    MS. DUCOFF:          Yes, Your Honor.

At the last pretrial I indicated that I could

respond to that motion within a date certain.

I believe you asked that it be filed by 12-10,

and the responding to the motion required

```
 1          additional information from this Court.
 2                    THE COURT:          Let me interrupt
 3          you for a moment.  We have to swear in the
 4          interpreter.  I believe that has to be done
 5          each time at each hearing.
 6                    Ms. Gallardo, raise your right hand.
 7          Do you swear or affirm that the interpretation
 8          you will be giving between the English and
 9          Spanish languages will be true and accurate to
10          the best of your ability?
11                    THE INTERPRETER:     I do, Your
12          Honor.
13                    THE COURT:          Once again for
14          the record, you are state certified, so we may
15          presume that that ability is more than
16          adequate.
17                    THE INTERPRETER:     Yes, Your Honor.
18                    THE COURT:          Okay.  Gracias.
19          Okay.  Once again --
20                    THE INTERPRETER:     You speak
21          Spanish.
22                    THE COURT:          I know a few
23          words.
24                    THE DEFENDANT:       Poquito?
25                    THE COURT:          Poquito.  I know
```

1    how to order mas cerveza, por favor.

2              THE DEFENDANT:        Frijole.

3              THE COURT:        Si.  Sorry about

4    that, Sue.  But that is about the limit of my

5    Spanish.  I understand a little more than I

6    speak, but we will be conducting this hearing

7    in English since my Spanish is not adequate,

8    and I suppose that Ms. Ducoff's is even worse.

9              MS. DUCOFF:        You are

10   absolutely correct.

11             THE COURT:        And the court

12   reporter's software will not allow her to take

13   down proceedings other than in English.

14             Okay.  So, Ms. Ducoff, you were in

15   the process of explaining why you were unable

16   to respond by the 10th.

17             MS. DUCOFF:        Yes, Your Honor.

18   There are some additional docket entries that

19   need to be placed on the record, on the

20   docket, and I have written the motion up until

21   that period of time where docket entries need

22   to be delineated.  So once those are done,

23   I'll be able to finish the motion -- the

24   response -- in a very timely basis.

25             THE COURT:        Okay.  Since the

1  problem is at least in part the result of the

2  Court's own failure to journalize all the

3  issues completely, fully, I have no choice but

4  to allow you some additional time, and we will

5  try our best to get that accomplished by the

6  end of this week.  If we do that, about how

7  long do you expect, given the holidays coming

8  up?

9        MS. DUCOFF:      I will be away

10  next week and the 30th so --

11        THE COURT:      Can we say

12  then --

13        MS. DUCOFF:      I could probably

14  have it done the week of January 6th.

15        THE COURT:      Can we say

16  January 6th itself?

17        MS. DUCOFF:      Maybe January

18  8th, just since I don't know when I come back

19  what I'm coming back to.  Just maybe a couple

20  more days could help.

21        THE COURT:      State's brief in

22  opposition to defendant's motion to discharge

23  due January 8th, 2014.

24        MS. DUCOFF:      Thank you, Your

25  Honor.

1          THE COURT:          Mr. Cedeno, you

2     were about to say something?

3          THE INTERPRETER:     Yes.

4          THE COURT:          Yes, sir?

5          THE INTERPRETER:     I received the

6     prosecutor's motion and what I read in the

7     charges does nothing to do -- it doesn't have

8     to do with me.  The time that the Judge gave

9     her to answer I didn't receive anything by

10    writing, and now I want to do some oral

11    arguments and in front of the Judge the

12    interpreter can read it.

13         THE COURT:          This is on the

14    State's request to extend time to re-answer

15    your brief, your motion?

16         THE INTERPRETER:     Yes.  It's in

17    here, yes.

18         THE COURT:          Miss Ducoff,

19    Mr. Cedeno says that he did not receive your

20    motion.

21         THE INTERPRETER:     The answer.

22         THE COURT:          The answer.

23         THE INTERPRETER:     Oh, the answer?

24         MS. DUCOFF:          I thought you

25    just explained why I didn't do an answer.

1          THE INTERPRETER:      Um-hum.

2          THE COURT:            Okay.  The State

3    has not answered because there apparently are

4    some missing journal entries on the docket.

5    My bailiff is attempting to reconstruct that

6    so that the docket is complete and accurate,

7    and that is why we are giving the State until

8    January 8th to file its brief opposing your

9    motion to discharge for want of speedy trial.

10         THE INTERPRETER:      In those parts

11   that I ask to dismiss the charges I also

12   through the document attached the document,

13   and it says the time that I have been here,

14   all the time that I have been here till the

15   date that was supposed to be the trial.

16         THE COURT:            Correct.

17         THE INTERPRETER:      And also, you

18   know, the violation of the Section

19   2945.71(C)(2), 2145 --

20         THE COURT:            Wait a minute.

21   Wait a minute.  2945.71(C)(2).

22         THE INTERPRETER:      Yes.

23         THE COURT:            Right.

24         THE INTERPRETER:      Besides that,

25   can we read this and put it on the record?

1        THE COURT:        I think not at

2   this time.  We will wait until the State has

3   an opportunity to respond.  Mr. Cedeno, as I'm

4   sure you are aware, that time may be extended,

5   as is set forth in 2945.72.  For example, and

6   just taking one example from this, 2945.72(B)

7   extends the time for any period during which

8   the accused is mentally incompetent to stand

9   trial, or during which his mental competence

10  to stand trial is being determined, and we've

11  had several occasions when that was being

12  done, not for the purpose of delaying the

13  trial but because of very real concerns that I

14  have expressed on the record as to your

15  competence to stand trial based upon my own

16  observation of your conduct in court.  So that

17  is one example of an extension of the 270 days

18  that is possible.

19        Now, I'm giving the State an

20  opportunity to respond by January 8th and

21  we'll see what happens then, and if necessary

22  we will have oral argument or oral hearing on

23  that.

24        THE INTERPRETER:        So let me ask

25  you a question.  The prosecutor has until

1    January 8th.

2                    THE COURT:          Yes.

3                    THE INTERPRETER:    And she cannot

4    come up and tell me there is no time.

5                    THE DEFENDANT:      Enough.

6                    THE INTERPRETER:    That she doesn't

7    have enough time.

8                    THE COURT:          That's why I'm

9    giving the prosecutor until January 8th.  She

10   has stated that she will be able to respond by

11   January 8th.  We will see to it that we have

12   something, some response by then in writing or

13   by oral argument.  Okay.

14            Now, the second issue I wanted to

15   address is the motion that was filed by Ms.

16   Ducoff on November 26th which is styled

17   State's Motion in Opposition to Defendant's

18   Request to Proceed Pro Se.  Now, that motion

19   was filed in English, and I know that at our

20   last pretrial, or last hearing, I ordered that

21   a translation was to be provided to you.  That

22   was received by the Court timely, and I

23   ordered the Sheriff's Department to deliver it

24   in a sealed envelope by hand to you.

25            Did you receive that?

1      THE INTERPRETER:    Yes, I did.

2      THE COURT:    Okay.  Are you

3  prepared to -- have you written a response?

4      THE INTERPRETER:    I'm here, you

5  know, to argue about the charges for today

6  today.  I just came here for this motion.

7      MS. DUCOFF:    Which motion?

8      THE INTERPRETER:    The motion was

9  demand to discharge.

10      THE COURT:    Okay.  So you're

11  not prepared to respond to the State's motion.

12      THE INTERPRETER:    No.  I'm

13  prepared to do the discharge.

14      THE COURT:    Well, I believe

15  that I had ordered that you respond before

16  today to the State's motion.  That is why I

17  ordered a copy translated -- a translation

18  delivered to you.  Am I going to have to rule

19  on that motion without a response from you,

20  Mr. Cedeno?

21      THE INTERPRETER:    I have a few

22  things that I have in mind that I can talk

23  about.

24      THE COURT:    Okay.  If you

25  want to do that orally we can certainly do

1   that.

2              THE INTERPRETER:    This is for the

3   part of the pro se.

4              THE COURT:        Yes.

5              THE INTERPRETER:    I want that the

6   interpreter reads these paragraph that I have

7   here, all the way here, so it will be on the

8   record.

9              THE COURT:        Okay.  That was

10  written in English or in Spanish?

11             THE INTERPRETER:    In English, and

12  I can, you know, do the argument.

13             THE COURT:        So Mr. Cedeno

14  wants you to read something that he has

15  written in English.

16             THE INTERPRETER:    This is the

17  interpreter.  That's correct.

18             THE COURT:        If your role,

19  Miss Gallardo, is to act as interpreter, and

20  you're not his attorney, I believe the two

21  options would be, Mr. Cedeno, you may read

22  that yourself in English or you can have it

23  handed --

24             THE INTERPRETER:    I can try to

25  read it.

```
 1                    THE COURT:          Okay.

 2                    THE INTERPRETER:    But if you don't

 3          understand, the lady that is typing --

 4                    THE COURT:          If you want to

 5          have it given to me and I can read it.

 6                    THE INTERPRETER:    Okay.

 7                    THE COURT:          All right?

 8          That's fine.

 9                    THE INTERPRETER:    May I approach?

10                    THE COURT:          Yes, you may.

11          Thank you.  Okay.  This --

12                    THE INTERPRETER:    Just the first

13          paragraph, please.

14                    THE COURT:          The first

15          paragraph, No. 1, okay.  It is titled -- first

16          it says from Noel Cedeno.  I assume that the

17          title of that is in Spanish and basically

18          means oral argument.  Number 0250373, dated

19          12-18-13.  One, I enter a constitutional

20          objection to any attempt by the Court to

21          deny -- and that is underlined -- my

22          constitutional right to fully, with complete

23          authority of self-representation, to represent

24          my personal interest and to speak exclusively

25          on my own behalf without intervention of a
```

1     standby attorney whom simply undermines my

2     ability to grant informed consent of all

3     matters.  Excuse me.  Informed consent in all

4     matters.  I apologize.

5            All attorneys must obtain my informed

6     consent to represent me pursuant to Rule 1.4

7     and 1.2 of Ohio Rules of Practice.  I'm

8     unequivocally -- and that is double

9     underlined -- unequivocally capable of being

10    understood in only one way or, as clearly

11    demonstrated, free from uncertainty or without

12    doubt, and when used with reference to the

13    burden of proof, it implies proof of the

14    highest possible character and it imports

15    proof of the nature of mathematical certainty.

16                 THE INTERPRETER:    Okay.

17                 THE COURT:          All right.

18                 THE DEFENDANT:      Thank you.

19                 THE COURT:          Was that

20    accurate?

21                 THE INTERPRETER:    That part, yes.

22    In the other side of the paper, I also wrote

23    down the Evidence 403 and Section A, and that

24    was for the part of the --

25                 THE COURT:          Let me read that

1      into the record as well.  Mr. Cedeno cites

2      Evidence Rule 403, Exclusion of Relevant

3      Evidence on Grounds of Section A, and there's

4      an arrow there.  Prejudice, confusion or undue

5      delay.  Then it says Subsection A exclusion

6      mandatory, although relevant evidence is not

7      admissible if its probative value is

8      substantially outweighed by the danger of

9      unfair prejudice, of confusion of the issues,

10     or of misleading the jury.

11              Evidence Rule 609, Impeachment by

12     Evidence of Conviction of Section B crime.

13     Evidence of a conviction under this rule is

14     not admissible if a period of more than ten

15     years has elapsed since the date of the

16     conviction, and that last clause or last

17     phrase is underlined.

18              THE INTERPRETER:    And my

19     understanding is, and the prosecutor on the

20     bench, you know, the bench trial say to the

21     Court that they try to do the same, and they

22     say New York is one state and Ohio is another

23     state, and that was said on the bench trial

24     when she was with Scott.

25              THE DEFENDANT:    Last time when I

1　speak with Scott, he try to say something, the

2　same thing, and you told him, Scott, you

3　cannot bring the law from New York City to

4　Ohio. It's two different. Is not the same

5　thing.

6　　　　　THE COURT:　　　　　I believe from

7　my recollection there was a procedural flaw in

8　that indictment regarding the reference to the

9　New York conviction.

10　　　　　Ms. Ducoff.

11　　　　　MS. DUCOFF:　　　　　I don't have any

12　recall of what happened with the trial with

13　prosecutor Scott Zarzycki since I wasn't

14　there. I'd have to read the transcript, if

15　there's one available, to alert me as to what

16　ruling the bench made about the prior

17　conviction in that last prosecution, which is

18　case numbered 548513.

19　　　　　THE COURT:　　　　　Just one moment.

20　　　　　My reason -- I'm surprised that

21　actually I remember this so clearly. My

22　reason for not allowing the reference in the

23　previous trial, if we look on Count 1, which

24　was a charge of kidnapping, I believe the same

25　is on the remaining charges as well. Yes.

1        The notice of prior conviction reads in that

2     case:  Noel Cedeno previously was convicted of

3     or pleaded guilty to rape, and in parentheses,

4     forcible compulsion, close parentheses, and/or

5     sexual abuse, and/or rape third, parentheses,

6     victim less than 17; and Noel Cedeno, with

7     counsel, on or about the 2nd day of September,

8     1993, in the Queens County New York Supreme

9     Court, Cuyahoga County, Ohio, No. 5570-92, was

10    convicted of rape, forcible compulsion and/or

11    sexual abuse, and/or rape third, victim less

12    than 17, in violation of 130.35 and/or 130.65

13    and/or 1306.25 of the State of Ohio.  Clearly

14    that indictment was flawed.

15        With respect to the notice of prior

16    conviction -- and also the same language

17    appears in the repeat violent offender

18    specification there -- I made no finding as to

19    whether the State could offer that evidence

20    under proper indictment.  I was finding that

21    the indictment was inaccurate in that case,

22    and I reprimanded the Prosecutor's Office for

23    producing such a botched job.  One moment.

24        In this case the notice of prior

25    conviction -- I'll read that into the record.

1       As to Count 3, the notice of prior conviction

2       reads:  Noel Cedeno previously was convicted

3       of or pleaded guilty to rape of the first and

4       third degree, and sexual abuse; and Noel

5       Cedeno, with counsel, on or about the 27th day

6       of July, 1993, in the State Court of New York,

7       Queens County, New York, in Case No. 5570/92

8       was convicted of rape of the first and third

9       degree and sexual abuse in violation of New

10      York Code Sections 130.25 and 130.65 and

11      130.25 of the State of New York.  So, clearly,

12      the error that I noted in the indictment in

13      the previous case does not appear in this one.

14           I'm not making any finding right now

15      on the State's motion or their notice of

16      intent to use the previous conviction, and I'm

17      not going to make any ruling as to the notice

18      of prior conviction or repeat violent offender

19      specification in this case.  But, clearly, the

20      situation is different here from what it was

21      in the prior case, that is, Case No. 548513.

22           Okay.  So if you have any other

23      response, Mr. Cedeno, to the State's motion?

24           THE INTERPRETER:    No.

25           THE COURT:       Okay.  I will

1    make a ruling accordingly.

2              THE INTERPRETER:     One moment.  If

3    we understand this, it's very clear that Rule

4    403, Section 8, it's obvious that the person

5    that comes out and starts bringing the path

6    for another person, then they will find him

7    guilty.

8              THE COURT:          I'm sorry.  You

9    were referring to Rule 403 --

10             THE INTERPRETER:     Yes.  That's the

11   evidence.

12             THE COURT:          Well, we're not

13   there yet.  Right now we're only discussing

14   these pretrial issues.  The State was required

15   to serve its notice of intention to use the

16   prior conviction before trial, and they have

17   done so, and we can deal with that as we get

18   closer to trial.  The two issues I'm concerned

19   about right now are your motion to discharge

20   for want of a speedy trial and the State's

21   motion to require that you be represented by

22   counsel.  And your motion to discharge will be

23   heard after the State responds on January 8th,

24   on or before January 8th, and I will consider

25   your statement here.

1        Is this something that we can put in

2        the file, Mr. Cedeno, or should we have a copy

3        made?

4                THE INTERPRETER:    No.  It's on the

5        record.  That's mine.  That's my personal

6        paper.

7                THE COURT:        Could we have a

8        copy made of this to put in the file so I can

9        refer to it?

10               THE DEFENDANT:    Okay.

11               THE INTERPRETER:    Okay.

12               THE COURT:        Okay.  Good.  I

13       will do that and get your original back to

14       you.  Ronni, do you need a copy, too?

15               MS. DUCOFF:        Please.

16               THE COURT:        Okay.

17               THE INTERPRETER:    So what I

18       understand, I'm going to receive that motion,

19       the response by January 8th; is that correct?

20               THE COURT:        Yes.

21               THE INTERPRETER:    And it's going

22       to be in writing.

23               THE COURT:        Miss Ducoff.

24               MS. DUCOFF:        I'm under an

25       obligation to file it by January 8th.  I don't

1    know if it's going to be received by him on

2    January 8th.  I don't know the logistics of

3    you asking the sheriff to deliver it.

4           THE COURT:        You can have

5    your office get a copy directly to him in the

6    jail.  We know where he is.  Now, that will be

7    in English, though.

8           THE INTERPRETER:    No problem.

9           THE COURT:        You waive any

10    objection to that not being translated into

11    Spanish?

12           THE INTERPRETER:    Well, they can

13    translate that, but they have to give me that

14    -- everything before January 8th.

15           THE COURT:        Well, it will be

16    by January 8th, not before January 8th, and

17    that will be done in English, not in Spanish,

18    because in order to get a certified

19    interpreter, it would take several days to get

20    it translated.  If you need -- if we get it to

21    you in English by the 8th and you need a

22    translation, you can certainly ask me and I

23    will order that, but we won't have it as

24    quickly.

25           THE INTERPRETER:    So before

1    January 8th I will have it.

2                    THE COURT:          No.  By January

3    8th, not before.

4                    THE INTERPRETER:    So I'm going to

5    come to Court January 8th and you going to

6    give it to me here?

7                    THE COURT:          That was not my

8    intention.  I suppose we could do that on

9    January 8th.

10                   MS. DUCOFF:          Sure.

11                   THE COURT:          Let's --

12                   THE INTERPRETER:    But I think I

13   have to have it, you know, by then so I can

14   have an answer for you.

15                   THE COURT:          No.  We

16   will -- okay.  Let me -- we will get a copy to

17   you in English by January 8th.  We will set

18   this for another hearing after then so that

19   you'll have an opportunity to prepare.  It

20   might be a day or two after then.  The 8th is

21   Wednesday; am I correct?

22                   MS. DUCOFF:          Yes.

23                   THE COURT:          Either the 10th

24   or the 13th, Monday.

25                   MS. DUCOFF:          Your Honor, will

1    that be enough time for it to be translated?

2              THE COURT:           Well, he says he

3    doesn't -- it was okay for him to get that in

4    English.  If he needs to have a translation

5    we'll find out when we meet.

6              MS. DUCOFF:          Oh, I

7    misunderstood.  I thought she said he wants it

8    in English, but he wants to respond to it with

9    the help of a translator.  I thought that's

10   what I heard her say.

11             THE INTERPRETER:     I would like to

12   have it by January 8th in English.

13             THE COURT:           Okay.

14             THE INTERPRETER:     Or before then.

15             THE COURT:           Well, we can't

16   do it before then, and we will have the

17   hearing, I guess, on January 13th, and if you

18   are having a problem with the translation, we

19   can deal with that at that time.

20             THE INTERPRETER:     So now you

21   changing the date.  It's going to be January

22   13th?

23             THE COURT:           I'm not changing

24   the date.  I have always said the State is

25   ordered to respond no later than January 8th.

1          THE INTERPRETER:     Okay.

2          THE COURT:              We will have the

3    hearing -- we can't have the hearing on

4    January 8th because you need to have a chance

5    to review that.  We will meet on the 13th.

6          THE INTERPRETER:     This is

7    interpreter, Your Honor.  He's asking me to

8    write down the date and what you say right

9    now.

10          THE COURT:              Okay.

11          THE INTERPRETER:       The interpreter

12    is going to read what he wrote.  The report

13    will be ready by January 8th and the hearing

14    will be on January 13th.

15          THE COURT:              Right.

16          THE INTERPRETER:     Your Honor, he's

17    asking me to write down the report from the

18    State.

19          THE COURT:              Yes.

20          THE INTERPRETER:     So I'm just

21    going to write the word State.

22          THE COURT:              Okay.  And that

23    is to be delivered to you on January 8th.

24          MS. DUCOFF:              Could we follow

25    the procedure that was so successful the last

1    time?  Could I have it delivered to the Court

2    and the Court ask the same Sheriff's Office to

3    deliver it?

4            THE COURT:        If you get it

5    here early on the 8th.

6            MS. DUCOFF:       I just can't

7    speak for my support staff if they know how to

8    get it to him.

9            THE COURT:        Why don't you

10    try them first?

11            MS. DUCOFF:       Okay.

12            THE COURT:        I don't want

13    this to pass through more hands than

14    necessary.  For you to have somebody bring it

15    up here; give it to my bailiff, who may be

16    busy with other things; have her try to get it

17    to a deputy sheriff, who may or may not be

18    available -- we sometimes have difficulty

19    getting a deputy sheriff up here -- and then

20    have that deputy deliver it downstairs is

21    several steps.  I don't want to trust to that.

22    If your office -- they must have somebody who

23    knows how to go down to the jail and hand

24    somebody -- hand a piece of paper to the

25    authorities in the jail in an envelope to be

1    given to Mr. Cedeno.

2              MS. DUCOFF:          Your Honor, I'll

3    ask the investigators.  You are absolutely

4    right; that it might not be the secretarial

5    support.  It might be the investigator unit

6    that can serve an inmate.

7              THE COURT:          Somebody there.

8              MS. DUCOFF:          I'll find out.

9              THE COURT:          Ask Miss

10   Platten.  She'll find a way.  Okay.  All

11   right.

12             THE INTERPRETER:          I have another

13   thing here.

14             THE COURT:          Yes.

15             THE INTERPRETER:          I have something

16   that is subject to the prosecutor on the 3rd,

17   and that paper hasn't been documented on the

18   docket.

19             THE COURT:          Well, if you

20   gave it to the prosecutor.

21             THE INTERPRETER:          I already gave

22   it to her.

23             THE COURT:          Yeah, but --

24             THE INTERPRETER:          And I checked

25   the docket and they haven't put that down.

```
1            THE COURT:              Well, the

2     prosecutor doesn't docket items.

3            MS. DUCOFF:             Correct.  If I

4     recall the defendant told you at the last

5     hearing that he had some documents that he had

6     not filed, and you said just give them to the

7     prosecutor.  So he never filed them.

8            THE COURT:             Okay.

9            THE DEFENDANT:          I just filed

10    that, but we have a problem with the Clerk

11    Courts at that time, and the Clerk Courts they

12    file the affidavit, but they get nervous when

13    they saw --

14           THE COURT:              Why don't you

15    till Miss Gallardo in Spanish.

16           THE INTERPRETER:        I was trying to

17    submit on the Clerk of Courts the papers on

18    November 22nd.  My family is the one that went

19    personally and tried to submit those, and they

20    punched the date on the affidavit.  But the

21    Clerk of Courts, when they saw that on the

22    paper saying on the court of law, they got

23    very nervous and they reject the paper.  And

24    that's why I submit it here in front of the

25    Court.  And I explain to the judge and he
```

1    understood that we have some problems with the

2    Clerk of Courts, and then he took the papers

3    and put on the record.

4           THE COURT:       I took the

5    papers?

6           THE INTERPRETER:    The prosecutor,

7    she took the papers.  The only paper that you

8    took was demand for the discharge.

9           THE COURT:       Yeah.

10           THE INTERPRETER:    And this.  We

11    offer this paper to the prosecutor.  And then

12    you told me to give it to her.  And that paper

13    was then put on the record.  I have it here

14    right now in my hand.  I can give it to you.

15           THE COURT:       Miss Gallardo,

16    would you hand it to me?

17           THE INTERPRETER:    Yes.  May I

18    approach?

19           THE COURT:       Okay.  Oh.

20           THE INTERPRETER:    I also sent a

21    copy to your office.

22           THE COURT:       Yeah, I did

23    receive this in the mail and this is a

24    meaningless document.

25           THE INTERPRETER:    Meaningless?

1       THE COURT:              Meaningless.

2   Absurd.  You can do what you want with it.  I

3   am not going to order it filed.  That is of no

4   legal consequence whatsoever.  That is a

5   notice that appears to have been provided by

6   some free men organization or other group.

7   That is not a legal document.  It has nothing

8   to do with this case.  I am not going to order

9   anything done with it.  If you can --

10      THE DEFENDANT:          It's in Black

11  law dictionary, sixth edition, on the court of

12  law.

13      THE COURT:              I don't care.  I

14  don't care if it appears in the Holy Bible.

15  It is not a document that I am going to order

16  filed in this case.

17      THE INTERPRETER:        Okay.

18      THE COURT:              Okay.  I think

19  we're done for today.

20      THE INTERPRETER:        Can I have the

21  paper?

22      THE COURT:              Yes.  It's right

23  here.

24      THE INTERPRETER:        May I approach,

25  Your Honor?

```
1              THE COURT:           Yes.  All right.
2    We'll see everybody on the 13th.
3              Miss Ducoff, you will get a copy of
4    that as well to the Court, I am sure.
5              MS. DUCOFF:          Yes.
6              THE COURT:           Good.  Thank
7    you.
8              THE INTERPRETER:     At what time,
9    Your Honor?
10             THE COURT:           Shall we say
11   10:00?
12             (Thereupon, proceedings were
13             adjourned.)
14                  -  -  -  -
15
16
17
18
19
20
21
22
23
24
25
```