IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOEL CEDENO, | ) | |
| | ) | CASE NO. 1:17CV949 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| DAVID W. GRAY,[1] | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Noel Cedeno ("Petitioner" or "Cedeno") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Cedeno is detained at the Belmont Correctional

Institution, having been found guilty by the Cuyahoga County, Ohio, Court of Common Pleas,

following a bench trial, of two counts of gross sexual imposition of a child under the age of 13

and one count of rape of a child under the age of 13, each with a sexually violent predator

specification; one count of kidnapping of a child under the age of 13 with a sexual motivation

specification; and one count of attempted gross sexual imposition, all pursuant to one indictment;

and, on a second indictment relating to a different victim, one count of rape of a child under the

age of 10 with a sexually violent predator specification and kidnapping of a child under the

age of 10 with a sexual motivation specification.  Doc. 9-1, pp. 166-171.[2]  *State v. Cedeno*, Case

Nos. CR-12-564978-A, CR-13-580862-A (Cuyahoga Cty. Common Pleas Ct. filed October 14,

2014).  The trial court merged the applicable counts and sentenced Cedeno to an aggregate

---

[1]  David W. Gray is the Warden at Belmont Correctional Institution, where Cedeno is currently incarcerated. Thus,
Warden Gray is the proper party Respondent, pursuant to Federal Rule of Civil Procedure 25, because he is the
person with the ability to produce the petitioner's body before the habeas court.  *Rumsfeld v. Padilla*, 542 U.S. 426,
434-435 (2004).

[2]  Doc. page citations are to ECF Doc. page numbers.

prison term of life without parole in the first indicted case, Case No. CR-12-564978-A, to be run consecutive to an aggregate prison term of life without parole in the second indicted case, Case No. CR-13-580862-A.  Doc. 9-1, pp. 170-171.

On April 24, 2017, Cedeno filed his Petition for Writ of Habeas Corpus setting forth four grounds for relief.  Doc. 1, p. 15.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, the undersigned recommends that Cedeno's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED in part** and **DENIED in part**.[3]

### I. Factual Background

The state courts did not recite the facts that gave rise to the charges against Cedeno. Briefly, Cedeno was found guilty of sexual acts, including rape, against his step-daughter, aged under 13, and his biological daughter, aged under 10.  See, e.g., Doc. 9-6, pp. 106, 108-109, 113-114.

### II. Procedural Background

#### A.  State Trial Court

On August 10, 2012, a Cuyahoga County grand jury issued an eleven-count indictment against Cedeno for the following crimes of a sexual nature involving a victim under 13 years of age: two counts of gross sexual imposition ("GSI"), Ohio Rev. Code § 2907.05(A)(4), with sexual violent predator specifications (counts 1-2); two counts of rape, R.C. § 2907.02(A)(1)(b), with sexual violent predator specifications, repeat violent offender specifications, and notice of prior convictions (counts 3 and 5); two counts of kidnapping, R.C. § 2905.01(A)(4), with sexual motivation specifications, sexual violent predator specifications, repeat violent offender specifications, and notice of prior convictions (counts 4 and 6); one count of attempted GSI, R.C.

---

[3]  The grounds in the petition that are procedurally defaulted and not cognizable result in a dismissal; the ground in the petition that is addressed on the merits results in a denial.

§§ 2923.02, 2907.05(A)(4) (count 7); and four counts of importuning, R.C. § 2907.07(A) (counts 8-11). Doc. 9-1, pp. 7-14. Cedeno, through appointed counsel, pleaded not guilty to all the charges. Doc. 9-1, p. 15.

From August 29 to September 24, 2012, Cedeno, pre se, filed a series of pleadings complaining that his indictment was improper and/or that he had not been indicted (Doc. 9-1, p. 29-34); stating that he would not consent to a bench trial or a jury trial because the state lacked jurisdiction (Doc. 9-1, p. 22); and asserting that he would serve as second chair at his trial and rescinded his not guilty pleas (Doc. 9-1, pp. 16, 19).

On September 27, 2012, the first day set for trial, Cedeno informed the court that he was dissatisfied with his attorney, the second attorney who had been assigned to him, because, primarily, he complained that the attorney was not prolific enough in Spanish and he wanted him removed.[4] Doc. 9-2, pp. 7-24. The court allowed counsel to withdraw and appointed new counsel. Doc. 9-1, p. 42. Cedeno thereafter notified the court that he did not consent to having new counsel represent him, waived his right to counsel, and announced that he wished to represent himself. Doc. 9-1, pp. 43, 48. At a hearing on October 18, 2012, the court advised Cedeno of the risks of going to trial without counsel, Cedeno maintained that he wanted to proceed without counsel, and the court permitted counsel to withdraw. Doc. 9-1, p. 49; Doc. 9-2, pp. 25-29. The court set a date for the state to provide Cedeno with discovery. Doc. 9-2, p. 34. When Cedeno argued that he should not be subjected to a trial due to prosecutorial errors, the court informed him that declining a trial was not an option. Doc. 9-2, pp. 35-36. The state, in an abundance of caution, asked the court to consider whether Cedeno would need a referral to the psychiatric department if the court believed that he was not understanding or processing things;

---

[4] Cedeno is from Puerto Rico and speaks Spanish as his primary language. His first appointed attorney was also from Puerto Rico and spoke Spanish. Also present before the trial court for hearings was a Spanish language interpreter. See, e.g., Doc. 9-2, pp. 7, 17-19. Cedeno also frequently communicated with the trial court in English. See, e.g., Doc. 9-2, pp. 87, 167-168, 209.

the court, after conferring with Cedeno's prior counsel, determined that Cedeno did not have a psychiatric issue but was instead being obstinate.  Doc. 9-2, pp. 30-32.

At the next hearing, Cedeno rejected the state's discovery.  Doc. 9-1, p. 50.  The court became concerned about his competency and ordered a psychiatric evaluation.  Doc. 9-1, p. 51.  Cedeno refused to cooperate with the doctor and the doctor could not form an opinion.  Doc. 9-1, p. 51.  The court ordered another evaluation at a 20-day inpatient center.  Doc. 9-1, p. 51.  Cedeno objected, arguing that the court's order violated his speedy trial and due process rights.  Doc. 9-1, p. 52.

Cedeno failed to cooperate with the examination.  Doc. 9-1, p. 58.  The examiner found him competent, explaining that Cedeno had no mental disorder and concluded that his lack of cooperation was volitional.  Doc. 9-1, p. 58.  Still concerned that Cedeno was not competent to waive his rights and to represent himself, the court ordered another 20-day hospital evaluation on January 24, 2013.  Doc. 9-1, p. 58.

The new report concluded that Cedeno was competent.  Doc. 9-1, p. 59.  But the trial court found that Cedeno's behavior was inconsistent with competency.  Doc. 9-1, pp. 59-60.  In light of these actions and Cedeno's pro se filings, the court ordered further evaluation of Cedeno's competence.  Doc. 9-1, p. 60.

Cedeno filed a request for the discovery from the state that he had previously refused.  Doc. 9-1, p. 61.  He also moved to dismiss the case due to speedy trial violations, which the court denied.  Doc. 9-1, pp. 79, 108.

On January 7, 2014, the court overruled Cedeno's request to waive counsel and represent himself and appointed the Ohio Public Defender to represent him.  Doc. 9-1, p. 109.  Thereafter, the court struck all of Cedeno's pending pro se motions and stated that it would entertain any motions filed by counsel on Cedeno's behalf.  Doc. 9-1, p. 119.

On January 6, 2014, a Cuyahoga County grand jury issued a two-count indictment against Cedeno after another victim under 10 years of age came forward, charging Cedeno with one count of rape, R.C. § 2907.02(A)(1)(b), with a sexual violent predator specification, repeat violent offender specifications, and notice of prior convictions, and one count of kidnapping, R.C. § 2905.01(A)(4), with a sexual motivation specification, a sexual violent predator specification, repeat violent offender specifications, and notice of prior convictions.  Doc. 9-1, pp. 121-122 (Case No. CR-13-580862-A).  In August 2014, the two cases were consolidated for trial without objection.  Doc. 9-1, p. 131.

Upon Cedeno's instructions, trial counsel moved to dismiss the original case on speedy trial grounds, Doc. 9-1, pp. 132-140, which the court denied, Doc. 9-1, p. 153.  Cedeno, pro se, challenged the dismissal of three earlier indictments and the indictments in the consolidated cases, claiming that they demonstrated malicious prosecution and relied on perjured testimony. Doc. 9-1, pp. 154-160.

In October 2014, Cedeno waived his right to a jury trial and the case proceeded to trial to the bench.  Doc. 9-1, p. 161.  After the close of its case, the state dismissed two counts of importuning that had been charged in the first indictment.  Doc. 9-1, p. 165.  Cedeno moved for acquittal at the close of the state's case and after his case, which the court overruled.  Doc. 9-1, pp. 164-165; *Cedeno*, 2015 WL 9460555, at *1.  The trial court found Cedeno guilty of two counts of gross sexual imposition of a child under the age of 13 and one count of rape of a child under the age of 13, all with sexually violent predator specifications; one count of kidnapping of a child under the age of 13 with a sexual motivation specification; and one count of attempted gross sexual imposition, based on the first indictment; and, on the second indictment, one count of rape of a child under the age of 10 with a sexually violent predator specification and kidnapping of a child under the age of 10 with a sexual motivation specification.  Doc. 9-1, pp.

166-171.  The trial court merged the applicable counts and sentenced Cedeno to an aggregate

prison term of life without parole in the first indicted case, CR-12-564978-A, to be run

consecutive to an aggregate prison term of life without parole in the second indicted case, CR-

13-580862-A.  Doc. 9-1, pp. 170-171.

### B.  Direct Appeal

On December 10, 2014, Cedeno, through new counsel, filed a consolidated appeal to the

Ohio Court of Appeals.  Doc. 9-1, pp. 173, 179.  He presented the following assignments of

error:

> 1.  The trial court committed error and denied Mr. Cedeno his rights under the Sixth and
> Fourteenth Amendments to the United States Constitution and under Section 10, Article I
> of the Ohio Constitution when it revoked his right to represent himself and ordered that
> he would have to be represented by counsel.
>
> 2.  The trial court committed error and denied Mr. Cedeno his rights under the Sixth and
> Fourteenth Amendments to the United States Constitution, Section 10, Article I of the
> Ohio Constitution, R.C. 2929. 19(A)(1), and Crim.R. 32(A)(1) when it granted the State's
> objection and summarily revoked his right to allocution. (Tr. 927-929).

Doc. 9-1, p. 188.  On December 24, 2015, the Court of Appeals affirmed the judgment of the

trial court.  *Cedeno*, 2015 WL 9460555; Doc. 9-1, pp. 228-245.

On February 4, 2016, Cedeno, through counsel, appealed to the Ohio Supreme Court.

Doc. 9-1, p. 246.  He raised the following propositions of law in his memorandum in support of

jurisdiction:

> 1. A trial court commits error and denies a criminal defendant the rights guaranteed him
> by the Sixth and Fourteenth Amendments when it substitutes its own view of a
> defendant's competence to represent himself at trial for the views of expert witnesses.
>
> 2. A criminal defendant's right of allocution is not merely a right to explain why a court
> should give a lesser rather than greater sentence. It is, rather, the right of the defendant to
> speak on his own behalf, and a court may not refuse allocution or cut it off simply
> because it does not present grounds to mitigate a sentence.

Doc. 9-1, p. 249.  On May 4, 2016, the Ohio Supreme Court declined jurisdiction.  Doc. 9-1, p. 291.

### C. Rule 26(B) Application for Reopening

On October 18, 2016, Cedeno, pro se, filed an untimely application to reopen his direct appeal pursuant to Rule 26(B).  Doc. 9-1, p. 292.  As cause for his delay, Cedeno asserted that his appellate counsel failed to comply with his request for records.  Doc. 9-1, p. 292.  He alleged that his appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:

1. Effective Counsel failure to Investigate and Interview for Double Jeopardy.

2. Effective Counsel failure to present to the Court the document of the Dismissal of the Allegations.

3. Effective Counsel failure to notify Office of the Prosecution of the Four Plain Errors of no Affidavit for Allegations for Indictments.

Doc. 9-1, pp. 299.  On February 3, 2017, the Ohio Court of Appeals denied Cedeno's application as untimely, finding that he had not established good cause for his late filing.  Doc. 9-1, pp. 364-368.

Cedeno did not appeal to the Ohio Supreme Court.

### F. Motion for Vacation

On September 23, 2015, while his direct appeal was pending, Cedeno, pro se, filed a motion "for the vacation by the dismissal order of the court as to dismissal by the first case of the same allegations of first dismissal."  Doc. 9-1, p. 369.  He argued that the indictments upon which he was tried should be dismissed because an earlier indictment was dismissed based on the same allegations.  Doc. 9-1, pp. 369-370.  The court denied the motion.  Doc. 9-1, p. 372.

### G. Federal Habeas Petition

On April 24, 2017, Cedeno, *pro se*, filed a Petition for a Writ of Habeas Corpus.  Doc. 1,

p. 15.  He listed the following grounds for relief:

**Ground One:** The defendant's rights were fundamentally violated when the trial court
denied his right to represent himself in clear violation of the 6th & 14th Amend. to the
U.S. Constitution.

**Supporting facts**: The defendant upon motion of the court wanted to exercise his
right to represent himself at trial. He further understood his right to counsel and waived
said right. This right to represent oneself is protected by the 6th & 14th Amendments and
the trial court erred when it denied the motion to represent himself and committed
"reversible error."

**Ground Two:** The defendant's constitutional rights to allocute at sentencing were
violated upon order of the court in violation of the U.S. Constitution 6th & 14th Amend.

**Supporting facts**: The defendant at sentencing was denied due process when the
judge committed reversible error when the judge prevented the defendant to Allocute at
sentencing. During allocution a Defendant has a fundamental right to present the court
with any information to mitigate punishment. The Defendant was clearly presenting the
court with information the Defendant felt was reasonable and necessary for the Judge to
hear prior to imposing sentence and was prevented to do so.

**Ground Three:** The Defendant was denied effective counsel at trial and on appeal, this
violates the U.S. Constitutional 6th & 14th Amendments.

**Supporting facts**: The Defendant's trial counsel failed to properly present
evidence at trial; did not properly file a motion to acquit; did not properly file a motion to
dismiss. Further, on appeal, the Defendant was denied effective counsel to properly
perfect and present the court with impactful case law and assignments of error that went
unargued.

**Ground Four:** The trial court erred when it found the Defendant guilty of the
indictments and failed to provide representation at all stages of the criminal proceedings
– including the preliminary hearing.

**Supporting facts:** The Defendant was indicted on 5 separate case numbers
stemming from a continuous alleged criminal acts, upon presentation of evidence that
Defendant was incarcerated during the alleged time the prosecutor moved to dismiss 3 of
the 5 cases but allowed the other two to proceed, despite the fact that clearly the alleged
victims fabricated the acts, dates and times of the crime to bring false allegations for the
Defendant to answer to. The Judge did not provide representation at the preliminary
hearing and arraignment.

Doc. 1, pp. 5-10. Respondent filed a Return of Writ (Doc. 9) and Cedeno filed a Traverse (Doc. 11), an Appendix Attachment Exhibit A (Doc. 12) and a Corrected Exhibit A (Doc. 13).[5]

### III. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation

---

[5] In his filing docketed as Doc. 13, Cedeno explains that the document he previously filed (Doc. 12) was in error.

requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"

*Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals

and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

## IV. Analysis

### A. Ground One fails on the merits

In Ground One, Cedeno argues that he was denied his right to represent himself at trial in violation of the Sixth Amendment.  Doc. 1, p. 5. The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense.  U.S. Const. Amend. VI.  A defendant may proceed without counsel if he voluntarily and intelligently waives his right to counsel.  *Faretta v. California*, 422 U.S. 806, 807 (1975).  For a waiver of the right to counsel

12

and invocation of the right of self-representation to be valid, two conditions must be satisfied. First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id*. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Second, a defendant's self-representation request must be made clearly and unequivocally.  *Raulerson v. Wainwright*, 469 U.S. 966, 969-970 (1984).

Even when a criminal defendant has sufficient mental competence to stand trial and insists on representing himself, the state may limit that defendant's right to self-representation if the defendant lacks the mental capacity to conduct his defense at trial unless he is represented by counsel.  *Indiana v. Edwards*, 554 U.S. 164, 174 (2008).  The trial court may take a "realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so."  *Id*. at 177-178.  In *Edwards*, the Court listed the following considerations as to why it held that a state may limit a defendant's right to self-representation on the ground that he lacks the mental capacity to do so: Supreme Court precedent suggests the right is limited when, in the discretion of the trial judge, an unusual circumstance such as a mental impairment would deprive the defendant of a fair trial if permitted to proceed without counsel; a single mental competency standard is untenable due to the nature of mental illness; and the dignity in a defendant's right of self-representation and a fair trial would be undercut by proceeding without counsel due to the defendant's uncertain mental state, remarking that proceedings "must appear fair to all who observe them."  *Id*. at 174-177.

The Ohio Court of Appeals began its discussion of Cedeno's claim by setting forth the procedural history in the trial court:

{¶ 7} On the same day that trial was scheduled to begin on Case No. CR–12–564978, Cedeno stated in open court that he no longer wanted his attorney to represent him. The court advised him that the case was going to trial and that he could either represent himself or have another attorney appointed. Cedeno requested "another attorney to be assigned." (Tr. 9.) He further stated, "[I] deny consent to go to a bench trial or a jury trial." (Tr. 10.) The trial court stated that his request for new counsel was "sounding * * * more and more like [Cedeno was] trying simply to delay these proceedings by waiting until the day before trial to tell us that you want a different attorney." (Tr. 18.) The state agreed that this was a stall tactic and objected to the appointment of new counsel. Nevertheless, the trial court indicated it would appoint Cedeno new counsel and continue the matter for a pretrial.

{¶ 8} In an October 2012 pretrial, Cedeno rejected the services of newly appointed defense counsel and requested to represent himself. Cedeno indicated he filed a waiver of counsel and a written Crim.R. 44(C) motion, whereby he indicated he was proceeding pro se, that his attorney was appointed without his consent, that he does not consent to any continuances or to go to trial because the trial court violated the doctrine of "unclean hands." During this hearing Cedeno continued to deny consent to any trials on any cases before this court. Although the state requested a referral to the court psychiatric clinic, the court denied the state's request, stating "[B]eing obstinate is not, in itself, a sign of mental disease or illness such as to make him incompetent to stand trial." (Tr. 31–32.) After advising Cedeno about the perils of representing himself, the trial court allowed Cedeno to proceed pro se. The court further ordered that the state provide Cedeno with discovery.

{¶ 9} At the next pretrial in November, Cedeno refused the state's discovery because he did not consent for it to be requested, it was incomplete and untimely. After Cedeno indicated that he would not accept any discovery from the state, the court relieved the state of its discovery obligations. Based on the court's overall observations of Cedeno's behavior "that appeared to be irrational, bizarre, and inconsistent with his claimed ability to conduct an effective trial—either to a jury or to the court," the court referred Cedeno to the Court Psychiatric Clinic for a competency evaluation to stand trial and to determine whether he was competent to waive his right to counsel.

{¶ 10} At the Court Psychiatric Clinic, Dr. George Schmedlen attempted to evaluate Cedeno. However, according to Dr. Schmedlen's report, Cedeno declined to sign any medical releases and did not want to be evaluated. Dr. Schmedlen, after learning that Cedeno wanted to represent himself at trial and that Cedeno refused to accept discovery from the state, opined that "Cedeno's behavior raises a genuine issue as to his competency to stand trial and his competency to proceed pro-se." However, because of Cedeno's refusal to cooperate, Dr. Schmedlen could not assess his competency and suggested an inpatient evaluation at Northcoast Behavioral Healthcare. Both the trial court and the state indicated to Cedeno that a competency evaluation was necessary to determine whether he could represent himself.

{¶ 11} Following Dr. Schmedlen's recommendation, the trial court ordered Cedeno to undergo a 20–day inpatient evaluation at Northcoast Behavioral Healthcare. In January 2013, the trial court received a report from Dr. Joy Stankowski who referred to the

findings of Dr. Jason Beaman. Dr. Beaman reported that he attempted to evaluate Cedeno; however Cedeno refused evaluation because he was competent to stand trial and to represent himself. Dr. Beaman concluded that it was his opinion that Cedeno's "lack of cooperation is volitional and does not stem from a mental condition." Therefore, Dr. Beaman found Cedeno competent.

{¶ 12} Troubled that Cedeno was declared competent even though Dr. Beaman did not conduct an evaluation, the court referred Cedeno to Twin Valley Behavioral Healthcare for further evaluation. In open court, Cedeno refused an evaluation stating he has "nothing wrong" with him, he understood "perfect what the charge is," denied consent to a lawyer, and demanded to represent himself. (Tr. 119.)

{¶ 13} In June 2013, the trial court received the competency report prepared by Dr. Howard Sokolov of Twin Valley Behavioral Healthcare. Dr. Sokolov opined that Cedeno was both "competent to assist in [his] defense" and "able to voluntarily, knowingly and intelligently waive his right to counsel so that he can proceed pro se." (Tr. 127.)

{¶ 14} The trial court then asked Cedeno whether he agreed or stipulated to the report of Dr. Sokolov and the conclusions contained in the report. Cedeno responded that "I'm not going to accept it" because he did not consent to the evaluation or for Dr. Sokolov to make a report. (Tr. 132, 138.)

{¶ 15} Cedeno again was evaluated in the Court Psychiatric Clinic by Dr. Stephen Noffsinger who found Cedeno competent to stand trial and to proceed pro se. Nevertheless, Cedeno refused to stipulate to Dr. Noffsinger's report because it was neither signed nor did he give consent to do an evaluation.

{¶ 16} Upon request by the state, the trial court conducted a hearing to hear testimony from Dr. Noffsinger. During the hearing, Cedeno questioned Dr. Noffsinger about the report he prepared and how he could "give an evaluation of a person that was only with [him] for 15 minutes." (Tr. 192.) Dr. Noffsinger responded:

> As I mentioned, I did not do a thorough evaluation based on your decision to not cooperate. You told me several times that you were going to exert your right to not cooperate
>
> So, again, my evaluation is limited to what's in your records, and then my direct observations of you, but I am able to say with reasonable medical certainty that you do not have a present mental condition that would impair you from understanding the nature and objectives of the court proceedings or in assisting in your defense, or to impair you from intelligently, knowingly, and voluntarily waiving your right to counsel.

(Tr. 192–193.)

{¶ 17} Even though the court told Cedeno that Dr. Noffsinger concluded he was competent and he could waive his right to counsel, Cedeno refused to accept Dr.

15

Noffsinger's report or opinion because he never gave consent. Based on Cedeno's refusal, the trial court indicated it would render a written decision whether it would allow Cedeno to continue to proceed without counsel.

{¶ 18} In the trial court's written decision deciding that Cedeno could not represent himself in this case, the court stated,

> [Cedeno's] actions have made it clear that he understands neither the charges against him nor even the most basic elements of what it would take to defend against those charges.
>
> * * *
>
> Notwithstanding the absence of a diagnosis of "severe mental disease," however, the court finds that the concerns first voiced by Dr. Schmedlen—that the defendant's behavior "... raises a genuine issue as to his competency to stand trial and competency to proceed pro-se"—are supported, and indeed amplified, by the consistent pattern of behavior by the defendant himself throughout the proceedings * * *.

{¶ 19} The trial court then listed several instances where Cedeno's behavior indicated he could not proceed pro se—(1) he repeatedly denied his consent to either a bench or jury trial, (2) he rejected the state's discovery because it was not requested, and it was incomplete and untimely; but then complained that he did not receive discovery from the state; (3) he failed to accept the reports of multiple physicians that found him competent to stand trial and to represent himself because he "did not consent to the evaluations"; (4) he maintained the cases against him were closed or that the court lacked jurisdiction over him because he was a "man of flesh and blood"; (5) he referred to the charges against him as "victimless crimes"; and (6) he filed a number of motions that were irrelevant to the proceedings.

{¶ 20} The trial court reasoned that "either (1) [Cedeno] is not competent to provide himself with even the most rudimentary defense against these very serious charges, or (2) the defendant is competent, but is acting in this manner with the specific and perverse intention of making a mockery of these proceedings." The court concluded that to secure the fairness of the proceedings and to protect all involved, including the defendant, the alleged victims, and the community, Cedeno could not continue to proceed without counsel.

{¶ 21} When the trial court announced its ruling in open court, Cedeno repeated that he wanted to represent himself. Nevertheless, after the trial court explained its ruling, Cedeno changed his focus and questioned when his attorney would visit him. At that point, the court suggested that his appointed counsel in the newly indicted case—Case No. CR–13–580862—could also represent him in this case. No objection was raised by Cedeno.

16

{¶ 22} Subsequently, his two cases were consolidated, Cedeno appeared with counsel, and the cases proceeded to trial. Cedeno did not raise any objection or complaint about his attorney or that he wanted to proceed pro se during the guilt phase. After he was convicted in both cases and during sentencing, Cedeno complained that he was deprived of his right of self-representation.

*Cedeno*, 2015 WL 9460555, at **1-4.  The Ohio Court of Appeals then set forth the legal standard and considered Cedeno's claim:

{¶ 24} The Sixth Amendment guarantees a criminal defendant a right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

To invoke the right of self-representation, the right to the assistance of counsel must be knowingly, voluntarily, and intelligently waived. A two part inquiry may be required. First, the court must determine the defendant is competent to waive the right to counsel if the court has reason to doubt the defendant's competence. Second, the court must decide whether the waiver is knowing and voluntar[]y.

*State v. Watson*, 132 Ohio App.3d 57, 63, 724 N.E.2d 469 (8th Dist.1998), citing *Godinez v. Moran*, 509 U.S. 389, 400–402, 113 S.Ct. 2690, 125 L.Ed.2d 321 (1993); *see also State v. Cassano*, 96 Ohio St.3d 94, 2002–Ohio–3751, 772 N.E.2d 81.

{¶ 25} Before a trial court permits a criminal defendant to represent himself, a valid waiver of counsel must appear affirmatively in the record. *State v. Irwin*, 8th Dist. Cuyahoga No. 90772, 2009–Ohio–848; *State v. Martin*, 8th Dist. Cuyahoga No. 80198, 2003–Ohio–1499. To establish an effective waiver, "the trial court must make sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right." *Irwin* at ¶ 34, citing *Gibson* at paragraph two of the syllabus. Although there is no prescribed colloquy, it is essential that the trial court ascertains that the defendant is aware of the dangers and disadvantages of self-representation, and that he is making the decision with his "eyes open." *Irwin* at ¶ 35, citing *Faretta* at 835. Specifically, the trial court must advise the defendant of the nature of the charges against him, the range of allowable punishment, the possible defenses, any mitigating circumstances, and the dangers of self-representation. *State v. Ford*, 8th Dist. Cuyahoga No. 86951, 2006–Ohio–3723, ¶ 63, citing *State v. Martin*, 8th Dist. Cuyahoga No. 80198, 2003–Ohio–1499.

{¶ 26} In this case and after advising Cedeno of the perils of proceeding pro se, the trial court initially concluded that Cedeno was competent to waive counsel and to stand trial, and despite the state suggesting otherwise, the court stated that "[B]eing obstinate is not, in itself, a sign of mental disease or illness such as to make him incompetent to stand trial." (Tr. 31–32.) Therefore, the court allowed Cedeno to proceed pro se.

{¶ 27} However, the right of self-representation is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). There will be times when "the

government's interest in ensuring the integrity and efficacy of the trial will outweigh the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of California*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); *United States v. Young*, 199 F.Supp.2d 697 (S.D.Ohio 2001) (the trial court may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct).

{¶ 28} In this case, after the trial court observed Cedeno's irrational and bizarre behaviors in open court and through his pro se motions, the court determined that it was necessary for Cedeno to undergo an evaluation to determine whether he fully understood and intelligently relinquished his right to counsel. Subsequently, multiple doctors opined that Cedeno was competent to stand trial and to represent himself at trial.

{¶ 29} Nevertheless, a trial court may rely on its own observations to determine whether to grant a defendant's request to proceed pro se, which may be contrary to the expert reports. *See State v. Were*, 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263 (court may rely on own observations to determine competency). Additionally, the trial court may consider how an expert reached a conclusion when deciding whether t[o] accept his conclusion. *See State v. Nickell*, 6th Dist. Wood No. WD–07–015, 2008–Ohio–1571 (reversing a trial court's determination that the defendant was competent to stand trial because the sole expert evaluation relied upon by the court was based on a single interview and stated vague, generalized conclusions and where the defendant's responses to the trial court's questions demonstrated that she lacked competency).

{¶ 30} In this case, the trial court relied on its own observations and interactions with Cedeno and the circumstances surrounding the competency evaluations when it decided to terminate Cedeno's ability to self-represent. The court noted that despite the reports concluding Cedeno was competent, no formal and complete evaluation was conducted because Cedeno refused to cooperate or otherwise participate in the evaluations. This defiant behavior was evidenced when the court asked Cedeno whether he accepted the opinion of Drs. Sokolov and Noffsinger that he was competent to stand trial and to represent himself. Cedeno repeatedly stated that he did not accept or stipulate to the reports because he "never consented to the evaluations." This response is clear that Cedeno did not understand the legal procedures before the court.

{¶ 31} Cedeno's misunderstanding of the legal proceedings was further demonstrated when he repeatedly asserted that he did not consent to any trial before the court and that the trial court lacked jurisdiction because he is "a [m]an of flesh and blood." The record also demonstrates that Cedeno did not understand the nature and severity of his charges through his motion practice by referring to his charges as "victimless crimes."

{¶ 32} Our review of the record reveals that Cedeno's pattern of delay and manipulation began on September 27, 2012, the day Case No. CR–12–564978 was originally scheduled for trial, when he first denied "consent to go to trial to a bench trial or jury," and expressed dissatisfaction with his attorney and requested that the attorney be removed from his case. Although the trial court gave Cedeno the option of self-

representation, Cedeno requested that another attorney be appointed, whom he later stated was "unsatisfactory."

{¶ 33} Cedeno's obstructionist behavior was further evidenced by his refusal to accept discovery from the state. He initially rejected the state's discovery because he "did not request it"; rather, his counsel made the request without consent. Later, he complained that the state did not comply with the discovery request because it would not provide him with all discovery and the production was untimely. After Cedeno indicated he would not accept the state's discovery, he subsequently filed an "Affidavit of Fact/Writ of Discovery" where he "demands for Crim.R. 16, discovery."

{¶ 34} These obstructionist behaviors, delay tactics, and deliberate manipulations prompted the trial court to terminate Cedeno's self-representation. It was readily apparent that Cedeno would not cooperate in the proceedings, even when the matter was helpful to Cedeno or was a ruling in his favor. In *Faretta*, the United States Supreme Court noted that "[T]he right to self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with the relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 384, 95 S.Ct. 2525, 45 L.Ed.2d 562. The trial court attempted to protect all parties and the integrity of the proceedings in its decision, and we find no abuse of discretion.

{¶ 35} Finally, we note that after trial commenced, Cedeno never renewed his request to self-represent. In *Halder*, this court discussed this precise situation—"the fact that [the defendant] never renewed his desire to represent himself was 'helpful in evaluating [his] intended use of the request, i.e., was it a sincere desire to proceed pro se or manipulative.'"  *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007–Ohio–5940, ¶ 59; *State v. Williams*, 8th Dist. Cuyahoga No. 99859, 2014–Ohio–1057, ¶ 26 (Stewart, J., dissenting).

{¶ 36} Accordingly, after thoroughly reviewing the circumstances of the case and relevant case law, we conclude that the trial court did not abuse its discretion in revoking Cedeno's right to represent himself. The first assignment of error is overruled.

*Cedeno*, 2015 WL 9460555, at **5-7.

Cedeno argues that the trial court should not have denied his request to proceed without counsel and should have held a *Faretta* hearing.  Doc. 11, p. 8-9, 12.  He claims that the Sixth Circuit requires that a trial court ask him a series of questions drawn from the Bench Book for United States District Judges, citing *United States v. Williams*, 641 F.3d 758, 766-767 (6th Cir. 2011).  Doc. 11, p. 8.  In *Williams*, the Sixth Circuit described what it requires federal district courts to do in federal cases; *Williams* is not binding on Ohio state courts.  *See, e.g., United*

*States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004) ("Whenever a district court in the Sixth

Circuit is faced with an accused who wishes to represent himself, the court must ask the

defendant a series of questions drawn from, or substantially similar to, the model inquiry set

forth in the *Bench Book for United States District Judges*.").  Moreover, the questions are

intended to determine, to the court's satisfaction, whether a defendant knowingly and voluntarily

waives the right to counsel before being permitted to proceed without representation.  Here,

Cedeno was permitted by the state trial court to represent himself and then the trial court revoked

his self-representation.  *See Faretta*, 422 U.S. 834, n. 46 ("[T]he trial judge may terminate self-

representation by a defendant who deliberately engages in serious and obstructionist

misconduct[,]" citing *Illinois v. Allen*, 397 U.S. 337 (1970)).  As the Ohio Court of Appeals

explained, the trial court terminated Cedeno's self-representation after it determined that Cedeno

deliberately engaged in "obstructionist behaviors."  *Cedeno*, 2015 WL 9460555, at *7 (citing

*Faretta*).  Thus, the Ohio Court of Appeals applied the correct legal standard when affirming the

trial court's revocation of Cedeno's right to represent himself.

Cedeno submits that the trial court could have "insisted" that he be assigned standby

counsel.  Doc. 11, pp. 8, 11.  But the record shows that Cedeno refused even standby counsel.

See Doc. 9-2, p. 232-233 (the trial court reading into the record a motion written by Cedeno

dated 12/18/13 as follows: "I enter a constitutional objection to any attempt by the Court to

deny—and that is underlined—my constitutional right to fully, with complete authority of self-

representation, to represent my personal interest and to speak exclusively on my own behalf

without intervention of a standby attorney whom simply undermines my ability to grant

informed consent [in] all matters.").  Cedeno's assertion that he remained steadfast in his request

to represent himself prior to trial (Doc. 11, p. 10) is not at issue.  His claim that "no evidence

suggests that [he] sought self-representation as a delay tactic or strategy for manipulating the

trial" is belied by the Ohio Court of Appeals' decision, which reiterated the evidence that the state trial court relied upon to show that he sought self-representation as a delay tactic or strategy for manipulating the trial. *Cedeno*, 2015 WL 9460555, at *6-7 (observing that the trial court discussed that Cedeno refused to cooperate with psychiatric evaluators; would not accept the reports' conclusions that he was competent to represent himself, contrary to what he himself advocated; refused to concede that he was subject to trial and maintained that the court lacked jurisdiction because he "was a man of flesh and blood"; referred to his charged crimes of rape and other sexual misconduct as "victimless crimes"; waited until the day of trial to declare his dissatisfaction with counsel and request another attorney whom he also, later, determined was unsatisfactory; repeatedly rejected the state's discovery and then demanded it; and other bizarre and irrational behavior exhibited in court and through pro se filings).

Cedeno argues that the trial court "cherry pick[ed]" the psychiatric evaluations when it found him competent to stand trial but not competent to proceed pro se. Doc. 11, p. 11. A state court may find a defendant competent to stand trial but not competent to represent himself at trial. *Edwards*, 554 U.S. at 175-176 ("In certain instances an individual may well be able to satisfy *Dusky's* mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel."). Here, the trial court found him to be competent to stand trial but not competent to represent himself; it was permitted to do so and the Ohio Court of Appeals' finding that its determination was proper was not unreasonable. *Id*. at 177 (trial judges are in the best position to take a realistic account and determine whether a defendant can conduct his own trial).

Lastly, Cedeno argues that he had legitimate reasons for his actions before the state trial court. Doc. 11, p. 11. He asserts that he refused the state's discovery because it was incomplete,

and that, had he had stand-by counsel, "counsel could have instructed [him] that discovery often times is an on going process prior to trial and even often times evidence is discovery during a trial and that this is not unusual that that it would be in his best interest to accept the discovery that was provided..." Doc. 11, p. 12. First, Cedeno's after-the-fact explanations have no bearing on this Court's review of the Ohio Court of Appeals' decision. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (Under § 2254(d)(1) federal habeas courts are limited to the set of facts that were before the state court). Second, as noted above, Cedeno objected to stand-by counsel and there is nothing in the record to suggest that he would have followed stand-by counsel's advice. Moreover, Cedeno did not refuse the state's discovery because he did not understand that it was an on-going process. As the Ohio Court of Appeals observed, he refused the state's proffered discovery merely because his attorney had requested it (Doc. 9-2, p. 44) and because it did not include items that the state, under Ohio law, could not provide him. See, e.g., Doc. 9-2, pp. 37-44 (hearing wherein the prosecutor explained what she could not provide Cedeno under Ohio law and Cedeno refusing to accept all discovery proffered); 158-159 (Cedeno objecting to the state's proffer of discovery and the trial court explaining that there are some things the state cannot provide to a defendant); Doc. 9-2, pp. 202-206 (trial court again explaining to Cedeno that state law prohibits certain discovery be turned over to a defendant charged with sexual crimes against children); *see also* Ohio R. Crim. P. 16(E) (Right of Inspection in Cases of Sexual Assault); *Cedeno*, 2015 WL 9460555, at *7.

Cedeno does not show that the Ohio Court of Appeals' decision was legally or factually unreasonable. It was not, and a federal habeas court must defer to the state court decision. *See* 28 U.S.C. § 2254(d) (to obtain relief a petitioner must show that the state court decision was contrary to or involved an unreasonable application of Supreme Court precedent or was based on

an unreasonable determination of the facts in light of the evidence presented in the state court proceedings).

Ground One fails on the merits.

**B. Ground Two is not cognizable**

In Ground Two, Cedeno argues that his constitutional right to allocute at sentencing was violated.  Doc. 1, p. 7.  "Federal courts have consistently held that there is no federal constitutional right to allocution at sentencing."  *Kronenberg v. Eppinger*, 2014 WL 1681432, at *4 (N.D.Oh. Apr. 17, 2014) (citing *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997), and collecting cases).  Moreover, the trial court afforded Cedeno his right of allocution.  Doc. 9-6, p. 142.  As the Court of Appeals explained, Cedeno initially made statements unrelated to mitigation (Doc. 9-6, p. 142 (Cedeno complaining that he had asked that the victim undergo a virginity test)), which the trial court explained was not related to mitigation and directed Cedeno to the relevant issue, mitigation (p. 143).

Ground Two is not cognizable.

**C. Ground Three is procedurally defaulted**

In Ground Three, Cedeno argues that trial counsel and appellate counsel were ineffective.  Doc. 1, p. 8.  He contends that trial counsel was ineffective for failing to properly present evidence at trial and to properly file a motion to acquit and a motion to dismiss.  Doc. 1, p. 8.  He alleges that appellate counsel was ineffective for failing to include an "overwhelming" list of grounds on direct appeal that his trial counsel had listed as appealable issues.  Doc. 11, p. 16 (citing Doc. 13 (list of appealable issues)).  These claims are procedurally defaulted.

**1. Ineffective assistance of trial counsel**

As an initial matter, Cedeno's claim that trial counsel was ineffective for failing to properly file a motion for acquittal is belied by the record because Cedeno's trial counsel twice

filed a motion for acquittal (after the state rested at trial and after Cedeno presented his evidence at trial) and the motions were denied on the merits.  See Doc. 9-1, pp. 164, 165; Doc. 9-5, pp. 105-117; Doc. 9-6, pp. 40-44.  His claim that trial counsel was ineffective for failing to properly file a motion to dismiss also lacks merit because Cedeno's trial counsel filed a motion to dismiss, which the trial court denied on the merits.  See Doc. 9-1, pp. 132, 153; Doc. 9-3, pp. 17-31. Cedeno offers no explanation in his Petition or Traverse with respect to how or why he believes these motions were improperly filed.

Cedeno's claim that trial counsel was ineffective for failing to present evidence at trial appears to be based on his assertion that he had "asserted over and over again that he could not have committed this crime due to the fact that he was incarcerated at Marion Correctional Institution at the time of the offense occurred[,]" which was evidenced by the state's repeated dismissal of prior indictments.  Doc. 11, p. 16.  But Cedeno's trial counsel presented evidence that Cedeno was incarcerated at the time the earlier indictments described the crimes to have occurred.  See, e.g., Doc. 9-5, pp. 71-72 (cross examination of detective confirming that Cedeno was incarcerated at the time the earlier indictments described the crimes had occurred); but see Doc. 9-5, pp. 50-55 (detective explaining why the prior indictments had been dismissed and why she had problems identifying the exact dates the crimes occurred); Doc. 9-3, pp. 67-67 (defense counsel explaining to the trial court why evidence regarding dates in the dismissed indictments were pertinent to Cedeno's case), 87-88 (trial court denying as moot the state's motion in limine to bar evidence at trial that prior indictments had been dismissed).  Thus, this claim is also belied by the record because trial counsel did present the evidence.  *See also* Doc. 9-2, pp. 50-51, 147-

24

148, 162 (Cedeno, while representing himself, explaining to the trial court that he was at Marion Correctional Institution until May 9, 2006).[6]

Moreover, because these claims are based on the trial court record, they should have been raised on direct appeal.  *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016) (in Ohio, ineffective assistance of trial counsel claims based on evidence within the trial court record must be brought on direct appeal); *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967) (defendant's claims that were raised at trial and disposed of by the trial court are based on the record and must be raised on direct appeal).  Because they were not, and state law no longer allows Cedeno to present them, they are procedurally defaulted.  *See Hill*, 842 F.3d at 936.

Cedeno does not show cause to excuse his procedural default, i.e., explain why these issues were not raised on direct appeal.  Ineffective assistance of appellate counsel for failing to raise these issues on direct appeal cannot constitute cause because, as explained below, Cedeno procedurally defaulted his ineffective assistance of appellate counsel claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (for ineffective assistance of counsel to serve as cause to excuse a procedural default of another claim it must itself not be procedurally defaulted).  Finally, although Cedeno states that he has asserted a claim of actual innocence to excuse the procedural default (Doc. 11, p. 16 (explaining he was incarcerated at the time the crimes occurred)), he provides no evidence.  *See House v. Bell*, 547 U.S. 518, 537 (2006) (evidence of innocence to overcome a procedural bar must be "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial."); *Hodges v. Colson*, 727 F.3d 517, 532 (6th Cir. 2013).

---

[6] The indictment for counts 1 and 2, on which Cedeno was found guilty, lists the crimes as occurring on or about May 1, 2006, to March 31, 2007.  Doc. 9-1, pp. 7-8.  Cedeno appears to argue that he could not have committed these crimes because he was incarcerated until May 9, 2006, i.e., he was incarcerated during nine days of the 11-month period during which the indictment alleged that he committed the crimes.  He does not argue that he was incarcerated for the remainder of the 11-month period.

### 2. Ineffective assistance of appellate counsel

Cedeno raised ineffective assistance of appellate counsel claims in his Rule 26(B) Application, but the Ohio Court of Appeals rejected his filing as untimely.  Doc. 9-1, pp. 364-368.  When it did, the Ohio Court of Appeals relied on a regularly applied procedural bar that constitutes an adequate and independent state ground for denying relief.  *McClain v. Kelly*, 631 Fed. App'x 422, 428 (6th Cir. 2015) (recognizing that the Ohio Court of Appeals' denial of a petitioner's untimely Rule 26(B) Application is a regularly applied, adequate and independent state procedural bar to hearing a claim on the merits, citing *Baker v. Bradshaw*, 495 Fed. App'x 560, 565-566 (6th Cir. 2012), in turn citing *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002)).  Accordingly, Cedeno procedurally defaulted his ineffective assistance of appellate counsel claims.  *Id.*  He also procedurally defaulted these claims because he did not appeal the Ohio Court of Appeals' decision to the Ohio Supreme Court.  *See O'Sullivan*, 526 U.S. at 845-848 (constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement).

Cedeno does not show cause and prejudice to excuse his procedural default.  He cannot claim ineffective assistance of appellate counsel to excuse the failure to timely file a Rule 26(B) Application or to appeal the Ohio Court of Appeals' denial of his Rule 26(B) Application because ineffective assistance of appellate counsel cannot serve as cause to excuse a procedural default of an ineffective assistance of appellate counsel claim.  *See, e.g., McClain*, 631 Fed. App'x at 429-437 (detailing the history of Supreme Court and Sixth Circuit cases and concluding that binding precedent directs that appellate counsel's failure to notify the defendant of the 90-day window for filing a Rule 26(B) Application cannot serve as cause to excuse a procedurally defaulted ineffective assistance of appellate counsel claim).  Moreover, Cedeno does not explain why he did not appeal the Ohio Court of Appeals' ruling to the Ohio Supreme Court.  Thus, he

has not demonstrated cause to excuse his procedural default.  And, as above, he has not shown that he is actually innocent.

### D. Ground Four is procedurally defaulted

In Ground Four, Cedeno argues that, based on the evidence at trial, the trial court erred when it found him guilty of the offenses charged in the indictments, to wit, evidence that he was incarcerated during the time period the crime occurred according to the initial indictments and false allegations by the victims.  Doc. 1, p. 10.  He also asserts that the trial court failed to provide him with legal representation at all stages of the criminal proceedings.  Doc. 1, p. 10; Doc. 11, pp. 18-20.

This claim is procedurally defaulted because Cedeno did not raise these issues on direct appeal, as he concedes (Doc. 1, p. 10).  He cannot claim ineffective assistance of appellate counsel as cause to excuse his procedural default because, as explained in the section above regarding Ground Three, Cedeno procedurally defaulted his ineffective assistance of appellate counsel claims.  Additionally, he did not claim in his Rule 26(B) Application that appellate counsel was ineffective for failing to raise as an issue on direct appeal that the trial court failed to provide him with legal representation at all states of his criminal proceedings, thereby committing another form of procedural default.  *See Williams*, 460 F.3d at 806 (a petitioner commits procedural default by failing to raise a claim in state court and pursue it through the state's ordinary appellate review procedures).  He does not demonstrate actual innocence.  Ground Four is procedurally defaulted.

### V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas

Petition should be **DISMISSED in part and DENIED in part** because Ground One fails on the

merits, Ground Two is not cognizable, and Grounds Three and Four are procedurally defaulted.


Dated: March 27, 2018

_____
Kathleen B. Burke
United States Magistrate Judge


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).